IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

          Plaintiff,

– and –

BRYANT ROUSSEAU,

          Intervenor-Plaintiff,

    v.

THE NEW YORK TIMES COMPANY,

          Defendant.

---

THE NEW YORK TIMES COMPANY,

          Counterclaim Plaintiff,

    v.

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

ANDREA R. LUCAS, in her official capacity as Chair of the U.S. Equal Employment Opportunity Commission,

KALPANA KOTAGAL, in her official capacity as Commissioner of the U.S. Equal Employment Opportunity Commission, and

BRITTANY BULL PANUCCIO, in her official capacity as Commissioner of the U.S. Equal Employment Opportunity Commission,

          Counterclaim Defendants.

---

26 Civ. 03704

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant The New York Times Company ("Defendant" or "The Times"), by and through its attorneys Proskauer Rose LLP and Gibson, Dunn and Crutcher LLP, answers the Complaint filed by Plaintiff U.S. Equal Employment Opportunity Commission (the "Commission" or the "EEOC") on May 5, 2026 (Dkt. 1, the "Complaint"), as follows:

## AS TO "NATURE OF THE ACTION"

The allegations in the introductory unnumbered paragraph following the "Nature of the Action" header contain legal conclusions and arguments to which no response is required. To the extent a response may be required, Defendant denies the allegations in this introductory unnumbered paragraph, except admits that the Commission has filed the instant lawsuit asserting that The Times failed to promote Intervenor-Plaintiff Bryant Rousseau ("Rousseau"). As alleged in its Counterclaims, Defendant avers that this action was filed against The Times, a news organization that President Trump has repeatedly attacked for its journalism, in retaliation for The Times's speech and reporting about the administration and the EEOC, in particular, and that it violates the First and Fifth Amendments and the Administrative Procedure Act ("APA"). Notably, the EEOC filed its lawsuit the week after The Times reported on widespread criticism of the EEOC and its leadership from individuals inside and outside the agency, and that the Commission is under "intense pressure" to pursue "tenuous" claims of alleged discrimination that "fit the Trump administration's priorities." As one of the EEOC's own Commissioners noted, this action was "filed on the heels of [The Times's] reporting on the weaponization of the agency" and The Times avers, as that Commissioner "fear[ed]," that this action was motivated "not by the merits, but by a

1

desire to advance the administration's political agenda[,]" an agenda that includes punishing the press for speech the administration disfavors.

The EEOC's case rests entirely on the false premise that, because The Times selected a multiracial woman for a position over a white male applicant, and because The Times had an aspirational leadership goal, then the multiracial woman must not have been qualified for the position, and the selection must have been motivated by race and/or sex. Contrary to the Commission's baseless speculation, The Times selected the chosen candidate for the Deputy Editor role on The Times's Real Estate desk in April 2025 because she was the *most* qualified candidate for the job; certainly more qualified than Rousseau. Unlike Rousseau, the selected candidate had, among other things, extensive experience with service journalism — which offers readers practical information they can apply to their daily lives — and a variety of story forms, both of which were emphasized in the job posting. Further, she articulated a compelling vision for the future of The Times's real estate coverage that aligned with the Real Estate desk's goals to focus on service and visually-driven journalism. The selected candidate also had previous experience as a Deputy Editor at Eater, where she managed others and edited impactful service journalism features, among other duties.

Despite conducting an eight-month investigation, collecting more than a thousand pages of documents, and interviewing no fewer than nine witnesses, the Commission was unable to identify any evidence that The Times considered the selected candidate's race or sex in filling the position. Moreover, the Commission learned (among other salient facts) that candidates of color of both sexes with *more real estate experience than Rousseau* also were not advanced during the hiring process, contradicting both the EEOC's assertion that Rousseau's alleged real estate experience alone warranted his participation at the panel interview stage and that the decision not to advance

him was based on his race and sex. The Commission filed this lawsuit against The Times anyway, to retaliate against an organization the administration has repeatedly branded an "enemy." The facts here preclude any claim that Rousseau was discriminated against. And neither the Constitution nor the APA permit the Commission to misuse its enforcement authority to target The Times for exercising its First Amendment rights in ways the President and his administration dislike.

**AS TO "JURISDICTION AND VENUE"**

1.      The allegations in Paragraph 1 of the Complaint contain a legal conclusion to which no response is required. To the extent a response may be required, Defendant denies the allegations in Paragraph 1 except admits that the Commission purports to assert jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345, and files this action pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The allegations in Paragraph 2 of the Complaint contain a legal conclusion to which no response is required. To the extent a response may be required, Defendant denies the allegations in Paragraph 2 except admits that the allegations in the Complaint are alleged to have occurred within the jurisdiction of the United States District Court for the Southern District of New York.

**AS TO "PARTIES"**

3.      The allegations in Paragraph 3 of the Complaint contain a legal conclusion to which no response is required. To the extent a response may be required, Defendant denies that the Commission is authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and avers that the Commission exceeded its authority by proceeding with this lawsuit without exhausting all available administrative remedies and/or otherwise failing to

3

comply with the statutory prerequisites to bringing this action, pursuant to Title VII, including its statutory obligation to conciliate. Defendant admits that the Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII.

4.      Defendant admits the allegations in Paragraph 4 of the Complaint.

5.      The allegations in Paragraph 5 of the Complaint contain a legal conclusion to which no response is required. To the extent a response may be required, Defendant admits that it has continuously been an employer engaged in an industry affecting commerce during the relevant time period that is the subject of the Complaint.

6.      The allegations in Paragraph 6 of the Complaint contain a legal conclusion to which no response is required. To the extent a response may be required, Defendant admits the allegations in Paragraph 6.

### AS TO "ADMINISTRATIVE PROCEDURES"

7.      Defendant admits that Rousseau filed a Charge with the Commission more than thirty days prior to the institution of the Commission's lawsuit alleging violations of Title VII by Defendant but avers that there was no merit to the allegations in the Charge.

8.      Defendant denies the allegations in Paragraph 8 of the Complaint and avers that the Commission issued a Letter of Determination finding reasonable cause only as to Rousseau's assertion regarding The Times's decision not to advance him in the selection process or promote him to the Real Estate Deputy Editor position. Defendant further avers that the Commission's stated basis for finding reasonable cause was not supported by the evidence obtained and reviewed by the Commission during its eight-month investigation of the Charge. Notwithstanding the Commission's collection of more than a thousand pages of documents from The Times and

interviews of no fewer than nine witnesses, the Commission rested its finding almost entirely on The Times's aspirational leadership goal set forth in its February 2021 report, "A Call to Action," subtitled, "Building a Culture that Works for All of Us" (the "Call to Action"), and its Diversity and Inclusion reports that provided transparency regarding the demographic breakdowns of its workforce. The Commission's Letter of Determination did not identify any evidence that either the Call to Action or the Diversity and Inclusion reports — or Rousseau's race or sex — played any role whatsoever in the hiring process for the Real Estate Deputy Editor role.

9.     Defendant denies the allegations in Paragraph 9 of the Complaint, except admits that the Commission invited Defendant to conciliate the matter and avers that the Commission prematurely and abruptly ended conciliation efforts in violation of its statutory obligations under Title VII. Defendant further avers that it did not engage in any unlawful employment practices or violation of law against Rousseau as complained of in the Charge or as alleged by the Commission in this lawsuit.

10.     Defendant denies the allegations in Paragraph 10 of the Complaint, except admits that the Commission communicated with Defendant about resolving the matter following its Letter of Determination and avers that the Commission prematurely and abruptly ended those discussions in violation of its statutory obligations under Title VII. Defendant further avers that it did not engage in any unlawful employment practices or violation of law against Rousseau as complained of in the Charge or as alleged by the Commission in this lawsuit.

11.     Defendant denies the allegations in Paragraph 11 of the Complaint and avers that the Commission prematurely and abruptly ended conciliation efforts in violation of its statutory obligations under Title VII when neither the Commission, Rousseau, nor The Times were at impasse in their negotiations.

12.     Defendant admits the allegations in Paragraph 12 of the Complaint and avers that the Commission sent such Notice of Failure of Conciliation less than two hours after the end of the day's conciliation meeting, despite all parties indicating an intention to continue discussions, and further avers that the Commission prematurely and abruptly ended conciliation efforts in violation of its statutory obligations under Title VII.

13.     Defendant denies the allegations in Paragraph 13 of the Complaint.

### AS TO "STATEMENT OF CLAIMS"

14.     The allegations in Paragraph 14 of the Complaint contain a legal conclusion to which no response is required. To the extent a response may be required, Defendant denies the allegations in Paragraph 14 of the Complaint.

15.     The allegations in Paragraph 15 of the Complaint contain a legal conclusion to which no response is required. To the extent a response may be required, Defendant denies the allegations in Paragraph 15 and avers that The Times selected the most qualified candidate for the Real Estate Deputy Editor position.

16.     Defendant denies the allegations in Paragraph 16 of the Complaint and avers that it has over thirteen million subscribers to its print and digital products.

17.     Defendant denies the allegations in Paragraph 17 of the Complaint and refers the Court to The Times's Diversity and Inclusion reports for the contents thereof.

18.     Defendant denies the allegations in Paragraph 18 of the Complaint and refers the Court to The Times's Diversity and Inclusion reports for the contents thereof.

19.     Defendant denies the allegations in Paragraph 19 and subparagraphs (a) through (h) of the Complaint and refers the Court to The Times's Diversity and Inclusion reports for the contents thereof.

6

20.     Defendant denies the allegations in Paragraph 20 of the Complaint and refers the Court to the Call to Action for the contents thereof.

21.     Defendant denies the allegations in Paragraph 21 of the Complaint and refers the Court to the Call to Action for the contents thereof.

22.     Defendant admits the allegations in Paragraph 22 of the Complaint and refers the Court to The Times's 2022, 2023, and 2024 Diversity and Inclusion reports for the contents thereof.

23.     Defendant admits the allegations in Paragraph 23 of the Complaint and refers the Court to The Times's 2022 Diversity and Inclusion report for the contents thereof. Defendant avers that The Times's 2022 Diversity and Inclusion report describes the Call to Action as a plan "to strengthen our culture and systems in ways that give everyone at The Times an opportunity to thrive and do their best work."

24.     Defendant denies the allegations in Paragraph 24 of the Complaint and refers the Court to The Times's 2023 and 2024 Diversity and Inclusion reports for the contents thereof.

25.     Defendant denies the allegations in Paragraph 25 of the Complaint and refers the Court to the Call to Action for the contents thereof. Defendant avers that The Times's aspirational leadership goals did not affect its hiring decision for the Real Estate Deputy Editor position.

26.     Defendant denies the allegations in Paragraph 26 and subparagraphs (a) through (d) of the Complaint and refers the Court to the Call to Action for the contents thereof.

27.     Defendant admits that Paragraph 27 of the Complaint quotes accurately from the Call to Action and refers the Court to the Call to Action for the contents thereof.

28.     Defendant admits that Paragraph 28 of the Complaint quotes accurately from the Call to Action and refers the Court to the Call to Action for the contents thereof.

29.    Defendant denies the allegations in Paragraph 29 of the Complaint and avers that The Times's leadership representation goals were aspirational in nature and were not established targets or quotas; they were a projection of the expected impact of various legitimate, non-discriminatory efforts to improve The Times's culture and strengthen its people practices and were consistent with longstanding EEOC guidance in place at the time. Defendant further avers that The Times's aspirational leadership goals did not affect its hiring decision for the Real Estate Deputy Editor position. Defendant refers the Court to the Call to Action and The Times's Diversity and Inclusion reports for the contents thereof.

30.    Defendant denies the allegations in Paragraph 30 of the Complaint.

31.    Defendant denies the allegations in Paragraph 31 of the Complaint and avers that The Times's leadership representation goals were aspirational in nature and were not established targets or quotas; they were a projection of the expected impact of various legitimate, non-discriminatory efforts to improve The Times's culture and strengthen its people practices. Defendant further avers that The Times never had an aspirational goal with respect to the representation of women on its staff or leadership. Defendant further avers that The Times's aspirational leadership goals did not affect its hiring decision for the Real Estate Deputy Editor position. Defendant refers the Court to the Call to Action and The Times's Diversity and Inclusion reports for the contents thereof.

32.    Defendant denies the allegations in Paragraph 32 of the Complaint and refers the Court to The Times's 2022 Diversity and Inclusion report for the contents thereof.

33.    Defendant denies the allegations in Paragraph 33 of the Complaint and avers that The Times's leadership representation goals were aspirational in nature and were not established targets or quotas; they were a projection of the expected impact of various legitimate, non-

8

discriminatory efforts to improve The Times's culture and strengthen its people practices and were consistent with longstanding EEOC guidance in place at the time. Defendant further avers that The Times's aspirational leadership goals did not affect its hiring decision for the Real Estate Deputy Editor position, and that the Real Estate Deputy Editor position was not a "leadership" position. Defendant refers the Court to The Times's 2022 Diversity and Inclusion report for the contents thereof.

34.    Defendant denies the allegations in Paragraph 34 of the Complaint and avers that The Times's leadership representation goals were aspirational in nature and were not established targets or quotas; they were a projection of the expected impact of various legitimate, non-discriminatory efforts to improve The Times's culture and strengthen its people practices and were consistent with longstanding EEOC guidance in place at the time. Defendant refers the Court to The Times's 2022 Diversity and Inclusion report for the contents thereof.

35.    Defendant denies the allegations in Paragraph 35 of the Complaint except admits that the 2024 Diversity and Inclusion report included the graphs set forth in Paragraph 35 of the Complaint and refers the Court to that report for the contents thereof.

36.    Defendant denies the allegations in Paragraph 36 of the Complaint except admits that the term "people of color" did not include white employees. Defendant refers the Court to The Times's 2024 Diversity and Inclusion report for the contents thereof.

37.    Defendant denies the allegations in Paragraph 37 and subparagraphs (a) through (e) of the Complaint and refers the Court to the Slack message communication between Monica Drake ("Drake") and Jonathan Galinsky ("Galinsky") referenced in Paragraph 37 for the contents thereof.

9

38. Defendant denies the allegations in Paragraph 38 of the Complaint and refers the Court to the Slack message communication between Drake and Galinsky referenced in Paragraph 38 for the contents thereof.

39. Defendant denies the allegations in Paragraph 39 of the Complaint.

40. Defendant denies the allegations in Paragraph 40 of the Complaint. Defendant avers that it never had an aspirational goal to increase the percentage of women or "people of color" in leadership as alleged in Paragraph 40 of the Complaint.

41. Defendant denies the allegations in Paragraph 41 of the Complaint and avers that its Diversity and Inclusion reports from 2018 through 2024 explained that "leadership" "roughly equates" to deputy editor positions and above, and that the Real Estate Deputy Editor position was not a "leadership" position. Defendant refers the Court to The Times's Diversity and Inclusion reports for the contents thereof.

42. Defendant admits the allegations in Paragraph 42 of the Complaint and refers the Court to the job posting for the contents thereof.

43. Defendant denies the allegations in Paragraph 43 of the Complaint and refers the Court to the 2017 through 2024 Diversity and Inclusion reports for the contents thereof. Defendant avers that its Diversity and Inclusion reports from 2018 through 2024 explained that "leadership" "roughly equates" to deputy editor positions and above, and that the Real Estate Deputy Editor position was not a "leadership" position.

44. Defendant admits the allegations in Paragraph 44 of the Complaint.

45. Defendant admits that Nikita Stewart ("Stewart") worked with Soraya Gunnell ("Gunnell"), Senior Manager, Talent Acquisition at The Times, as well as other employees at The Times to fill the Real Estate Deputy Editor position as alleged in Paragraph 45 of the Complaint.

10

46.     Defendant denies the allegations in Paragraph 46 of the Complaint and refers the Court to Stewart's 2024 Year-End Review for the contents thereof.

47.     Defendant denies the allegations in Paragraph 47 of the Complaint.

48.     Defendant denies the allegations in Paragraph 48 of the Complaint and refers the Court to Stewart's 2024 Year-End Review for the contents thereof.

49.     Defendant denies the allegations in Paragraph 49 of the Complaint and refers the Court to Gunnell's 2024 Year-End Review for the contents thereof.

50.     Defendant denies the allegations in Paragraph 50 of the Complaint and refers the Court to Gunnell's 2024 Year-End Review for the contents thereof.

51.     Defendant admits the allegations in Paragraph 51 of the Complaint.

52.     Defendant denies the allegations in Paragraph 52 of the Complaint and refers the Court to the Real Estate Deputy Editor job descriptions for the contents thereof. Defendant avers that the job postings emphasized the importance of: "service journalism" (which they referenced three times); the ability to produce and edit stories in a variety of story forms; and familiarity with off-platform avenues to showcase The Times's journalism, as well as an eagerness to experiment with new ones as they arise.

53.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 of the Complaint.

54.     Defendant denies the allegations in Paragraph 54 of the Complaint.

55.     Defendant admits the allegations in Paragraph 55 of the Complaint.

56.     Defendant admits the allegations in Paragraph 56 of the Complaint.

11

57.     Defendant admits that Rousseau began working at The Times as a Staff Editor in 2014 and avers that Rousseau was promoted to Senior Staff Editor in 2016. Defendant further avers that Rousseau was assigned to work on The Times's International desk since 2016.

58.     Defendant denies the allegations in Paragraph 58 of the Complaint and avers that, at the time he applied, Rousseau had been in his position as Senior Staff Editor for approximately nine years.

59.     Defendant admits that Rousseau was an editor on The Times's Business desk for approximately two years as alleged in Paragraph 59 of the Complaint and denies knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 59 of the Complaint.

60.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Complaint.

61.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Complaint with respect to Rousseau's prior experience before joining The Times and denies the allegations in Paragraph 61 of the Complaint with respect to Rousseau's experience during his employment at The Times.

62.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of the Complaint with respect to Rousseau's prior experience before joining The Times and denies the allegations in Paragraph 62 of the Complaint with respect to Rousseau's experience during his employment at The Times.

63.     Defendant denies the allegations in Paragraph 63 of the Complaint.

64.     Defendant denies the allegations in Paragraph 64 of the Complaint.

65. Defendant denies the allegations in Paragraph 65 of the Complaint and refers the Court to Rousseau's cover letter and resume for the contents thereof.

66. Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 of the Complaint, except admits that Rousseau's resume states that he was the "[w]inner of 25+ major awards for excellence in digital journalism" and denies that this statement — even if true — would establish that he was qualified for the Real Estate Deputy Editor position. Defendant refers the Court to Rousseau's resume for the contents thereof.

67. Defendant denies the allegations in Paragraph 67 of the Complaint.

68. Defendant denies the allegations in Paragraph 68 of the Complaint.

69. Defendant denies the allegations in Paragraph 69 of the Complaint.

70. Defendant denies the allegations in Paragraph 70 of the Complaint.

71. Defendant admits the allegations in Paragraph 71 of the Complaint, and avers that it did not select Rousseau for the Real Estate Deputy Editor position or select him for a final panel interview because, unlike the selected candidate, he did not possess the combination of skills and experience, including service journalism and a variety of story forms, sought by The Times for the Real Estate Deputy Editor position, nor did he communicate a compelling vision for the Real Estate Deputy Editor role.

72. Defendant denies the allegations in Paragraph 72 of the Complaint and avers that Stewart was the decision-maker who selected the candidates who would receive a panel interview.

73. Defendant denies the allegations in Paragraph 73 of the Complaint.

74. Defendant denies the allegations in Paragraph 74 of the Complaint and refers the Court to Stewart's self-reviews for the contents thereof.

13

75.     Defendant denies the allegations in Paragraph 75 of the Complaint and refers the Court to Gunnell's self-reviews for the contents thereof.

76.     Defendant denies the allegations in Paragraph 76 of the Complaint.

77.     Defendant denies the allegations in Paragraph 77 of the Complaint.

78.     Defendant denies the allegations in Paragraph 78 of the Complaint.

79.     Defendant admits the allegations in Paragraph 79 of the Complaint. Defendant avers, however, that neither race nor sex played any role in Defendant's decision-making with respect to candidates for the Real Estate Deputy Editor position, including Rousseau, and that Defendant selected the most qualified candidate for the position.

80.     Defendant denies the allegations in Paragraph 80 of the Complaint and avers that neither race nor sex played any role in Defendant's decision-making with respect to candidates for the Real Estate Deputy Editor position.

81.     Defendant denies the allegations in Paragraph 81 of the Complaint except admits that the final four candidates for the Real Estate Deputy Editor position identified as alleged in Paragraph 81, and avers that neither race nor sex played any role in Defendant's decision-making with respect to candidates for the Real Estate Deputy Editor position.

82.     Defendant denies the allegations in Paragraph 82 of the Complaint and avers that neither race nor sex played any role in Defendant's decision-making with respect to candidates for the Real Estate Deputy Editor position.

83.     Defendant denies the allegations in Paragraph 83 of the Complaint.

84.     Defendant admits the allegations in Paragraph 84 of the Complaint and avers that the selected candidate was the most qualified candidate for the position, including, in part, because she held a Deputy Editor position at her previous employer and managed a team; had extensive

14

experience with service journalism and a variety of story forms; and she articulated a compelling vision for the future of The Times's real estate coverage that aligned with the Real Estate desk's goals to focus on service and visually-driven journalism. Defendant further avers that neither race nor sex played any role in Defendant's decision-making with respect to candidates for the Real Estate Deputy Editor position, including the successful candidate.

85.     Defendant denies the allegations in Paragraph 85 of the Complaint and avers that neither race nor sex played any role in Defendant's decision-making with respect to candidates for the Real Estate Deputy Editor position, including the successful candidate, who was the most qualified candidate for the position.

86.     Defendant denies the allegations in Paragraph 86 of the Complaint and avers that neither race nor sex played any role in Defendant's decision-making with respect to candidates for the Real Estate Deputy Editor position, including the successful candidate.

87.     Defendant denies the allegations in Paragraph 87 of the Complaint and avers that the selected candidate had real estate journalism experience covering commercial real estate. Defendant further avers that the job postings emphasized the importance of: "service journalism" (which they referenced three times); the ability to produce and edit stories in a variety of story forms; and familiarity with off-platform avenues to showcase The Times's journalism, as well as an eagerness to experiment with new ones as they arise — all skills the selected candidate possessed.

88.     Defendant denies the allegations in Paragraph 88 of the Complaint and avers that the selected candidate had real estate journalism experience covering commercial real estate. Defendant further avers that the job postings emphasized the importance of: "service journalism" (which they referenced three times); the ability to produce and edit stories in a variety of story

15

forms; and familiarity with off-platform avenues to showcase The Times's journalism, as well as an eagerness to experiment with new ones as they arise — all skills the selected candidate possessed.

89.     Defendant denies the allegations in Paragraph 89 of the Complaint.

90.     Defendant denies the allegations in Paragraph 90 of the Complaint and avers that Stewart reached out directly to Rousseau the day after he submitted his application to The Times for the Real Estate Deputy Editor position to schedule an interview, which took place with him on or about January 13, 2025 and that Gunnell spoke with Rousseau on or about February 10, 2025.

91.     Defendant denies the allegations in Paragraph 91 of the Complaint and avers that two of the four panel interviewers did not submit numerical scores for any candidate.

92.     Defendant denies the allegations in Paragraph 92 of the Complaint.

93.     Defendant denies the allegations in Paragraph 93 of the Complaint and avers that the selected candidate was the most qualified candidate for the Real Estate Deputy Editor role.

94.     Defendant denies the allegations in Paragraph 94 of the Complaint.

95.     Defendant denies the allegations in Paragraph 95 of the Complaint and avers that the Commission did not identify any evidence during the course of its eight-month investigation that race and/or sex factored into The Times's decision not to advance Rousseau to the interview panel.

96.     Defendant denies the allegations in Paragraph 96 of the Complaint and avers that the Commission did not identify any evidence during the course of its eight-month investigation that race and/or sex factored into The Times's decision to advance the selected candidate to the interview panel.

16

97.    Defendant denies the allegations in Paragraph 97 of the Complaint and avers that the Commission did not identify any evidence during the course of its eight-month investigation that race and/or sex factored into The Times's decision to hire the selected candidate.

98.    Defendant denies the allegations in Paragraph 98 of the Complaint and avers that the Commission did not identify any evidence during the course of its eight-month investigation that race and/or sex factored into The Times's decision not to select Rousseau for the Real Estate Deputy Editor position.

99.    Defendant denies the allegations in Paragraph 99 of the Complaint.

100.    Defendant denies the allegations in Paragraph 100 of the Complaint and avers that Defendant did not deprive Rousseau of any opportunities, and in fact, offered Rousseau at least two separate positions in 2024, prior to Rousseau's application for the Real Estate Deputy Editor position, that satisfied his previously-expressed career objectives. Defendant further avers that Rousseau declined these opportunities.

101.    Defendant denies the allegations in Paragraph 101 of the Complaint.

102.    Defendant denies the allegations in Paragraph 102 of the Complaint.

### AS TO "PRAYER FOR RELIEF"[1]

Paragraphs 103 A through I in the "PRAYER FOR RELIEF" section of the Complaint contain the Commission's prayer for relief, to which no response is required. To the extent a response may be required, Defendant denies that the Commission is entitled to any of the relief requested in Paragraphs 103 A through I in the "PRAYER FOR RELIEF" section of the Complaint and denies that Defendant violated any law.

---

[1] The Complaint does not contain a cause of action asserting a claim against Defendant. To the extent the Court deems that a cause of action has been asserted, Defendant denies that it engaged in any unlawful employment practices or violation of law against Rousseau as alleged in the Charge or as relied upon by the Commission and/or Rousseau in this lawsuit.

17

## AS TO "JURY TRIAL DEMAND"

Defendant denies that the trial of any issue to a jury is warranted. Defendant does not consent to the trial by jury of any issue not required by law to be tried to a jury, including but not limited to any determination of equitable remedies.

## AFFIRMATIVE DEFENSES

As separate Affirmative Defenses to the Complaint and without conceding that Defendant bears the burden of proof or persuasion as to any of them, Defendant avers as follows:

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state any cause of action. To the extent the Court deems that a cause of action has been stated (which it has not), the Complaint fails, in whole or in part, to state a cause of action upon which relief may be granted or for which the damages sought may be awarded.

## SECOND AFFIRMATIVE DEFENSE

The Commission failed to exhaust all available administrative remedies and/or otherwise failed to comply with the statutory prerequisites to the bringing of this action, pursuant to Title VII, prior to the Commission's filing of this action.

## THIRD AFFIRMATIVE DEFENSE

The Commission failed to satisfy its statutory administrative obligations to conciliate prior to commencing this action pursuant to Title VII.

## FOURTH AFFIRMATIVE DEFENSE

The Complaint fails to allege facts sufficient to allow recovery of punitive, liquidated, or exemplary damages.

18

## FIFTH AFFIRMATIVE DEFENSE

At all times relevant to the acts alleged in the Complaint, Defendant acted in conformity with all applicable laws, rules, regulations and guidance.

## SIXTH AFFIRMATIVE DEFENSE

All decisions made by Defendant with respect to Rousseau, Rousseau's employment, and the Real Estate Deputy Editor position were made without malice, reckless indifference, wanton negligence, or willful or conscious disregard of Rousseau's rights.

## SEVENTH AFFIRMATIVE DEFENSE

At all relevant times hereto, including prior to the alleged discriminatory acts referred to in the Complaint, Defendant adopted, maintained, and communicated appropriate policies and made good faith efforts to comply with anti-discrimination laws. Defendant exercised reasonable care to prevent and correct promptly any unlawful behavior, and Rousseau unreasonably failed to take advantage of the preventative or corrective opportunities provided by Defendant, including Defendant's internal complaint and/or grievance and arbitration process pursuant to the governing collective bargaining agreement. Some or all of the Commission's claims are barred because, even if any unlawful discrimination occurred (which Defendant denies), such conduct was and is prohibited by Defendant's policies and was not committed or authorized by Defendant. Defendant never authorized, ratified, or participated in any discriminatory conduct regarding Rousseau.

## EIGHTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by the doctrines of estoppel, waiver or unclean hands.

19

### NINTH AFFIRMATIVE DEFENSE

Defendant acted in good faith at all relevant times hereto and all of Defendant's actions were justified by legitimate, non-discriminatory and non-pretextual reasons that have nothing to do with race or sex. Defendant had reasonable grounds to believe its actions at all times complied with all applicable laws and had no actual or constructive notice of any violation. Defendant has not acted in reckless disregard of the law and, accordingly, has not engaged in any willful violation of the law.

### TENTH AFFIRMATIVE DEFENSE

Even assuming, arguendo, that any alleged employment actions experienced by Rousseau were motivated by improper reasons, which is expressly denied, Defendant would have made the same decision in any event, as a result of legitimate, non-discriminatory reasons.

### ELEVENTH AFFIRMATIVE DEFENSE

The Commission's claims for relief may be limited by the after-acquired evidence doctrine.

### TWELFTH AFFIRMATIVE DEFENSE

The Commission's claims are barred, in whole or in part, to the extent that Rousseau failed to mitigate or avoid any of the damages alleged in the Complaint.

### THIRTEENTH AFFIRMATIVE DEFENSE

The Complaint attempts to impose liability on Defendant for speech protected by the First Amendment.

### FOURTEENTH AFFIRMATIVE DEFENSE

The Complaint constitutes selective enforcement against Defendant in violation of the Fifth Amendment.

20

## FIFTEENTH AFFIRMATIVE DEFENSE

The Complaint constitutes retaliation for Defendant's protected newsgathering, publication and speech in violation of the First Amendment.

## SIXTEENTH AFFIRMATIVE DEFENSE

Defendant lacked fair notice that Plaintiff would consider its diversity, equity, or inclusion initiatives and/or its aspirational speech regarding the same, as alleged in the Complaint, to give rise to liability under Title VII. Accordingly, the Complaint violates the Due Process Clause of the Fifth Amendment.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The Complaint implements a new anti-discrimination enforcement policy that Plaintiff has adopted that is arbitrary and capricious because it is neither reasonable nor reasonably explained.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Complaint is arbitrary and capricious including because it was brought in bad faith; Plaintiff was improperly influenced by political decisionmakers and therefore relied on factors it should not have considered.

Dated: July 10, 2026

/s/ Evandro C. Gigante

PROSKAUER ROSE LLP
Evandro C. Gigante
Eleven Times Square
New York, New York 10036
(T) 212.969.3000
egigante@proskauer.com

21

PROSKAUER ROSE LLP
Atoyia S. Harris (pro hac vice admission forthcoming)
Poydras Center
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
(T) 504.310.2027
aharris@proskauer.com


GIBSON, DUNN AND CRUTCHER LLP
Theodore J. Boutrous Jr.
Katie Townsend
333 South Grand Avenue
Los Angeles, California 90071
(T) 213.229.7000
tboutrous@gibsondunn.com
ktownsend@gibsondunn.com

Attorneys for Defendant and Counterclaim Plaintiff
THE NEW YORK TIMES COMPANY

## COUNTERCLAIMS OF THE NEW YORK TIMES COMPANY

Counterclaim Plaintiff The New York Times Company ("The Times"), by and through its undersigned attorneys, alleges the following in support of its counterclaims against Counterclaim Defendants U.S. Equal Employment Opportunity Commission (the "Commission" or the "EEOC") and its chair and commissioners in their official capacities, based on its personal knowledge, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

104.    Government officials cannot "use the power of the State to punish or suppress disfavored expression." *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 188 (2024). Yet that is precisely what the Commission attempts to do here. Despite conducting an eight-month investigation and identifying no evidence that race or sex was considered when The Times hired a Deputy Editor for its Real Estate desk in April 2025, the EEOC nonetheless chose to file this meritless Title VII action against The Times—a news organization the President has repeatedly sued, attacked, and labeled a "TRUE ENEMY OF THE PEOPLE" for its journalism.[2] The Commission filed this action only eight days after The Times published an article reporting that the EEOC is under pressure to use its scarce resources to pursue flimsy (at best) claims of alleged discrimination that "fit the Trump administration's priorities," and a mere two days after The Times reported that it was being investigated by the EEOC. The Commission's retaliatory, bad faith use of its authority to target The Times violates the First and Fifth Amendments and the Administrative Procedure Act ("APA") and poses a uniquely insidious threat to a free and independent press, and to our

---

[2] Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 23, 2025, 12:32 AM), https://truthsocial.com/@realDonaldTrump/posts/115767241940653010 ("The Failing New York Times, and their lies and purposeful misrepresentations, is a serious threat to the National Security of our Nation . Their Radical Left, Unhinged Behavior, writing FAKE Articles and Opinions in a never ending way, must be dealt with and stopped. THEY ARE A TRUE ENEMY OF THE PEOPLE! Thank you for you [sic] attention to this matter. PRESIDENT DJT.").

democracy. *See Media Matters for Am. v. Paxton*, 138 F.4th 563, 581 (D.C. Cir. 2025) (affirming order enjoining a state attorney general investigation of a media organization in retaliation for its reporting, and noting that the "bad faith investigation" imposed "special burdens" on "newsgathering activities"); *see also Media Matters for Am. v. FTC*, No. CV 25-1959 (SLS), 2025 WL 2378009, at *1 (D.D.C. Aug. 15, 2025) ("It should alarm all Americans when the Government retaliates against individuals or organizations for engaging in constitutionally protected public debate. And that alarm should ring even louder when the Government retaliates against those engaged in newsgathering and reporting.").

105.    The Trump administration has made expressly clear its intent to use the powers of the federal government, including agency regulatory and enforcement authority, as a means to punish the administration's perceived "ENEMIES[,]" including the press. *See, e.g.*, Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 15, 2026, 7:48 PM), (President Trump stating he is "thrilled to see Brendan Carr, the Chairman of the Federal Communications Commission (FCC), looking at the licenses of some of these Corrupt and Highly Unpatriotic 'News' Organizations.")[3]; *see also, e.g.*, *Nat'l Pub. Radio, Inc. v. Trump*, No. 25-1674 (RDM), 2026 WL 877434, at *1, *24 (D.D.C. Mar. 31, 2026) (finding that President Trump "targeted" NPR with an executive order that sought to deprive it of federal funds in retaliation for its news reporting in violation of the First Amendment, calling it "another lever in the President's arsenal to punish or to extinguish speech he dislikes." (cleaned up)). So it should come as no surprise that the Commission has filed this Title VII enforcement action against The Times — a news organization the President has repeatedly called "treasonous" — in retaliation for The Times's First Amendment-protected

---

[3] Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 15, 2026, 7:48 PM), https://truthsocial.com/@realDonaldTrump/posts/116235861005528220.

newsgathering and reporting and, in the words of one of the EEOC's own commissioners, to "advance the administration's political agenda."[4]

106.   This lawsuit is extraordinary in every sense. Everything about the Commission's handling of this matter — from its investigation to the abrupt abandonment of its statutory obligation to engage in conciliation — has been marked by irregularities that evidence a Commission singularly focused on bringing this case against The Times irrespective of whether its claims have merit. Indeed, the EEOC rarely files Title VII lawsuits, but even among the limited cases the EEOC does choose to file, this lawsuit is one-of-a-kind. As EEOC Chair Andrea Lucas recently stated, the Commission's case against The Times "is the very first lawsuit in ten years that the agency brought on behalf of a white male."[5]

107.   To be clear, the EEOC's claims do not have merit. Despite pursuing an eight-month investigation of the Charge that included the collection of more than a thousand pages of documents from The Times and interviews with no fewer than nine witnesses, the Commission tellingly does not (and could not) point to any evidence in its Complaint to show that Rousseau was discriminated against on the basis of his race or sex in connection with The Times's hiring of a Real Estate Deputy Editor. Indeed, the Commission omits from its Complaint numerous facts it learned in its investigation that belie its claims of discrimination and further make clear that Rousseau, far from being denied opportunities by The Times, was repeatedly given them (including that he was offered two other newsroom positions in 2024 that aligned with his expressed career objectives and preferred geographic location, which he declined).

---

[4] Kalpana Kotagal, LinkedIn (May 5, 2026), https://www.linkedin.com/posts/kalpana-kotagal-26998b72_i-voted-against-authorizing-litigation-against-activity-7457508685750329345-x2Mn.
[5] *Ensuring Workplace Equity: Inside The EEOC's Priorities, "Fireside Chat" with EEOC Chair Andrea Lucas*, at 7:52, Fortune (May 20, 2026), https://fortune.com/media/1ae9dc4a-3f58-4d0c-b841-07d83cd82eee/.

108.     Undeterred by the lack of factual support for its lawsuit, the Commission claims the Court can infer that discrimination occurred based on nothing more than aspirational statements by The Times about the projected effect of lawful initiatives on its culture and leadership — speech that is itself protected by the First Amendment — and the false presumption that, because The Times selected a multiracial woman for a position over a white male applicant, the selection must have been motivated by race and/or sex. Title VII does not permit such baseless speculation. And neither the First nor the Fifth Amendment permits liability for protected speech about lawful workplace initiatives that, until recently, the Commission had encouraged.

109.     The successful candidate was selected to be the Deputy Editor on The Times's Real Estate desk because she was the *most* qualified candidate for the job. Unlike Rousseau, the selected candidate had, among other things, extensive experience with service journalism and a variety of story forms, both of which were emphasized in the job posting. Further, she articulated a compelling vision for the future of The Times's real estate coverage that aligned with the Real Estate desk's goals to focus on service and visually-driven journalism. Prior to joining The Times as Real Estate Deputy Editor, the selected candidate was already in a Deputy Editor position at Eater*,* where she managed others and edited impactful service journalism features, among other duties. The Times's aspirational leadership goal set forth in the February 2021 publication, "A Call to Action," subtitled "Building a Culture that Works for All of Us" (the "Call to Action") and upon which the Commission purports to base this lawsuit, did not impact the hiring decision at issue. In fact, as the Commission knows, the Real Estate Deputy Editor position at The Times is not even a "leadership" position as discussed in that report, and the hiring decision for this role would have had no impact on whether the aspirational leadership goal was met no matter who was selected.

110.    The Commission markedly deviated from its ordinary practices in almost every respect to file the flimsiest of lawsuits against The Times, a frequent target of the administration, on the heels of investigative reporting that brought to light scathing bipartisan criticism of the EEOC, its leadership, and its priorities from both inside and outside the Commission. The facts foreclose liability under Title VII. And the EEOC's blatantly retaliatory action targeting The Times violates the First and Fifth Amendments and the APA.

## JURISDICTION AND VENUE

111.    This Court has subject-matter jurisdiction because this action arises under the Constitution of the United States and federal statutes, *see* 28 U.S.C. § 1331, and because the Defendants are a United States agency and United States officials, *see* 28 U.S.C. § 1346(a)(2).

112.    The Court is authorized to award the requested relief under 28 U.S.C. §§ 1651, 2201, and 2202, and pursuant to its inherent equitable powers.

113.    Personal jurisdiction and venue are proper in this district under 28 U.S.C. § 1391(e).

## PARTIES

114.    Counterclaim Plaintiff The New York Times Company is a New York corporation doing business in the State of New York and the City of New York.

115.    Counterclaim Defendant the Equal Employment Opportunity Commission is an agency of the United States government.

116.    Counterclaim Defendant Andrea R. Lucas ("Chair Lucas") is the Chair of the EEOC. She is sued in her official capacity.

117.    Counterclaim Defendant Kalpana Kotagal ("Commissioner Kotagal") is a commissioner of the EEOC. She is sued in her official capacity.

27

118.    Counterclaim Defendant Brittany Bull Panuccio ("Commissioner Panuccio") is a commissioner of the EEOC. She is sued in her official capacity.

## FACTUAL ALLEGATIONS

### I.    The Times Is Being Targeted by the Administration Because of Its Journalism.

119.    The Times is one of the world's most trusted news organizations, known for its rigorous reporting and consistent adherence to the highest standards of journalistic integrity. The Times's mission is to seek the truth and help people understand the world.

120.    The Times's coverage of the Trump administration has repeatedly been recognized as exemplary. For example, earlier this year The Times won a Pulitzer Prize for a series of articles detailing how members of the administration and its allies have enriched themselves through lucrative business deals that raise conflict-of-interest concerns.

121.    President Trump and other members of his administration have repeatedly attacked The Times for its reporting, labeling it, among other things, "one of the worst and most degenerate newspapers in the History of our Country,"[6] and featuring The Times in a "leaderboard" of news media outlets who, in the White House's view, engage in "bias," "lie[s]," "malpractice," and "left wing lunacy."[7]

122.    When The Times reported that Elon Musk would have access to military secrets in the event of a war with China, President Trump responded by calling The Times "the enemy of the people," and said that its journalists have "fake sources," or, alternatively, that "they don't have sources." Regarding its reporting, the President claimed The Times "make[s] most of it up."[8]

---

[6] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 15, 2025, 11:45 PM), https://truthsocial.com/@realDonaldTrump/posts/115211918198289404.
[7] *Media Offenders*, The White House (last visited July 8, 2026), https://www.whitehouse.gov/mediabias/.
[8] Sharon Knoll, *Trump Slams New York Times as 'Enemy of the People' After Elon Musk War Briefings Report*, Yahoo! News (Mar. 21, 2025, 5:46 PM), https://www.yahoo.com/news/trump-slams-york-times-enemy-214642404.html.

123.    In response to a November 2025 Times article about the President's health, White House Press Secretary Karoline Leavitt called it a "fake news story."[9] And President Trump called the reporter who coauthored the article "ugly, both inside and out," and a "third-rate" journalist.[10] In a social media post in response to the article, President Trump wrote: "[T]he Radical Left Lunatics in the soon to fold New York Times did a hit piece on me that I am perhaps losing my Energy, despite facts that show the exact opposite. They know this is wrong, as is almost every thing [sic] that they write about me, including election results."[11] Following another article by The Times reporting about his health, the President called it "seditious, perhaps even treasonous" for The Times to "consistently do FAKE reports" about him.[12]

124.    After The Times published an article about his connections to Jeffrey Epstein, President Trump wrote in a social media post that "The Failing New York Times," along with its "lies and purposeful misrepresentations," is a "serious threat to the National Security of our Nation."[13]

125.    The Times's recent coverage of the Iran war has provoked a slew of criticism from the President. When asked by a Times reporter about whether his threats to bomb Iranian structures would constitute a war crime, President Trump responded that The Times "has no credibility" and

---

[9] Ryan King, *Leavitt blasts NY Times reporter for Trump health story, recalling how she covered Biden decline: 'Are you kidding me?'*, N.Y. Post (Dec. 1, 2025, 3:56 PM), https://nypost.com/2025/12/01/us-news/karoline-leavitt-blasts-ny-times-reporter-for-president-trump-health-story-recalling-how-she-covered-joe-biden-decline-are-you-kidding-me/.

[10] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 26, 2025, 9:47 AM), https://truthsocial.com/@realDonaldTrump/posts/115616545250020843.

[11] Gregory Svirnovskiy, *Trump rages about New York Times story on age: 'PERFECT PHYSICAL EXAM AND A COMPREHENSIVE COGNITIVE TEST'*, Politico (Nov. 26, 2025, 11:23 AM), https://www.politico.com/news/2025/11/26/donald-trump-nyt-age-health-00669553.

[12] Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 9, 2025, 9:11 AM), https://truthsocial.com/@realDonaldTrump/posts/115692843128539904.

[13] Trump, *supra* note 2.

is "running on past fumes."[14] The President also labeled Times journalist David Sanger's reporting on the Iran war "sort of treasonous" and "fake[.]"[15]

126.    Other members of the Trump administration, including Department of Defense a/k/a Department of War officials also have made "myriad statements . . . expressing disdain for reporting by The Times and other 'legacy' media outlets," *N.Y. Times Co. v. Dep't of Def.*, No. 1:26-cv-01690-PLF, ECF No. 17, at 23 (D.D.C. June 26, 2026). Secretary of Defense Pete Hegseth, for instance, has "compared the 'legacy Trump-hating press,'" including The Times, "to the biblical 'Pharisees' who 'held counsel against [Jesus].'" *Id.* at 22–24.

127.    In response to The Times's reporting about the construction of a new ballroom at the White House, Press Secretary Leavitt accused the reporters of having "never built anything,"[16] and President Trump took to social media to say that "[o]nce again, The Failing New York Times has attempted to grossly mischaracterize" the construction project.[17] According to President Trump, The Times is "A TRUE ENEMY OF THE PEOPLE" whose "Radical Left, Unhinged Behavior, writing FAKE Articles and Opinions in a never ending way, must be dealt with and stopped."[18]

128.    These attacks on The Times continue a pattern firmly established during President Trump's first term in office, when he frequently assailed The Times for its reporting, calling it

---

[14] Lindsay Kornick, *Trump proclaims 'failing' New York Times has no credibility, 'running on past fumes'*, Fox News (Apr. 7, 2026, 7:32 AM), https://www.foxnews.com/media/trump-proclaims-failing-new-york-times-credibility-running-past-fumes.amp.

[15] *Trump Calls NY Times Reporter "Treasonous" for Questioning Iran War Success*, Cspan (May 15, 2026), https://www.c-span.org/clip/white-house-event/trump-calls-ny-times-reporter-treasonous-for-questioning-iran-war-success/5200348.

[16] Karoline Leavitt (@PressSec), X (Mar. 29, 2026, 6:53 PM), https://x.com/PressSec/status/2038328708520415319.

[17] Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 26, 2026, 4:18 PM), https://truthsocial.com/@realDonaldTrump/posts/116467189750648826.

[18] Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 23, 2025, 12:32 AM), https://truthsocial.com/@realDonaldTrump/posts/115767241940653010.

among other things "failing," "phony," "Corrupt," "Fake News," "Fake Journalism," a "SCAM," "sick and desperate," "very dangerous for our Country!," a "disgrace to journalism" and "The Enemy of the People."[19] President Trump repeatedly accused The Times of reporting false or inaccurate information, calling Times reporting "100% NEGATIVE and FAKE!" and, when asked about a Times headline during a press conference in 2018, he responded that The Times "only write[s] phony stories."[20] Among other accusations he leveled at The Times, President Trump asserted that it "will lie & cheat anyway possible to make me look bad" and called it a "biased newspaper!"[21]

129.    The President and members of his administration have repeatedly sought to "deal[] with and stop[]" The Times.

130.    President Trump has sued The Times for its reporting on multiple occasions. In 2020, his re-election campaign, Donald J. Trump for President, Inc., sued The Times for defamation for publishing an op-ed describing a "quid pro quo" between then-candidate Trump and Russian officials before the 2016 presidential election; that lawsuit was dismissed. In 2021, he filed a lawsuit against The Times arising out of its Pulitzer Prize-winning reporting that delved into more than two decades of his tax information and revealed struggling properties, vast write-offs, an audit battle, and hundreds of millions in debt. *Trump v. N.Y. Times Co.*, No. 453299/2021 (N.Y. Sup. Ct.). That case was also dismissed, and The Times was awarded its costs and attorney's fees after the court found it was "a strategic lawsuit against public participation" under a provision

---

[19] Kevin Quealy, *The Complete List of Trump's Twitter Insults (2015-2021)*, N.Y. Times (Jan. 19, 2021), https://www.nytimes.com/interactive/2021/01/19/upshot/trump-complete-insult-list.html#the-new-york-times.
[20] *Remarks by President Trump in Press Gaggle,* The White House (June 15, 2018), https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-press-gaggle/.
[21] Quealy, *supra* note 19.

of New York law inspired by President Trump's history of "abusive and frivolous" litigation. *Id.*, NYCEF 84, at 7–9.

131.   In his second term in office, President Trump filed a $15 billion defamation lawsuit against The Times and a number of Times reporters arising out of their journalism. *See Trump v. N.Y. Times Co.*, No. 8:25-cv-02487, Dkt. 1 (M.D. Fla., Sept. 15, 2025). After filing the lawsuit, President Trump called Times journalist Maggie Haberman "just another SLEAZEBAG writer for The Failing New York Times" and threatened to "add[] Maggot [sic], and some of her 'associates,' into my Florida based Lawsuit against The Times which, very happily, seems to be proceeding nicely."[22] In a social media post announcing the suit, President Trump wrote: "The 'Times' has engaged in a decades-long method of lying about your Favorite President (ME!), my family, business, the America First Movement, MAGA, and our Nation as a whole. I am PROUD to hold this once respected 'rag' responsible."[23] More recently, in response to The Times's reporting about the war in Iran, President Trump posted: "The way the Corrupt and Failing New York Times is covering stories on a very battered and beat up Iran, through FAKE & MADE UP 'FACTS' is, in my opinion, 'TREASONOUS'" and added that he will "be adding all of [The Times's] false and ridiculous reporting to [his] multi Billion Dollar lawsuit against them. They are Criminals!"[24]

132.   The Times is also currently in litigation against the Trump administration's Department of Defense a/k/a Department of War over its efforts to curtail independent newsgathering and reporting about the Department and its leadership. As the U.S. District Court for the District of Columbia recently found, the "undisputed evidence" showed that the Department

---

[22] Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 13, 2026, 4:32 PM), https://truthsocial.com/@realDonaldTrump/116223767250350057.
[23] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 15, 2025, 11:45 PM), https://truthsocial.com/@realDonaldTrump/115211918198289404.
[24] Donald J. Trump (@realDonaldTrump), Truth Social (June 21, 2026, 6:28 PM), https://truthsocial.com/@realDonaldTrump/116790453299036730.

sought "to weed out disfavored journalists" and news organizations including, specifically, The Times from the Pentagon "based on editorial viewpoint — that is, whether the individual or organization is willing to publish only stories that are favorable to or spoon-fed by Department leadership." *N.Y. Times Co. v. Dep't of Defense*, No. 25-04218 (PLF), 2026 WL 788689, at *14 (D.D.C. Mar. 20, 2026). On June 30, 2026, the court entered a preliminary injunction prohibiting the Department from enforcing a provision of its interim policy restricting press access to the Pentagon, concluding that The Times was likely to succeed on the merits of its claim that the provision was retaliation against The Times for exercising its First Amendment rights. *N.Y. Times Co. v. Dep't of Defense*, No. 1:26-cv-01690-PLF, ECF No. 17, at 30 (D.D.C. June 26, 2026).

133.    The Times is not the only news organization that has been targeted by the President and his administration.

134.    For example, shortly after President Trump mused that broadcast networks were "97% against [him]," "maybe their license[s] should be taken away," and it would be "up to [FCC Chairman] Brendan Carr,"[25] Chairman Carr threatened to suspend ABC's broadcast licenses if it did not "take action" against late night host Jimmy Kimmel for jokes he had made about the President.[26] And the President has expressly encouraged Chairman Carr to expand those retaliatory efforts to others, stating he is "so thrilled to see Brendan Carr, the Chairman of the Federal Communications Commission (FCC), looking at the licenses of some of these Corrupt and Highly Unpatriotic 'News' Organizations."[27]

---

[25] David Folkenflik, *Jimmy Kimmel's suspension shows power of FCC's Brendan Carr*, NPR (Sept. 19, 2025, 1:27 PM), https://www.npr.org/2025/09/19/nx-s1-5546764/fcc-brendan-carr-kimmel-trump-free-speech.
[26] *Id.*
[27] Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 15, 2026, 7:48 PM), https://truthsocial.com/@realDonaldTrump/116235861005528220.

135.    In May 2025, the President issued an Executive Order prohibiting the provision of any federal funding to NPR expressly because of its journalism. After labelling NPR's reporting "radical, woke propaganda disguised as 'news,'"[28] the administration issued the Executive Order targeting NPR. NPR filed suit challenging the Executive Order, and the U.S. District Court for the District of Columbia ruled in NPR's favor, finding that the Executive Order was intended to "constitute[] a penalty for engaging in speech disfavored by the President" and violated the First Amendment. *Nat'l Pub. Radio, Inc.*, 2026 WL 877434 at *27.

136.    President Trump and other members of his administration have also filed numerous civil lawsuits against other news organizations for their reporting. *See, e.g.*, *Trump v. Dow Jones & Co.*, No. 1:25-cv-23232, ECF 59, at 14 (S.D. Fla. Apr. 13, 2026); *Trump v. Am. Broad. Cos.*, 742 F. Supp. 3d 1168 (S.D. Fla. 2024); *Trump v. CBS Broad. Inc.,* No. 2:24-cv-00236, ECF 1, at 1–6 (N.D. Tex. Oct. 31, 2024); *Patel v. Politico, LLC*, No. 3:19-cv-00879-MHL, 2019 WL 6467600 (E.D. Va. Nov. 26, 2019); *Patel v. Cable News Network*, 910 S.E.2d 532 (Va. Ct. App. 2025); *Patel v. The Atlantic Monthly Group*, No. 1:26-cv-1329, 2026 WL 1084024 (D.D.C. Apr. 20, 2026).

137.    The President and his administration have also proven willing to use the machinery of the Executive Branch to target individuals and institutions beyond just the press for exercising their First Amendment rights in ways the administration dislikes, as numerous courts across the country have found. *See, e.g.*, *Perkins Coie LLP v. U.S. Dep't of Justice*, 783 F. Supp. 3d 105, 165 (D.D.C. 2025) (holding that the President engaged in "unconstitutional retaliation and viewpoint discrimination, plain and simple"); *President and Fellows of Harvard College v. Dep't of Health & Human Servs.*, 798 F. Supp. 3d 77, 121 (D. Mass. 2025) ("[T]he Court is satisfied that Harvard

---

[28] *President Trump Finally Ends the Madness of NPR, PBS*, The White House (May 2, 2025), https://www.whitehouse.gov/releases/2025/05/president-trump-finally-ends-the-madness-of-npr-pbs/.

is entitled to summary judgment on its claim for First Amendment retaliation on the face of the administrative record."); *see also, e.g., Thakur v. Trump*, 176 F.4th 1187, 1201 (9th Cir. 2026) (affirming preliminary injunction entered in favor of university researchers whose federal grants were terminated due to their "perceived expression of DEI, DEIA, and environmental justice viewpoints" on First Amendment grounds). As The Times has reported, many of the same institutions also have been the target of actions by the EEOC. *See, e.g.*, Madeline Ngo, *Trump Administration Questions Law Firms Over D.E.I. Employment Practices*, N.Y. Times (Mar. 17, 2025) (reporting on the Trump administration's "aggressive steps to intimidate law firms," including letters sent by the EEOC to twenty law firms requesting information about DEI-related employment practices)[29]; Michael C. Bender and Michael S. Schmidt, *Trump Administration Escalates Harvard Feud With New Justice Dept. Investigation*, N.Y. Times (May 15, 2025) (reporting on an EEOC investigation of Harvard University)[30]; Alan Blinder, *Trump Administration Surveys Cornell Employees About Antisemitism*, N.Y. Times (Mar. 19, 2026) (reporting on an EEOC investigation of Cornell University and noting that the Commission "has emerged as a central part of the Trump administration's toolbox to pressure elite universities").[31]

## II.   The Times Has Extensively Covered the Trump Administration's EEOC.

138.    The Times has reported extensively on the EEOC. Between the time President Trump took office in January 2025 and the EEOC filed this lawsuit against The Times on May 5, 2026, The Times published more than a dozen articles about the Commission, including articles covering its shift in priorities under the Trump administration and specific investigations and other actions it has taken.

---

[29] https://www.nytimes.com/2025/03/17/us/politics/trump-dei-perkins-coie-law-firms.html/.
[30] https://www.nytimes.com/2025/05/15/us/politics/harvard-justice-dept-investigation.html.
[31] https://www.nytimes.com/2026/03/19/us/trump-administration-cornell-employees-antisemitism-eeoc.html.

139.    For example, soon after President Trump's second inauguration, The Times published an article on the President's removal of two EEOC commissioners in a round of "late-night firings," that were reportedly tied to a larger effort to use the Commission's powers to put an end to diversity, equity, and inclusion ("DEI") policies that the Commission previously had endorsed.[32]

140.    The Times's coverage has included reporting about the EEOC's leadership and, specifically, the Commission's direction under Chair Lucas. For instance, in July 2025, The Times published an article reporting that the Senate had confirmed Chair Lucas for a renewed term as EEOC commissioner. The article described Chair Lucas as being "at the forefront of President Trump's war on diversity, equity, and inclusion," and reported that during her tenure as Chair, the Commission's decision to target DEI initiatives and reinforce the binary nature of gender had "upended" the Commission's "traditional role of a bipartisan agency focused on enforcing civil rights law in the workplace."[33] More recently, on February 27, 2026, The Times published an article describing the extent to which the Commission has been recast under Chair Lucas as "an extension of President Trump's executive authority and an enforcer of his agenda."[34]

141.    On January 27, 2026, The Times published an article titled "Employment Commission Chair Recasts Workplace Discrimination in Trump's Image." The article included

---

[32] Matthew Goldstein and Emily Steel, *Trump Fired E.E.O.C. Commissioners in Late-Night Purge*, N.Y. Times (Jan. 28, 2025), https://www.nytimes.com/2025/01/28/business/trump-eeoc-commissioners-fired.html.

[33] Niko Gallogly, *Andrea Lucas Confirmed to Equal Employment Opportunity Commission*, N.Y. Times (July 31, 2025), https://www.nytimes.com/2025/07/31/us/politics/andrea-lucas-equal-employment-opportunity-commission.html.

[34] Rebecca Davis O'Brien, *Employment Commission Says Agencies Can Restrict Bathroom Use by Sex*, N.Y. Times (Feb. 27, 2026), https://www.nytimes.com/2026/02/27/us/politics/eeoc-gender-bathrooms-transgender.html.

statements from individuals highly critical of Chair Lucas and the EEOC's dramatic shift in enforcement priorities.[35]

142.    The January 27 article quoted former EEOC commissioners as saying that Chair Lucas was "distorting the intent of the Civil Rights Act" and merely "paying lip service to equal treatment while using her position to write MAGA grievances into federal law."

143.    The January 27 article also included criticism of Chair Lucas by her predecessor, former EEOC Chair Charlotte Burrows, who described Chair Lucas's message that white Americans would receive preferential treatment under the Trump administration as "the opposite of equal opportunity." The article also included former EEOC Chair Jenny Yang's statement that the Commission under Chair Lucas was exhibiting "a disregard for the law" and a "politicization" of its priorities.

144.    Others quoted in the January 27 article questioned whether the EEOC was straying from its statutory mission to ensure equal employment opportunities. The article quoted former commissioner Jocelyn Samuels as saying that the Commission was "neglecting [its] legal duty to protect workers equally." And it included a statement from Josh Boxerman, an employee at the National Employment Law Project, who said Chair Lucas was "clos[ing] the door of the E.E.O.C. to groups that are disfavored by the president."

145.    On April 27, 2026, the week before the EEOC filed this lawsuit, The Times published a lengthy investigative piece about the EEOC titled "Employment Agency Pushes Discrimination Cases That Match Trump's Agenda." The article reported that EEOC employees

---

[35] Rebecca Davis O'Brien, *Employment Commission Chair Recasts Workplace Discrimination in Trump's Image* (Jan. 27, 2026), https://www.nytimes.com/2026/01/27/us/politics/eocc-dei-employment-discrimination.html.

were "under intense pressure" to bring cases that "fit the Trump administration's priorities" — even when those cases were supported by "little evidence" and had "tenuous legal bases."[36]

146.    The April 27 article reported that EEOC staff in several districts were "struggling to find complaints with merit" about instances of discrimination against white men; these employees described being "pressed by their superiors to look for reasons to keep those cases alive, even when evidence was weak." The Times reported that these employees felt compelled to speak because they feared the EEOC had abandoned its "moral calling" of enforcing civil rights law in favor of simply "carry[ing] out President Trump's executive orders."

147.    The article also reported that Chair Lucas had told members of her staff that she is "under pressure" to bring cases that "the administration favors."

148.    On May 3, 2026, two days before this lawsuit was filed against it, The Times reported that the EEOC had been investigating a claim of unlawful discrimination brought by a white male Times employee since July 2025. The article included a statement from The Times's spokesperson calling the EEOC's allegations "meritless and politically motivated."[37]

**III.    The EEOC Brings This Action in Retaliation for The Times's Protected Speech.**

149.    The EEOC singled out The Times for adverse treatment because of the Trump administration's disdain for The Times's protected newsgathering, reporting, and speech.

150.    The EEOC is committed to pursuing the President's agenda. As Chair Lucas put it at her re-confirmation hearing: "I've been very clear: The agency is not an independent agency."[38]

---

[36] Rebecca Davis O'Brien, *Employment Agency Pushes Discrimination Cases That Match Trump's Agenda*, N.Y. Times (Apr. 27, 2026), https://www.nytimes.com/2026/04/27/us/politics/eeoc-trump-discrimination-cases.html.

[37] Rebecca Davis O'Brien, *E.E.O.C. Investigating Discrimination Claim at The New York Times*, N.Y. Times (May 3, 2026), https://www.nytimes.com/2026/05/03/business/economy/eeoc-discrimination-claim-new-york-times.html.

[38] O'Brien, *supra* note 35.

She reiterated that commitment last month, when asked about this lawsuit against The Times, telling "critics" that "we are going to advance the President's priorities . . . ."[39]

151.    As described above, The Times has long been a target of attacks by the President and others in his administration for its newsgathering and reporting. And it has published numerous articles, including on January 27, 2026, and April 27, 2026, detailing significant criticism of the EEOC in particular, including its politicization under Chair Lucas and its prioritization of meritless cases that serve the President's political objectives and target entities and institutions the President and his administration disfavor.

152.    On May 5, 2026, less than two weeks after The Times's April 27 article that reported on the "intense pressure" EEOC employees were under to pursue "tenuous" cases that "fit the Trump administration's priorities" — and only two days after The Times published an article quoting a company representative calling the EEOC's investigation against it "politically motivated" — the EEOC filed this action against The Times. The EEOC issued a press release the same day quoting Chair Lucas as stating: "No one is above the law — including 'elite' institutions."[40]

153.    In both investigating and bringing this action against The Times, the EEOC markedly deviated from its ordinary practices in multiple respects. After transferring its investigation from New York to a field office in Alabama, the Commission spent approximately eight months investigating The Times. It demanded and received more than a thousand pages of internal documents from The Times and interviewed no fewer than nine witnesses — devoting an extraordinary level of the Commission's attention and resources to investigating The Times.

---

[39] *Fireside Chat*, *supra* note 5.
[40] *EEOC Sues The New York Times for DEI-Related Race and Sex Discrimination*, EEOC (May 5, 2026), https://www.eeoc.gov/newsroom/eeoc-sues-new-york-times-dei-related-race-and-sex-discrimination.

154.    Despite the fact that the EEOC's approximately eight-month investigation yielded no evidence that Rousseau had been discriminated against on the basis of his race or sex in connection with the Real Estate Deputy Editor position — including no evidence that any of The Times's aspirational statements or initiatives in the Call to Action referenced in the Complaint played any role in the relevant hiring decision — the EEOC filed a Title VII lawsuit anyway. And the EEOC did so after abruptly and prematurely ending conciliation efforts.

155.    It is exceedingly rare for the EEOC to initiate its own Title VII lawsuit in federal court instead of, for example, issuing a right-to-sue letter to the charging party. According to the Commission's own data, it filed only 107 lawsuits in FY2025, a year in which it received more than 88,000 charges.[41] Further, the EEOC's own guidance states that filing lawsuits is a last resort — the EEOC historically "files suit in less than 8 percent of the cases where it believes discrimination occurred and conciliation was unsuccessful."[42] Moreover, here, Rousseau is and has been represented by able counsel and could have easily sought his own relief.

156.    The EEOC's filing of its own lawsuit is significantly more burdensome for a defendant than the issuance of a right-to-sue letter, including because it places the weight of the federal government behind the suit.

157.    The same day that the EEOC filed this suit, one of the EEOC's three sitting Commissioners, Commissioner Kalpana Kotagal, stated in a social media post that she had "voted against authorizing litigation against" The Times because she "disagree[d] with the substance of the case." She stated that she "fear[ed] [that] this litigation is driven not by the merits, but by a desire to advance the administration's political agenda." Commissioner Kotagal further stated:

---

[41] EEOC, *Office of General Counsel Fiscal Year 2025 Annual Report* (last visited July 8, 2026), https://www.eeoc.gov/office-general-counsel-fiscal-year-2025-annual-report.
[42] EEOC, *What You Should Know: The EEOC, Conciliation, and Litigation* (Jan. 21, 2015), https://www.eeoc.gov/laws/guidance/what-you-should-know-eeoc-conciliation-and-litigation.

"Notably, this litigation is filed on the heels of New York Times reporting on the weaponization of the agency, and the diversion of limited resources toward cases that align with the administration's priorities."[43]

158.    The retaliatory nature of the EEOC's lawsuit is further confirmed by the lack of evidence that The Times discriminated against Rousseau on the basis of his race and/or sex. As former EEOC commissioner Chai Feldblum put it when describing the Complaint filed in this case: "There is no actual evidence that [Rousseau] was more qualified than [the successful candidate] . . . . [The Commission is] putting out [its] best facts in this complaint, and the facts are pathetic."[44]

159.    Specifically, despite an extensive, eight-month investigation, the entire basis for the EEOC's lawsuit — the only non-conclusory, factual material in the EEOC's Complaint — consists of aspirational statements made by The Times about the effect of lawful initiatives on its culture and leadership, speech that is itself constitutionally protected, and that the Commission did not find any evidence was tied to the employment decision at issue. Indeed, The Times provided the Commission with evidence that directly refutes any claim that Rousseau was discriminated against, including evidence that candidates of color of both sexes with *more real estate experience than Rousseau* also were not advanced during the hiring process. Yet the Commission omits all such facts from the Complaint, which underlines that the EEOC's motivation in bringing this lawsuit was to target and punish The Times for exercising its First Amendment rights.

160.     In sum, this extraordinary lawsuit was filed on the heels of The Times reporting on pointed criticism of the EEOC, and Chair Lucas in particular, by both current and former EEOC

---

[43] Kotagal, *supra* note 4.

[44] Bryce Covert, *Lawyer on EEOC's New York Times Lawsuit Has History Battling Discrimination Against Men*, The Intercept (May 6, 2026, 3:55 PM), https://theintercept.com/2026/05/06/eeoc-nyt-lawsuit-discrimination-men/.

employees. It was filed by a Commission that has expressly disavowed any independence from the President and is expressly committed to pursuing his agenda. And it attacks a news organization that the President has repeatedly disparaged for its newsgathering and reporting, including by declaring that it "must be dealt with and stopped." This lawsuit is retaliation in violation of the First Amendment.

**IV.      The EEOC's Claimed Basis for This Lawsuit Is The Times's Protected Speech Regarding Lawful Initiatives That Were Consistent with Past EEOC Guidance.**

161.    In February 2021 — more than four years prior to the hiring decision at issue — The Times published the Call to Action, a lengthy report on its workplace culture and systems that included aspirational goals for lawful initiatives that The Times hoped would contribute to it becoming a more "diverse, equitable, and inclusive" company. In the report, The Times discussed various initiatives aimed at "creat[ing] an environment where we all can do our best work," including by ensuring that women, racial minorities, and other historically underrepresented groups did not face cultural or systemic barriers to advancing into leadership positions at The Times. The Times expressed the view that those initiatives would "make our journalism, our business and our company stronger" and "make The Times a better place to work, for all of us."[45]

162.    The Times's speech and initiatives relating to diversity, equity, and inclusion cited in the Commission's Complaint were consistent with — and even encouraged by — relevant guidance issued by the EEOC.

163.    For decades, the EEOC has consistently told regulated parties that diversity, equity, and inclusion initiatives are lawful and encouraged.

---

[45] *A Call to Action: Building a Culture That Works for All of Us*, N.Y. Times (Feb. 2021), https://www.nytco.com/a-call-to-action/.

164.    For example, the 1996–2000 EEOC's *Best Practices of Private Sector Employers* described the "roles played by goals in [companies'] promotion and career advancement." One example of a best practice explained that diversity goals "are not quotas" but instead are "flexible and require good faith efforts"; in "meeting these goals . . . candidates are selected from among the best qualified." The EEOC explained that such practices "go above and beyond the requirements of the law," and there is "no indication the profiled practices cause or result in unfairness."

165.    In 2006, the Commission published a guidance document — *Section 15 Race and Color Discrimination Guidance* — encouraging "diversity efforts to improve opportunities for racial minorities in order to carry out the Congressional intent embodied in Title VII." The guidance stated: "Title VII permits diversity efforts designed to open up opportunities to everyone. For example, if an employer notices that African Americans are not applying for jobs in the numbers that would be expected given their availability in the labor force, the employer could adopt strategies to expand the applicant pool of qualified African Americans such as recruiting at schools with high African American enrollment."

166.    The EEOC's 2007 ERACE ("Eradicating Racism and Colorism from Employment") Initiative's *Best Practices for Employers and Human Resources/EEO Professionals* guidance said that one best practice was to "[r]ecruit, hire, and promote with EEO principles in mind, by implementing practices designed to widen and diversify the pool of candidates considered for employment openings, including openings in upper level management."

167.    The EEOC's own internal efforts also communicated the lawfulness of DEI initiatives like The Times's. For example, the EEOC's own "Strategic Plan for Fiscal Years 2022-

43

2026" outlined as one of its objectives "enhanc[ing] diversity, equity, [and] inclusion" in its workplace.

168.    On June 29, 2023, after the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College* held that certain universities' race-based admissions practices violated the Equal Protection Clause, 600 U.S. 181 (2023), the EEOC released a statement describing its view on the impact of that decision for employers. The Chair at the time, Charlotte Burrows, explained that the *SFFA* decision "does not address employer efforts to foster diverse and inclusive workforces or to engage the talents of all qualified workers, regardless of their background. It remains lawful for employers to implement diversity, equity, inclusion, and accessibility programs that seek to ensure workers of all backgrounds are afforded equal opportunity in the workplace."[46]

169.    On May 22, 2024, Chair Lucas delivered remarks entitled *The Future of DEI, Disparate Impact, and EO 11246 after Students for Fair Admission v. Harvard/UNC*. She said that "[b]ecause *SFFA* did not directly change the law in the employment context, DEI programs and policies and other employment policies, programs, and decisions that were legal before *SFFA* likely remain legal."[47]

170.    The EEOC's "Strategic Enforcement Plan for Fiscal Years 2024–2028" — which was issued after the *SFFA* decision and remained in effect at the time of the hiring decision at issue in this case — reflected the EEOC's continued commitment to supporting employer DEI efforts. The plan held that "the EEOC will support employer efforts to implement lawful and appropriate

---

[46] EEOC, *Statement from EEOC Chair Charlotte A. Burrows on Supreme Court Ruling on College Affirmative Action Programs* (June 29, 2023), https://www.eeoc.gov/newsroom/statement-eeoc-chair-charlotte-burrows-supreme-court-ruling-college-affirmative-action.
[47] Andrea R. Lucas, *The Future of DEI, Disparate Impact, and EO 11246 After* Students for Fair Admissions v. Harvard/UNC, EEOC (May 22, 2024), https://www.eeoc.gov/future-dei-disparate-impact-and-eo-11246-after-students-fair-admissions-v-harvardunc.

diversity, equity, inclusion, and accessibility (DEIA) practices that proactively identify and address barriers to equal employment opportunity, help employers cultivate a diverse pool of qualified workers, and foster inclusive workplaces."

171.    The Times's statements regarding its own workplace culture and systems, including aspirational goals, are themselves protected speech. The EEOC has cited no evidence in its Complaint that The Times's speech resulted in race or sex being taken into account with respect to the relevant hiring decision. Indeed, The Times's speech and initiatives relating to DEI that are referenced in the Complaint played no role in the hiring decision that is challenged by the EEOC.

172.    The Times lacked fair notice that the EEOC would interpret Title VII as subjecting it to liability for the speech and/or initiatives related to its workplace culture and systems, including aspirational goals, that are cited in the Complaint at the time it engaged in such speech and/or initiatives. It was not until *years after* the February 2021 Call to Action cited by the EEOC in its Complaint that the EEOC began to change its position with respect to the lawfulness of DEI-related speech and initiatives.

173.    For example, in February 2026, Chair Lucas sent a letter to leaders of Fortune 500 companies warning them that "a company's so-called diversity, equity, and inclusion (DEI) policies, programs, or practices" may constitute "race and sex-based discrimination in employment."[48]

174.    On June 4, 2026, *after* this lawsuit was filed, the EEOC published a new "National Enforcement Plan for Fiscal Years 2025–2029." The new plan features unexplained reversals with respect to policies and practices that the EEOC had long endorsed. Whereas the EEOC had previously referred to goals for diverse workforces as a best practice, the new plan called such

---

[48] Andrea R. Lucas, *Reminder of Title VII Obligations Related to DEI Initiatives*, EEOC (Feb. 26, 2026), https://www.eeoc.gov/reminder-title-vii-obligations-related-dei-initiatives.

45

practices "proxies for quotas" that purportedly "encourage or incentivize race- and sex-based decision making." As Commissioner Kotagal put it, the new plan, among other things, "asserts that widespread practices, such as diversity statements and employers' publication of demographic data, are evidence of discrimination without any legal justification for this novel pronouncement."[49]

175.    The Commission's abrupt shift from its longstanding guidance, policies, and practices, including with respect to statements of "aspirational goals," deprived The Times of fair notice as to what the Commission would consider prohibited under Title VII. By basing liability on The Times's aspirational speech about workplace initiatives instead of actual evidence of discrimination in connection with the hiring decision at issue, the Commission has, without fair notice, impermissibly treated The Times's speech as a basis for Title VII liability.

**FIRST COUNTERCLAIM FOR RELIEF**
**VIOLATION OF THE FIRST AMENDMENT—RETALIATION**

**(Equitable Cause of Action—*Ultra Vires*)**

176.    The Times incorporates the allegations of the preceding paragraphs by reference.

177.    The EEOC unconstitutionally retaliated against The Times because The Times engaged in protected newsgathering, publishing, and speech. The EEOC took adverse action against The Times and there was a causal connection between that adverse action and The Times's First Amendment-protected newsgathering, publishing, and speech.

178.    The Times engaged in protected newsgathering, publishing, and speech, including reporting about the EEOC and the Trump administration. The Times also engaged in protected

---

[49] Kalpana Kotagal, LinkedIn (June 4, 2026), https://www.linkedin.com/posts/kalpana-kotagal-26998b72_full-statement-on-nep-activity-7468399527134167040-TWno.

speech when it expressed its views about its own workplace culture, systems, and values, including with respect to diversity, equity, and inclusion.

179.    The Times's protected newsgathering, publishing, and speech motivated the EEOC to take adverse action against it. There was a causal connection between The Times's protected newsgathering, publishing and speech and the EEOC's investigation of the Charge and the filing of this action. At minimum, The Times's First Amendment-protected activity was a substantial factor in the Commission's decision to bring this enforcement action against The Times.

180.    The EEOC's initiation of its own lawsuit against The Times was significantly more serious than other actions the EEOC had discretion to take. The EEOC's action against The Times would deter a similarly situated entity of ordinary firmness from exercising its constitutional rights.

181.    The Times has an equitable cause of action to sue to enjoin unconstitutional actions by federal officers.

182.    The Court should declare the EEOC's lawsuit unconstitutional and *ultra vires* under the First Amendment and enjoin the Commission from continuing to prosecute it.

<u>**SECOND COUNTERCLAIM FOR RELIEF**</u>
<u>**VIOLATION OF THE DUE PROCESS CLAUSE—FAIR NOTICE**</u>

**(Equitable Cause of Action—*Ultra Vires*)**

183.    The Times incorporates the allegations of the preceding paragraphs by reference.

184.    The EEOC's lawsuit against The Times violates the Fifth Amendment's Due Process Clause because The Times lacked fair notice that the aspirational statements and initiatives related to diversity, equity, and inclusion that are cited in the Complaint could subject it to liability under the EEOC's interpretation of Title VII. That lack of fair notice is the result of the EEOC's abrupt change in its interpretation of Title VII and in what it views as consistent with or violative of that statute.

185.    The Times lacked fair notice that the speech and initiatives relating to diversity, equity, and inclusion cited as an alleged basis for liability in the Complaint could subject it to liability under Title VII as interpreted by the EEOC. The Complaint points to, among other things, The Times's publication of annual "Diversity and Inclusion Reports" showing the demographic composition of its employees and new hires as well as The Times's aspirational goals for a diverse and inclusive workforce. But the EEOC for years had publicly endorsed similar speech and related initiatives — including, for instance, diversity goals — as not only lawful, but as best practices. Even after the Supreme Court's decision in *SFFA v. Harvard*, the EEOC maintained the position that this decision did "not address employer efforts to foster diverse and inclusive workforces" and that it "remains lawful for employers to implement diversity, equity, inclusion, and accessibility programs."

186.    The EEOC's lawsuit against The Times reflects the position outlined in its new National Enforcement Plan that considers statements of "aspirational goals" for diverse workforces to be unlawful "proxies for quotas" that "encourage or incentivize race- and sex-based decision making." Because the EEOC only published this new National Enforcement Plan *after* suing The Times, The Times lacked fair notice of the activity that the EEOC would consider unlawful under Title VII.

187.    Despite conducting an eight-month investigation, the EEOC cited no evidence in its Complaint that The Times's speech or initiatives resulted in race or sex being taken into account with respect to the relevant hiring decision. And insofar as the EEOC's lawsuit seeks to hold The Times liable for previously approved speech and workplace initiatives, it violates The Times's rights under the Due Process Clause.

48

188. The Times has an equitable cause of action to sue to enjoin the violation of its due process rights by federal officers.

189. The Court should declare the EEOC's lawsuit unconstitutional and *ultra vires* under the Fifth Amendment's Due Process Clause and enjoin the Commission from continuing to prosecute it.

**THIRD COUNTERCLAIM FOR RELIEF**
**ARBITRARY OR CAPRICIOUS AGENCY ACTION**

**(APA Cause of Action)**

190. The Times incorporates the allegations of the preceding paragraphs by reference.

191. The EEOC's abrupt termination of conciliation proceedings and initiation of this enforcement action constitutes final agency action reviewable under the APA. This action was the culmination of the Commission's decision-making process and gave rise to legal consequences.

192. The EEOC's decision to terminate conciliation proceedings and initiate this enforcement action was arbitrary and capricious under 5 U.S.C. § 706(2)(A) because it was neither reasonable nor reasonably explained. That decision was made in bad faith based on improper considerations that Congress did not intend the EEOC to consider — including, chiefly, the Trump administration's animus towards The Times for its newsgathering, publishing, and speech.

193. The EEOC's decision to terminate conciliation proceedings and initiate a lawsuit also was not in accordance with law, contrary to The Times's constitutional rights, and failed to observe procedures required by law — all in violation of the APA. 5 U.S.C. § 706(2)(A), (B), (D).

194. Because the EEOC's lawsuit against The Times violates the APA, it should be held unlawful and set aside.

49

## PRESERVATION OF DEFENSES

195.    Defendant and Counterclaim Plaintiff reserves the right to raise additional and other affirmative defenses that may subsequently become or may appear upon information and belief to be applicable to the Complaint.

## JURY TRIAL DEMAND

196.    Defendant and Counterclaim Plaintiff demands a trial by jury for any issue that is triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaim Plaintiff respectfully requests that this Court grant a judgment in its favor against Plaintiff as follows:

- Dismissing the Complaint in its entirety, with prejudice;
- Declaring that the EEOC's actions, including the filing of this lawsuit against The Times, violate the First Amendment and Fifth Amendment and the APA;
- Enjoining the EEOC from continuing to prosecute this lawsuit against The Times;
- Vacating the EEOC's decision to initiate this enforcement action or, in the alternative, in the event the Complaint is not dismissed in its entirety, with prejudice, and this action enjoined, vacating the EEOC's decision to terminate conciliation;
- Awarding to The Times its reasonable costs and attorney's fees in accordance with law; and
- Granting such other and further relief that the Court may deem just and proper.

Dated: July 10, 2026

/s/ Theodore J. Boutrous Jr.

GIBSON, DUNN AND CRUTCHER LLP
Theodore J. Boutrous Jr.
Katie Townsend
333 South Grand Avenue
Los Angeles, California 90071
(T) 213.229.7000
tboutrous@gibsondunn.com
ktownsend@gibsondunn.com

50

PROSKAUER ROSE LLP
Evandro C. Gigante
Eleven Times Square
New York, New York 10036
(T) 212.969.3000
egigante@proskauer.com

PROSKAUER ROSE LLP
Atoyia S. Harris (pro hac vice admission
forthcoming)
Poydras Center
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
(T) 504.310.2027
aharris@proskauer.com

Attorneys for Defendant and Counterclaim Plaintiff
THE NEW YORK TIMES COMPANY