**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

    -and-

BRYANT ROUSSEAU,

        Intervenor-Plaintiff,

    -against-

THE NEW YORK TIMES COMPANY,

        Defendant.

Civil Action No. 26-CV-3704-GHW-RFT

THE NEW YORK TIMES COMPANY,

        Counterclaim Plaintiff,

    -against-

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, et. al.,

        Counterclaim Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF EEOC'S MOTION TO STRIKE
CERTAIN AFFIRMATIVE DEFENSES**

# **TABLE OF CONTENTS**

I. BACKGROUND ................................................................................................ 5

II. LEGAL STANDARD ...................................................................................... 6

III. ARGUMENT .................................................................................................. 7

    A. Second Affirmative Defense ................................................................. 8

    B. Third Affirmative Defense .................................................................. 10

    C. Eighth Affirmative Defense ................................................................ 12

    D. Thirteenth Affirmative Defense .......................................................... 14

    E. Fourteenth Affirmative Defense .......................................................... 15

    F. Fifteenth Affirmative Defense ............................................................ 16

    G. Sixteenth Affirmative Defense ........................................................... 17

    H. Seventeenth and Eighteenth Affirmative Defenses ............................ 18

IV. CONCLUSION .............................................................................................. 19

Cases

*AT&T Co. v. E.E.O.C.*, 270 F.3d 973 (D.C. Cir. 2001) ................................................ 20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2013)................................................... 8

*Birmingham v. Ogden*, 70 F. Supp. 2d 353 (S.D.N.Y. 1999) ....................................... 16

*Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421 (S.D.N.Y. 2010) .............................. 8

*E.E.O.C. v. AZ Metro Distributors, LLC*, 272 F. Supp. 3d 336 (E.D.N.Y. 2017) ........................... 9

E.E.O.C. v. AZ Metro Distributors, LLC, No. 15-CV-5370-ENV-PK, 2016 WL 10679469 (E.D.N.Y. Dec. 20, 2016)........................................................................ 18

*E.E.O.C. v. First Nat. Bank of Jackson*, 614 F.2d 1004 (5th Cir. 1980) ................................. 16, 18

*E.E.O.C. v. Frontier Hot-Dip Galvanizing, Inc.*, No. 16-CV-0691V(SR), 2017 WL 11309771 (W.D.N.Y. Dec. 18, 2017)........................................................................ 10

*E.E.O.C. v. Green Lantern Inn, Inc.*, No. 19-CV-6704 (FPG) (MJP), 2021 WL 4086148 (W.D.N.Y. Aug. 19, 2021) ................................................................................ 8

*E.E.O.C. v. Kelley Drye & Warren, LLP*, No. 10-CV-655-LTS-MHD, 2011 WL 3163443 (S.D.N.Y. July 25, 2011)................................................................................ 9

*E.E.O.C. v. Protocol of Amherst, Inc.*, No. 19-CV-00598-LJV-JJM, 2020 WL 2130688 (W.D.N.Y. Mar. 16, 2020).......................................................................... 13, 15, 17

*E.E.O.C. v. SSM & RC Inc.*, No. 05-CV-6495-CJS, 2007 WL 1613580 (W.D.N.Y. June 1, 2007) ................................................................................................ 15

*E.E.O.C. v. United Parcel Serv., Inc.*, No. 15-CV-4141-MKB, 2017 WL 9482105 (E.D.N.Y. Mar. 9, 2017) ................................................................................ 9, 10, 13, 15, 17

*Gen. Tel. Co. of the Nw. v. E.E.O.C.*, 446 U.S. 318 (1980)........................................... 14

*GEOMC Co. v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 96 (2d Cir. 2019).......................... 8, 13

*Hintermaier v. Equifax Info. Servs. LLC*, No. 24 Civ. 9697 (ALC) (RFT), 2025 WL 4377764

    (S.D.N.Y. Nov. 26, 2025) ............................................................................................. 8

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ................................................................ 15, 16

*Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019) ................................................................ 17

*Lunney v. United States*, 319 F.3d 550 (2d Cir. 2003) ............................................................ 19

*Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480 (2015) ....................................................... 11, 12

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 760 F.3d 151 (2d Cir. 2014) ............. 20

*S.E.C. v. McCaskey*, 56 F. Supp. 2d 323 (S.D.N.Y. 1999) ...................................................... 8, 13

*Saks v. Franklin Covey Co.*, 316 F.3d 337 (2d Cir. 2003) ........................................................ 17

*Sec. & Exch. Comm'n v. Rayat*, No. 21-CV-4777 (LJL), 2021 WL 4868590 (S.D.N.Y. Oct. 18,

    2021) ...................................................................................................................... 14

*United States v. Am. Elec. Power Serv. Corp.*, 258 F. Supp. 2d 804 (S.D. Ohio 2003) ............... 16

*United States v. Andrews*, No. 3:20-CV-1300 (JCH), 2022 WL 23030326 (D. Conn. Mar. 30, 2022)

    .............................................................................................................................. 14

*United States v. Est. of Hage*, 810 F.3d 712 (9th Cir. 2016) ................................................... 20

    Other Authorities

5 U.S.C. § 701(a)(2) ............................................................................................................. 19

5 U.S.C. § 706(2)(A) ............................................................................................................ 19

42 U.S.C. § 2000e et seq. ....................................................................................................... 6

42 U.S.C. § 2000e-2(a) ......................................................................................................... 18

42 U.S.C. § 2000e-5(f)(1) ..................................................................................................... 19

Rule 9(c) of the Federal Rules of Civil Procedure ..................................................................... 9

Rule 12(f) of the Federal Rules of Civil Procedure ............................................................... 7, 15

Plaintiff Equal Employment Opportunity Commission ("EEOC") moves to strike certain affirmative defenses asserted by Defendant The New York Times Company ("NYT"), pursuant to Federal Rule of Civil Procedure 12(f)(2). Specifically, Defendant's Second, Third, Eighth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, and Eighteenth affirmative defenses are factually and legally insufficient and should be stricken. Failure to strike those defenses would unnecessarily delay this action and prejudice the Commission by subjecting the Commission to lengthy and burdensome discovery on redundant, unavailable, or insupportable defenses. The Commission therefore respectfully requests that the Court strike the above-referenced defenses from Defendant's Answer for the reasons set forth herein.[1]

## I.     <u>BACKGROUND</u>

Plaintiff Equal Employment Opportunity Commission is the federal agency charged with the enforcement of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), which prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin. The Commission commenced this action under Title VII to correct unlawful employment practices on the basis of race and/or sex and to provide appropriate relief to Charging Party Bryant Rousseau. As set forth more fully in the Complaint (Doc. 1), the Commission alleges that Defendant NYT failed to promote Charging Party because of his race (White) and/or sex (male).

As alleged in the Complaint, Defendant published reports and action plans regarding its goal of increasing minority and female representation in its leadership positions. (Doc. 1, ¶¶ 17-36.) Defendant acted in pursuit of its publicly stated goals when it hired a multiracial female and

---

[1] The Commission also intends to submit a Motion to Dismiss Defendant's Counterclaims. The Commission's answer to the counterclaims is not yet due under Rule 12(a)(2) of the Federal Rules of Civil Procedure and nothing in this filing should be construed as an answer or waiver of the right to answer or move to dismiss those counterclaims.

passed over Charging Party Rousseau, who is a white male, for the position of Deputy Real Estate Editor. (Doc. 1, ¶¶ 41-99.) The requirements in the posted job description for the position included real estate journalism experience. (Doc. 1, ¶¶ 52-54.) Defendant did not advance Rousseau beyond his interview with the hiring manager for the position, despite his extensive experience in journalism, editing, managing writers, and specifically real estate journalism. (Doc. 1, ¶¶ 57-71.) Instead, NYT advanced several candidates who had little to no real estate journalism experience to the final panel interview stage (none of whom were white males) and ultimately hired an applicant who had no such experience. (Doc. 1, ¶¶ 79-88.) As reflected in their performance self-reviews, the decision-makers who selected the final candidates understood that Defendant expected and encouraged them to advance Defendant's race and sex-based representation goals. (Doc. 1, ¶¶ 72-78.) Defendant deviated from its normal hiring protocols to hire an applicant who panel interviewers ranked lower than other candidates and who one interviewer described as "a bit green overall." (Doc. 1, ¶¶ 89-92.) Even though Rousseau was more qualified than the applicant Defendant chose for the Deputy Real Estate Editor position, Defendant failed to promote him based on his race and/or sex. (Doc. 1, ¶¶ 93-99.)

In its Answer (Doc. 28), Defendant asserts myriad affirmative defenses that have nothing to do with the merits of the Commission's Title VII claim. By striking those defenses for the reasons detailed below, the Court would keep this litigation streamlined and focused on the alleged discrimination at issue.

## II.   LEGAL STANDARD

A court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "In order to prevail on a motion to strike [an affirmative defense], a plaintiff must show that: (1) there is no question of fact which might

allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *GEOMC Co. v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 96 (2d Cir. 2019) (quoting *S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)). "[T]he plausibility standard set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2013) 'applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense'; as a result, a party must 'support [its] defenses with some factual allegations to make them plausible.'" *Hintermaier v. Equifax Info. Servs. LLC*, No. 24 Civ. 9697 (ALC) (RFT), 2025 WL 4377764, at \*3 (S.D.N.Y. Nov. 26, 2025) (quoting *GEOMC*, 918 F.3d at 98–99), *report and rec. adopted*, No. 24-CV-09697 (S.D.N.Y. Jan. 11, 2025). Similarly, "the Second Circuit has explained that 'an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims.'" *Id.* (quoting *GEOMC*, 918 F.3d at 98); *See also E.E.O.C. v. Green Lantern Inn, Inc.*, No. 19-CV-6704 (FPG) (MJP), 2021 WL 4086148, at \*3 (W.D.N.Y. Aug. 19, 2021) (striking an affirmative defense as implausibly pled and unsustainable as a matter of law and another affirmative defense asserting a lack of due process as "insufficient as a matter of law"), report and recommendation adopted, No. 19-CV-6704 (FPG), 2021 WL 4081109 (W.D.N.Y. Sept. 8, 2021).

## III.   **ARGUMENT**

Defendant's Second, Third, Eighth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, and Eighteenth affirmative defenses should be stricken because they are factually and legally insufficient. If not stricken at the outset, these deficient defenses threaten to needlessly expand the scope and burdens of discovery and to thereby delay these proceedings. *See Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 426 (S.D.N.Y. 2010) (noting the prejudice inherent where insufficient defenses threaten delay and needless expansion of discovery); *see also E.E.O.C.*

*v. AZ Metro Distributors, LLC*, 272 F. Supp. 3d 336, 341 (E.D.N.Y. 2017) (observing that the denial of a motion to strike an insufficient defense "would prejudice EEOC by denying its right to be free of them in the course of the substantive litigation").

### A.    <u>Second Affirmative Defense</u>

The Court should strike Defendant's Second Affirmative Defense because it does not satisfy Federal Rule of Civil Procedure 9(c)'s heightened particularity requirement and because the Commission satisfied all statutory prerequisites prior to filing this action. Defendant's Second Affirmative Defense states, "The Commission failed to exhaust all available administrative remedies and/or otherwise failed to comply with the statutory prerequisites to the bringing of this action, pursuant to Title VII, prior to the Commission's filing of this action." Doc. 28 at 18. Because Defendant denies that the Commission satisfied the statutory conditions precedent before commencing this action, Rule 9(c) applies and requires heightened factual specificity. *See* Fed. R. Civ. P. 9(c) ("[W]hen denying that a condition precedent has occurred or been performed, a party must do so with particularity."). Where, as here, "an affirmative defense . . . merely asserts that the EEOC has failed to satisfy its pre-suit requirements without additional factual allegations[,] [the defense] is not sufficient to survive a motion to strike." *E.E.O.C. v. United Parcel Serv., Inc.*, No. 15-CV-4141-MKB, 2017 WL 9482105, at \*15 (E.D.N.Y. Mar. 9, 2017) (citing *E.E.O.C. v. Kelley Drye & Warren, LLP*, No. 10-CV-655-LTS-MHD, 2011 WL 3163443, at \*4 (S.D.N.Y. July 25, 2011)).

This court and neighboring districts have consistently granted motions to strike threadbare defenses challenging the Commission's satisfaction of statutory prerequisites. In *E.E.O.C. v. Kelley Drye & Warren, LLP*, for example, the court granted the Commission's motion to strike where, as here, the Defendant "ha[d] neither plead[ed] nor proffered any facts indicating that the EEOC has

failed to comply with any of the administrative prerequisites to commencement of an enforcement suit." 2011 WL 3163443, at *4; *see also id.* at *2 ("It has long been held that affirmative defenses that contain only 'bald assertions' without supporting facts should be stricken."). Similarly, in *E.E.O.C. v. Frontier Hot-Dip Galvanizing, Inc.*, the court struck the affirmative defense "that the employees represented by the EEOC failed to exhaust all available administrative remedies and failed to comply with the statutory prerequisites to the filing of this action" because the defense failed to provide the factual specificity required by Rule 9(c). No. 16-CV-0691V(SR), 2017 WL 11309771, at *5 (W.D.N.Y. Dec. 18, 2017), *report and rec. adopted*, No. 16-CV-691, 2019 WL 2205045 (W.D.N.Y. May 22, 2019). In *E.E.O.C. v. United Parcel Serv.*, the district court granted the Commission's motion to strike where, as here, "Defendant has failed to articulate which, if any, administrative procedures Plaintiff failed to complete before bringing suit." No. 15-CV-4141-MKB-CLP, 2017 WL 2829513, at *14 (E.D.N.Y. June 29, 2017).

Defendant's inability to articulate what, if any, statutory or administrative prerequisites the Commission failed to complete has a good explanation—the Commission satisfied all such requirements. The Commission fulfilled the statutory conciliation requirement as discussed below in Section III.B with Defendant's third affirmative defense. Defendant admits that Charging Party Bryant Rousseau filed a Charge of Discrimination with the Commission (Doc. 28, ¶7), and it cannot plausibly dispute that it received notice of the charge or that an investigation occurred. Defendant "avers that the Commission issued a Letter of Determination finding reasonable cause" to believe that a violation of Title VII occurred. (Doc. 28, ¶ 8.) Because the Commission met all pre-suit requirements and Defendant has pleaded no facts to the contrary, the Second Affirmative Defense cannot succeed and should be stricken.

## B.     <u>Third Affirmative Defense</u>

The Court should strike Defendant's Third Affirmative Defense from its Answer because the Commission plainly satisfied Title VII's conciliation requirement prior to filing this lawsuit. The Third Affirmative Defense states, "The Commission failed to satisfy its statutory administrative obligations to conciliate prior to commencing this action pursuant to Title VII." Doc. 28 at 18. Elsewhere in its Answer, Defendant alleges "that the Commission exceeded its authority by . . . failing to comply with the statutory prerequisites to bringing this action, pursuant to Title VII, including its statutory obligation to conciliate," Doc. 28, ¶ 3, and "that the Commission prematurely and abruptly ended conciliation efforts in violation of its statutory obligations under Title VII," Doc. 28, ¶¶ 9, 10, 11, 12. To the contrary, the Commission satisfied Title VII's conciliation requirement by completing each of the steps required under the U.S. Supreme Court's seminal decision on the issue, *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480 (2015).

In *Mach Mining*, the U.S. Supreme Court held that the scope of judicial review into whether the Commission complied with Title VII's conciliation requirement is "narrow." *Mach Mining*, 575 U.S. at 483. First, Title VII requires that "the EEOC communicate in some way (through 'conference, conciliation, and persuasion') about an 'alleged unlawful employment practice' in an 'endeavor' to achieve an employer's voluntary compliance." *Id.* at 494 (quoting 42 U.S.C. § 2000e–5(b)). "That means the EEOC must inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of 'reasonable cause.'" *Id.* Second, the Commission must also "try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Id.* "Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute." *Id.* This narrow review "allows the EEOC to exercise

all the expansive discretion Title VII gives it to decide how to conduct conciliation efforts and when to end them." *Id.*

The Commission met the first requirement when, on April 1, 2026, it issued Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated Title VII by failing to advance him in the selection process or promote him to the Real Estate Deputy Editor position because of his race or sex. *See* Doc. 1 (Compl.), ¶ 8; *see also* Doc. 44, Ex. A, ¶ 5 (Decl. of Linda Sales-Long). Defendant admits it received this letter. *See* Doc. 28, ¶ 8. The Commission met the second requirement when it invited Defendant to remedy the alleged discrimination through the conciliation process and held discussions with Defendant to that end. *See* Doc. 1 (Compl.), ¶¶ 8-12; *see also* Doc. 44, Ex. A, ¶¶ 5-7 (Decl. of Linda Sales-Long). Defendant admits "that the Commission invited Defendant to conciliate the matter" and "that the Commission communicated with Defendant about resolving the matter." *See* Doc. 28, ¶ 10. The record is therefore clear—the Commission satisfied its conciliation obligation under Title VII.

Defendant's complaints about the content and duration of the conciliation (*see* Doc. 28, ¶¶ 9-12) are immaterial and impertinent. The narrow judicial review prescribed by *Mach Mining* prohibits inquiry into the content or duration of conciliation efforts so that the EEOC may "exercise all the expansive discretion Title VII gives it to decide how to conduct conciliation efforts and when to end them." *Mach Mining*, 575 U.S. at 494. Reviewing courts "look[] only to whether the EEOC attempted to confer about a charge, and not to what happened (*i.e.*, statements made or positions taken) during those discussions." *Id.* There is no question that the required conciliation occurred, and Defendant's subjective view that the conciliation ended "prematurely" and "abruptly" is not relevant to any viable defense. *Cf. id.* at 492 ("[T]he EEOC need only 'endeavor' to conciliate a claim, without having to devote a set amount of time or resources to that project.").

Finally, Defendant's Second and Third Affirmative Defenses appear to be duplicative, and this duplication provides the Court an independently sufficient basis to strike one of them. *See E.E.O.C. v. Protocol of Amherst, Inc.*, No. 19-CV-00598-LJV-JJM, 2020 WL 2130688, at *2 (W.D.N.Y. Mar. 16, 2020) (Defendant's "twelfth and fourteenth affirmative defenses should be stricken as redundant."); *E.E.O.C. v. United Parcel Serv.*, No. 15-CV-4141-MKB-CLP, 2017 WL 2829513, at *14 (E.D.N.Y. June 29, 2017) ("To the extent that Defendant's fifteenth affirmative defense challenges the EEOC's alleged failure to conciliate, the defense is stricken as duplicative of the fourth affirmative defense.").

### C.      <u>Eighth Affirmative Defense</u>

The Court should strike Defendant's Eighth Affirmative Defense because the defense is devoid of factual support or specificity and because the equitable theories it states are either unavailable in this action or duplicative of other defenses. The Eighth Affirmative Defense states, "The Complaint is barred in whole or in part by the doctrines of estoppel, waiver or unclean hands." Doc. 28 at 19. This terse defense provides no supporting factual allegations that might make clear whether the defense asserts one unified equitable theory, three separate theories, or something else entirely—let alone any explanation of how Defendant intends to establish the defense(s). Because the Eighth Affirmative Defense lacks supporting factual allegations or sufficient detail to make its conclusory invocation of equitable doctrines plausible, it must be stricken as insufficient under *Iqbal* and *Twombly*. *See GEOMC*, 918 F.3d at 98–99 (affirmative defenses must be supported by sufficient factual matter to make the defenses plausible). Courts routinely strike affirmative defenses on this basis. *See, e.g.*, *S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999) (striking estoppel defense where defendant articulated no supporting facts or legal basis for the defense).

Even if Defendant had provided the requisite factual specificity, however, the Court would still be due to strike these equitable defenses because they are either unavailable or duplicative of other defenses Defendant has advanced. The EEOC brings litigation "to vindicate the public interest in preventing employment discrimination." *Gen. Tel. Co. of the Nw. v. E.E.O.C.*, 446 U.S. 318, 327 (1980). Equitable defenses such as those Defendant asserts in the Eighth Affirmative Defense are generally unavailable in enforcement actions the government undertakes in the public interest. *See United States v. Andrews*, No. 3:20-CV-1300 (JCH), 2022 WL 23030326, at *3 (D. Conn. Mar. 30, 2022) (collecting cases striking unclean hands defenses asserted against federal agencies that act in the public interest).

Accordingly, courts in this district have held that waiver is not an available defense to analogous federal enforcement actions such as those brought by the SEC and have struck the affirmative defense on that basis. *See Sec. & Exch. Comm'n v. Rayat*, No. 21-CV-4777 (LJL), 2021 WL 4868590, at *3 (S.D.N.Y. Oct. 18, 2021). An estoppel defense may be cognizable against the government under narrow circumstances, but Defendant has not (and cannot) plausibly allege that the Commission made any material misrepresentation upon which it relied to its detriment in connection with the hiring decision at issue. *See id.* (stating elements of estoppel defense). The Commission has never represented that Title VII permits employers to make hiring decisions based on the protected characteristics of race or sex, and that is the discrimination the Complaint alleges. Finally, to raise a viable unclean hands defense against the government, a defendant must plausibly allege "egregious" misconduct and "resulting prejudice to the defendant ris[ing] to a constitutional level." *Id.* at *4 (quoting *S.E.C. v. Durante*, No. 01-CV-9056-DAB-AJP, 2013 WL 6800226, at *13 (S.D.N.Y. Dec. 19, 2013), *report and rec. adopted*, No. 01-CV-9056 DAB, 2014 WL 5041843 (S.D.N.Y. Sept. 25, 2014), *aff'd*, 641 F. App'x 73 (2d Cir. 2016)). Because an unclean hands defense

requires Defendant to plausibly identify harm to its constitutional interests, and because Defendant has only identified any such alleged harms in other affirmative defenses that expressly invoke the First or Fifth Amendments, Defendant's unclean hands defense is necessarily duplicative of Defendant's affirmative defenses asserting constitutional harms and should be stricken on that basis. Fed. R. Civ. P. 12(f) (providing for the striking of "redundant" material); *see also Protocol of Amherst, Inc.*, 2020 WL 2130688, at *2 (redundant affirmative defenses should be stricken); *United Parcel Serv.*, 2017 WL 2829513, at *14 (same).

### D.     <u>**Thirteenth Affirmative Defense**</u>

The Court should strike Defendant's Thirteenth Affirmative Defense because it is legally and factually insufficient. The Thirteenth Affirmative Defense states, "The Complaint attempts to impose liability on Defendant for speech protected by the First Amendment." Doc. 28 at 20. To the contrary, the Commission's Title VII claim turns on Defendant's *conduct*, not its speech.

The Commission alleges that Defendant violated Title VII by factoring the Charging Party's race and/or sex into its decision not to advance him to the final panel interview stage of the Deputy Real Estate Editor selection process and its decision to select a multiracial female candidate for the position. *See* Doc. 1, ¶¶ 94-99. These decisions do not constitute speech protected by the First Amendment. *Cf. Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984) (noting that the First Amendment does not shield discriminatory hiring or promotion decisions). A neighboring district recognized a similar defect in *E.E.O.C. v. SSM & RC Inc.*, where the court granted the Commission's motion to strike an employer's affirmative defense that the First Amendment shielded its decision to terminate a worker for violating its "English-only" policy from the Commission's Title VII claim. No. 05-CV-6495-CJS, 2007 WL 1613580, at *3 (W.D.N.Y. June 1, 2007).

In sum, the Thirteenth Affirmative Defense wholly fails to state what protected speech it is based upon, and it therefore should be stricken as factually insufficient. Moreover, the defense should be stricken as legally insufficient because, outside of the ministerial exception that is not at issue here, the First Amendment does not shield an employer's consideration of race and/or sex in hiring or promotion decisions, because discriminatory hiring or promotion are forms of conduct, not speech. *Cf. Hishon*, 467 U.S. at 78.

### E. Fourteenth Affirmative Defense

The Court should strike Defendant's Fourteenth Affirmative Defense because Defendant's selective enforcement theory would offer no defense to the underlying claim of discrimination. Defendant's Fourteenth Affirmative Defense states, "The Complaint constitutes selective enforcement against Defendant in violation of the Fifth Amendment." Doc. 28 at 20. As a threshold matter, "[i]t is not clear . . . that selective civil enforcement *is* a defense in the strict sense of requiring dismissal or judgment for the defendant if proved." *United States v. Am. Elec. Power Serv. Corp.*, 258 F. Supp. 2d 804, 807 (S.D. Ohio 2003) (granting federal agency's motion to strike); *see also E.E.O.C. v. First Nat. Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980) (recognizing that an analogous defense of malicious prosecution "could not constitute an affirmative defense to alleged Title VII violations" because it "did not relate to the primary issue . . . [of] whether the [defendant] unlawfully discriminated"). This court has stated that a claim for selective enforcement may exist where a party shows "(1) that [it] was selectively treated compared with others similarly situated, and (2) that the selective treatment was prompted by an impermissible consideration, such as membership in a suspect class, intent to inhibit or punish the exercise of a constitutional right, or malicious or bad faith intent to injure." *Birmingham v. Ogden*, 70 F. Supp. 2d 353, 371 (S.D.N.Y. 1999). Of course, a claim is not the same thing as an affirmative

defense, and Defendant elected to style this present theory (insofar as relevant to this motion) as a threadbare defense rather than a factually supported counterclaim. Even if Defendant's theory were cognizable as an affirmative defense, Defendant has not alleged similarly situated comparators that have received different treatment. *See Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019) (to state a selective enforcement claim under the Equal Protection Clause, a plaintiff must identify a comparator that is similarly situated in all material respects). Moreover, if Defendant premises its theory on First Amendment retaliation, the theory would redundantly converge with the unsustainable Fifteenth Affirmative Defense and should also be stricken for the same reasons. *See* Section III.F, below; *see also Protocol of Amherst, Inc.*, 2020 WL 2130688, at *2 (redundant affirmative defenses should be stricken); *United Parcel Serv.*, 2017 WL 2829513, at *14 (same).

### F. Fifteenth Affirmative Defense

The Court should strike Defendant's Fifteenth Affirmative defense as legally insufficient because even if it were factually viable (which it is not), Defendant's First Amendment retaliation theory would offer no defense to the underlying claim of discrimination. The Fifteenth Affirmative Defense states, "The Complaint constitutes retaliation for Defendant's protected newsgathering, publication and speech in violation of the First Amendment." Doc. 28 at 21. Those allegations offer no potential defense to the underlying allegation that Defendant discriminated against Bryant Rousseau.

"An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'" *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's Law Dictionary 430 (7th ed. 1999)). It follows that assertions and arguments that could not defeat a claim fall outside this definition and may be stricken as improper affirmative defenses.

Federal courts have recognized as much in cases like *E.E.O.C. v. AZ Metro Distributors, LLC*, where the court struck an employer's First Amendment retaliation defense after concluding that even if the employer's allegations of retaliation were meritorious, "they would not constitute affirmative defenses to the underlying charges of discrimination." No. 15-CV-5370-ENV-PK, 2016 WL 10679469, at \*9 (E.D.N.Y. Dec. 20, 2016), *report and rec. adopted in relevant part*, 272 F. Supp. 3d 336 (E.D.N.Y. 2017). Where, as here, a purported affirmative defense would not defeat liability if the complaint's allegations are proven, the defense should be stricken. *See id.*; *see also First Nat. Bank of Jackson*, 614 F.2d at 1008 (holding a "so-called affirmative defense of malicious prosecution and harassment" was legally insufficient and striking the defense because it "did not relate to the primary issue in [the] Title VII action").

### G.      Sixteenth Affirmative Defense

The Court should strike Defendant's Sixteenth Affirmative Defense because it is legally and factually insufficient. The Sixteenth Affirmative Defense states, "Defendant lacked fair notice that Plaintiff would consider its diversity, equity, or inclusion initiatives and/or its aspirational speech regarding the same, as alleged in the Complaint, to give rise to liability under Title VII. Accordingly, the Complaint violates the Due Process Clause of the Fifth Amendment." Doc. 28 at 21. Like its Thirteenth Affirmative Defense, Defendant's Sixteenth Affirmative Defense mischaracterizes this lawsuit as an attempt to impose liability for its past speech. The Commission's Title VII claim turns on Defendant's alleged conduct—specifically, its consideration of Charging Party and the selected candidate's race and sex during its search for a new Deputy Real Estate Editor in early 2025. The Sixteenth Affirmative Defense's legal infirmity is clear—no employer can credibly claim to lack fair notice that federal law prohibits discriminating against an applicant because of his race or sex. *See* 42 U.S.C. § 2000e-2(a).

**H.** **Seventeenth and Eighteenth Affirmative Defenses**

The Court should strike Defendant's Seventeenth and Eighteenth Affirmative Defenses as legally insufficient because they invoke the inapplicable Administrative Procedures Act ("APA"). The Seventeenth Affirmative Defense states, "The Complaint implements a new anti-discrimination enforcement policy that Plaintiff has adopted that is arbitrary and capricious because it is neither reasonable nor reasonably explained." Doc. 28 at 21. The Eighteenth Affirmative Defense states, "The Complaint is arbitrary and capricious including because it was brought in bad faith; Plaintiff was improperly influenced by political decisionmakers and therefore relied on factors it should not have considered." *Id.* The defenses' references to the "arbitrary and capricious" standard make plain their reliance upon the APA. The APA does not apply to the Commission's complaint or decision to file it because those matters are clearly committed to the agency's discretion by Title VII.

When the APA applies, it permits courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, both defenses expressly take issue with "the Complaint," and neither the Complaint itself nor the Commission's decision to file it are subject to judicial review under the APA. The APA does not permit judicial review into an "agency action … committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003) ("[U]nder § 701(a)(2) agency action is not subject to judicial review to the extent that such action is committed to agency discretion by law.") (quoting *Lincoln v. Vigil*, 508 U.S. 182, 190–91 (1993)). Title VII confers to the Commission the discretion to determine whether to file an enforcement action when conciliation fails. *See* 42 U.S.C. § 2000e-5(f)(1).

In other analogous agency contexts, courts have recognized that litigation decisions are generally committed to agency discretion by law and are not subject to judicial review under the APA. *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 760 F.3d 151, 171 (2d Cir. 2014) ("[T]he Supreme Court has long applied a presumption against judicial review of agency decisions declining to proceed with enforcement actions because such decisions are, for purposes of the Administrative Procedure Act ('APA'), 'committed to agency discretion,'" (quoting *Heckler v. Chaney*, 470 U.S. 821, 832–33 (1985))); *see also United States v. Est. of Hage*, 810 F.3d 712, 720 (9th Cir. 2016) (citations omitted). Similarly, the APA offers no recourse for an employer that disagrees with the Commission's enforcement decision; Defendant's recourse is to "instead simply defend itself against suit." *See AT&T Co. v. E.E.O.C.*, 270 F.3d 973, 975 (D.C. Cir. 2001).

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Commission respectfully requests that its Motion to Strike Defendant's Second, Third, Eighth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, and Eighteenth Affirmative Defenses be granted in its entirety.

Dated: July 31, 2026

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

*/s/ Benjamin North*
BENJAMIN NORTH
Assistant General Counsel (*pro hac vice)*
131 M Street, NE
Washington, D.C., 20002
(202) 288-1622
Benjamin.north@eeoc.gov

CARL CHANG
Trial Attorney (*pro hac vice*)
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, Alabama 35205

(205) 651-7056
carl.chang@eeoc.gov

## CERTIFICATE OF SERVICE

Consistent with Local Civil Rule 5.2, this is to certify that on July 31, 2026, a copy of the foregoing was filed electronically and service of this filing will be accomplished by e-mail to all Parties by operation of the Court's electronic filing system (CM/ECF).

Dated: July 31, 2026

/s/Benjamin North_____
BENJAMIN NORTH
Assistant General Counsel

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

The undersigned counsel certifies that the word-processing software counts 5,268 words in this filing.

Dated: July 31, 2026

/s/Benjamin North_____
BENJAMIN NORTH
Assistant General Counsel