**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>-AND-<br><br>BRYANT ROUSSEAU<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>THE NEW YORK TIMES COMPANY,<br><br>Defendant. | Civil Action No. 26-CV-3704-GHW-RFT |
| THE NEW YORK TIMES COMPANY<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al.,<br><br>Counterclaim Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF EEOC'S MOTION TO DISMISS COUNTERCLAIMS**

TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 3

I. The Court lacks subject matter jurisdiction over the counterclaims. ........ 4

a. Defendant has not shown an entitlement to equitable relief and therefore lacks standing. ........ 4

b. The official capacity claims are duplicative and must be dismissed. ........ 6

c. The counterclaims are also duplicative of the EEOC's case as a matter of law and should be dismissed. ........ 7

II. Defendant has not plausibly alleged any claim. ........ 13

a. The First Amendment retaliation claim fails to allege any of the elements. ........ 13

b. The Fifth Amendment claim fails because Title VII gives fair notice that race and sex discrimination are unlawful. ........ 19

c. The APA counterclaim fails because a federal agency's decision to initiate litigation is not subject to judicial review. ........ 24

CONCLUSION ........ 25

TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006)................................ 2

*Acosta v. Seaboard Foods, LLC*, No. 2:24-CV-100-Z-BR, 2024 WL 4428985 (N.D. Tex. Oct. 4, 2024) ........................................................................................................................ 16

*Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301 (S.D.N.Y. 2010).................................... 11

*Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351 (VEC), 2020 WL 4504737 (S.D.N.Y. Aug. 5, 2020) ............................................................................................................ 9

*Arista Recs. LLC v. Usenet.com., Inc.*, No. 07 CIV. 8822 (HB), 2008 WL 4974823 (S.D.N.Y. Nov. 24, 2008) ........................................................................................................ 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 2

*AT&T Co. v. E.E.O.C.*, 270 F.3d 973 (D.C. Cir. 2001) ............................................................. 24

*Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, No. 1:19-CV-3766-GHW, 2021 WL 2534000 (S.D.N.Y. June 21, 2021) ......................................................... 8, 9, 10, 11

*Blanchard v. Tabulate, Inc.*, No. 18-CIV-8631-ER, 2018 WL 11383043, at *2 (S.D.N.Y. Oct. 22, 2018) .......................................................................................................................... 6

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020)........................................................... 21

*Branzburg v. Hayes*, 408 U.S. 665 (1972) .................................................................................. 17

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .................................................................... 4, 6

*Collins v. City of New York*, 295 F. Supp. 3d 350 (S.D.N.Y. 2018)..................................... 17, 19

*Continuum Grp. LLC v. 666 Performance, LLC*, No. 24-CV-5834 (LGS), 2025 WL 1489255 (S.D.N.Y. May 23, 2025)........................................................................................... 9, 10, 11

*Crispin v. Connecticut*, No. 3:23-CV-1636 (SVN), 2024 WL 3860068 (D. Conn. Aug. 19, 2024) ..................................................................................................................................... 13

*Curley v. Vill. of Suffern*, 268 F.3d 65 (2d Cir. 2001) ........................................................... 13, 15

*D.J.C.V. v. United States*, 605 F. Supp. 3d 571 (S.D.N.Y. 2022)............................................... 20

*DeMartini v. Town of Gulf Stream*, 942 F.3d 1277 (11th Cir. 2019) .................................... 13, 17

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010)............................................... 2, 3

*Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003) .................................................. 9

*Escobar v. City of New York*, No. 05-Civ.-3030, 2007 WL 1827414 (E.D.N.Y. June 25, 2007) .. 7

*F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012)............................................... 20, 21

*F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232 (1980) ................................................. 25

*Fabrikant v. French,* 691 F.3d 193 (2d Cir. 2012) ............................................................... 13, 16

*Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 676 F. Supp. 3d 233 (S.D.N.Y.

2023) .......... 11

*G-I Holdings, Inc. v. Baron & Budd*, No. 01 CIV. 0216(RWS), 2003 WL 193502 (S.D.N.Y. Jan. 29, 2003) .......... 19

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69 (2d Cir. 1995) .......... 3

*Jenkins v. Officer S (Downstate)*, No. 19-CV-10728 (KMK), 2021 WL 4392611 (S.D.N.Y. Sept. 24, 2021) .......... 14

*Kentucky v. Graham*, 473 U.S. 159 (1985) .......... 6

*King v. Aramark Servs. Inc.*, 96 F.4th 546 (2d Cir. 2024) .......... 18

*Larson v. General Motors Corp.*, 134 F.2d 450 (2d Cir. 1943) .......... 8

*Lunney v. United States*, 319 F.3d 550 (2d Cir. 2003) .......... 24

*MacIntyre v. Moore*, 335 F. Supp. 3d 402 (W.D.N.Y. 2018) .......... 7

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) .......... 2

*Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012) .......... 5

*Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31 (2d Cir. 2014) .......... 21

*Menaker v. Hofstra Univ.*, 935 F.3d 20 (2d Cir. 2019) .......... 18

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) .......... 6

*Moore v. Gardner*, 199 F. Supp. 2d 17 (W.D.N.Y. 2002) .......... 14

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408 (S.D.N.Y. 2021) .......... 9

*Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61 (D.D.C. 2025) .......... 20

*NCR Corp. v. B.A.T. Indus. P.L.C.*, No. 23-CIV-1172-JPC, 2024 WL 4188358 (S.D.N.Y. Sept. 14, 2024) .......... 8

*Nieves v. Bartlett*, 587 U.S. 391 (2019) .......... 13, 16

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .......... 4

*Pearl River Union Free Sch. Dist. v. King*, 214 F. Supp. 3d 241 (S.D.N.Y. 2016) .......... 2, 3

*Petroleum Exploration, Inc. v. Public Service Comm'n*, 304 U.S. 209 (1938) .......... 25

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) .......... 20

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) .......... 17, 18

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974) .......... 6

*Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502 (2d Cir. 1994) .......... 7

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47 (2006) .......... 22

*Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308 (S.D.N.Y. 2023) .......... 20

*Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004) .......... 5

*Silver v. N. Shore Univ. Hosp.*, 490 F. Supp. 2d 354 (S.D.N.Y. 2007) ........................................ 22

*Siracusa v. New Hyde Park-Garden City Union Free Sch. Dist.*, No. 24-CV-01002-NCM-LGD, 2024 WL 3875793 (E.D.N.Y. Aug. 19, 2024)................................................................ 6

*Smith v. Lomax,* 45 F.3d 402 (11th Cir. 1995)................................................................... 21

*Spear v. Town of W. Hartford*, 954 F.2d 63 (2d Cir. 1992)........................................................ 15

*Sprint Corp. v. Fed. Commc'ns Comm'n*, 151 F.4th 347 (D.C. Cir. 2025)........................... 22, 24

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)............................................................. 4

*Top Choice Distributors, Inc. v. U.S. Postal Serv.*, No. 96-CV-0745E, 1996 WL 756907 (W.D.N.Y. Dec. 26, 1996)................................................................................................ 6

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ............................................................. 4, 8

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008)........... 5

*Whipper v. Green*, No. 3:23-CV-27 (SVN), 2025 WL 3527234 (D. Conn. Dec. 9, 2025) .......... 14

*Worldwide Home Prods., Inc. v. Bed Bath & Beyond, Inc.*, No. 11-CIV-03633-LTS, 2013 WL 247839 (S.D.N.Y. Jan. 22, 2013)...................................................................... 8, 12

*Zherka v. Amicone*, 634 F.3d 642 (2d Cir. 2011) ............................................................ 15, 16

*Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168 (S.D.N.Y. 2021) .................................... 2

**Statutes**

28 U.S.C. § 2201(a) .................................................................................................... 11

42 U.S.C. § 2000e-2........................................................................................... 17, 20

42 U.S.C. § 2000e-5........................................................................................................ 24

5 U.S.C. § 701............................................................................................................... 24

5 U.S.C. § 706............................................................................................................... 24

**Rules**

Fed. R. Civ. P. 12(b)(1)...................................................................................................... 2

Fed. R. Civ. P. 12(b)(6)............................................................................................... 2, 13

**Regulations**

29 C.F.R. § 1608.4 ........................................................................................................ 23

**Constitutional Provisions**

U.S. CONST. AMEND. V ................................................................................................... 19

U.S. CONST. ART. III, § 2.................................................................................................... 8

## INTRODUCTION

This case is about The New York Times Company's discrimination, not its speech. The U.S. Equal Employment Opportunity Commission ("EEOC") cannot turn a blind eye to discrimination simply because the employer happens to be a news agency that criticized the government. Yet this is the thrust and effect of Defendant's counterclaims—Defendant seeks to avoid a lawsuit based on its discrimination against one worker simply because it has covered the present executive administration unfavorably at times. Defendant has not, and cannot, plausibly connect its publications to the EEOC's decision to file this enforcement action in any manner that would give rise to a viable counterclaim. As detailed below, the Court should dismiss Defendant's counterclaims under Fed. R. Civ. P. 12(b)(1) for lack of standing because the counterclaims implicate no distinct, redressable injury and are instead merely redundant mirror images of the EEOC's claims. In addition, even if Defendant's counterclaims overcame their threshold standing defects, dismissal is independently warranted under Fed. R. Civ. P. 12(b)(6) because Defendant has failed to plausibly allege essential elements of each counterclaim.

## BACKGROUND

Defendant alleges its long history as a newspaper covering the current Presidential Administration, often from a perspective that is critical of the President and his Administration. ECF No. 28, ¶¶ 119-137. Defendant's coverage sometimes extends to the EEOC's current leadership. *Id.*, ¶¶ 138-148. Defendant contends that the EEOC filed the present lawsuit because of this coverage, or alternatively because Defendant maintained employment practices under the title of "diversity, equity, and inclusion." *Id.*, ¶¶ 149-175.

## LEGAL STANDARD

"In considering a motion to dismiss a counterclaim, the court applies the same standards as a motion to dismiss a complaint." *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021). To survive a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the party asserting the counterclaim must prove by a preponderance of evidence that subject matter jurisdiction exists. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a counterclaim must "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . [n]or does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal citations omitted). Indeed, legal conclusions themselves are "not entitled to the assumption of truth," *id.* at 679, and "legal conclusions masquerading as factual conclusions will not suffice," *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006). These standards are substantively identical, with the key difference being that the movant bears the burden under Rule 12(b)(6) and the nonmovant (the party asserting jurisdiction) bears the burden under Rule 12(b)(1). *See Pearl River Union Free Sch. Dist. v. King*, 214 F. Supp. 3d 241, 251 (S.D.N.Y. 2016).

Ordinarily, in resolving a motion to dismiss under Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Even where a document is not incorporated by reference in the complaint, however, a court may consider a document attached to the motion to dismiss if there is

no dispute as to the authenticity of the document and the document is "integral" to the counterclaimant's claim. *See id.* "It must also be clear that there exist[s] no material disputed issues of fact regarding the relevance of the document." *Id.* If these requirements are satisfied, a court may consider the extraneous document without converting the motion to dismiss into a motion for summary judgment. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). Under Rule 12(b)(1), the Court is free to look to documents outside the Complaint. *Pearl River*, 214 F. Supp. 3d at 252.

**ARGUMENT**

Defendant fails to establish subject matter jurisdiction under Article III because it lacks standing to pursue the injunctive relief it seeks. Even if it was entitled to equitable relief under the facts alleged, its counterclaims violate the "mirror image rule" because they do not allege a case or controversy independent of the EEOC's case, which is a consequence of Defendant's choice to seek only relief related to the disposition of the EEOC's affirmative case. For these reasons, the Court lacks subject matter jurisdiction under Article III and must dismiss the counterclaims.

Even if the Court determines it has jurisdiction, it should still dismiss the claims because Defendant has failed to adequately plead any claim for which relief can be granted. Defendant fails to adequately allege any of the required elements for its First Amendment claim, fails to allege it lacked fair notice of Title VII's prohibition on race and sex discrimination, and fails to allege any claim under the APA that is judicially reviewable. For these reasons, if the Court reaches the merits, the Court should dismiss the counterclaims with prejudice.

**I. The Court lacks subject matter jurisdiction over the counterclaims.**

**a. Defendant has not shown an entitlement to equitable relief and therefore lacks standing.**

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To satisfy this requirement, "a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (internal quotation marks and alterations omitted); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). The type of "injury in fact" required depends on the type of relief sought: "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Where, as here, a plaintiff seeks only injunctive and declaratory relief, it must demonstrate a "real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *Lyons*, 461 U.S. at 111 (*quoting O'Shea*, 414 U.S. at 502). Indeed, Article III prohibits federal courts from hearing claims seeking equitable relief that merely "assert that certain practices of law enforcement officers are unconstitutional." *Id.* Absent a likelihood of substantial and immediate irreparable injury, a plaintiff seeking equitable relief has not established an Article III case or controversy and the court has no power to hear the claim. *Id*.

Here, Defendant seeks only equitable relief but has not shown "a likelihood of substantial and immediate irreparable injury." *See id.*; ECF No. 28, ¶¶ 181-82, 188-89, 194 (seeking only equitable relief consisting of the dismissal of the EEOC's case). Even though it is well settled that a party cannot rely exclusively on allegations of past harm to satisfy this requirement, *see Shain v.*

*Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (past illegal conduct is not sufficient on its own to justify equitable relief), Defendant points only to the alleged harm of being sued by the EEOC in this case to justify its request for future injunctive relief, *see generally* ECF No. 28, ¶¶ 176-194. But even if the EEOC's filing of the lawsuit was unconstitutional (it was not, as explained below), that still would not justify future injunctive relief because Defendant would need to allege a "certainly impending future injury" such as an impending second EEOC lawsuit or other similar action. *See Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (finding no jurisdiction for equitable relief where the plaintiff did not demonstrate "certainly impending future injury," such as a second impending unconstitutional encounter with police); *see also Shain*, 356 F.3d at 215 (the mere fact that unconstitutional action occurred in the past "did not translate into a real and immediate threat of future injury . . . .") (internal citation omitted).

Defendant cannot rely on its request for declaratory relief or attorney's fees to satisfy the standing requirement, either. First, the Second Circuit has expressly treated declaratory relief as a form of equitable relief requiring a showing of "certainly impending future injury." *See Marcavage*, 689 F.3d at 103. Second, an interest in attorney's fees is merely a byproduct of the suit and is not an independent basis for Article III jurisdiction. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008).

Finally, Defendant may point to the mere continued existence of this lawsuit as the requisite continuing harm for standing purposes, but that argument (which would turn every lawsuit by the government against a media entity into an Article III injury) fails too. First, Defendant—who as explained *infra* at Section II.a continues to publish stories critical of the administration broadly and the EEOC specifically—cannot rely on an argument that its speech is chilled by the existence of the EEOC's lawsuit as it fails to allege an actual chill and would be unable to show an actual

chill to support any alleged injury given its continued news coverage. *See Siracusa v. New Hyde Park-Garden City Union Free Sch. Dist.*, No. 24-CV-01002-NCM-LGD, 2024 WL 3875793, at *10 (E.D.N.Y. Aug. 19, 2024) ("That plaintiff has continued to speak publicly on this matter—even during the pendency of his disciplinary hearings—shows he has not been chilled from exercising his First Amendment rights."). Second, this argument fails because "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); *Blanchard v. Tabulate, Inc.*, No. 18-CIV-8631-ER, 2018 WL 11383043 (S.D.N.Y. Oct. 22, 2018) (same); *Top Choice Distributors, Inc. v. U.S. Postal Serv.*, No. 96-CV-0745E, 1996 WL 756907, at *2 (W.D.N.Y. Dec. 26, 1996) ("[I]f litigation costs could be considered irreparable harm, then any time a suit is brought, someone would have grounds for an injunction merely because of the cost of the litigation.") (quotation omitted). And again, to the extent Defendant would point to the bare allegation of unconstitutional action as the basis for an Article III injury without some connected actual injury, that argument has been rejected by the Supreme Court. *Lyons*, 461 U.S. at 111.

**b. The official capacity claims are duplicative and must be dismissed.**

Defendant counterclaimed against the EEOC itself as well as against the EEOC's three Commissioners, each of whom Defendant sued "in [their] official capacities." Defendant draws no distinction between the EEOC and the Commissioners in the counterclaims – it sues all four EEOC Defendants on the same theories for the same relief. ECF No. 28, ¶¶ 176-194. It is well settled that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, at 166 (1985); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978) ("Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ."). There

is thus no legal difference between suing the EEOC directly and suing any or all of the Commissioners in their official capacities. *See Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("[A]n action against a federal agency or federal officers in their official capacities is essentially a suit against the United States . . . ."); *MacIntyre v. Moore*, 335 F. Supp. 3d 402, 417 (W.D.N.Y. 2018) ("Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant.") (internal citation omitted). Defendant has effectively listed the EEOC four times as counter-defendant for the same claims seeking the same relief.

"Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." *Escobar v. City of New York*, No. 05-Civ.-3030, 2007 WL 1827414, at *3 (E.D.N.Y. June 25, 2007) (internal citations and quotations omitted). The Court should apply that principle here and dismiss the Commissioners from the case, as the claims against them are duplicative of the claims against the EEOC.

**c. The counterclaims are also duplicative of the EEOC's case as a matter of law and should be dismissed.**

Just as Defendant duplicates its counterclaims as to each counter-defendant, it also duplicates its claims as to the EEOC's case by virtue of the limited relief it seeks. To the extent Defendant seeks only equitable relief as to the EEOC's case in its counterclaims, the counterclaims are duplicative of the EEOC's case under the "mirror image" rule and must be dismissed. This provides an independently sufficient basis to dismiss the counterclaims in their entirety without the Court needing to address their merits.

This Court and the Second Circuit have long followed the "mirror image" rule, which tests whether a counterclaim serves an independent purpose outside of resolving a plaintiff's case. *See Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, No. 1:19-CV-3766-GHW, 2021 WL 2534000, at *7 (S.D.N.Y. June 21, 2021) (Woods, J.); *see also Worldwide Home Prods., Inc. v. Bed Bath & Beyond, Inc.*, No. 11-CIV-03633-LTS, 2013 WL 247839, at *2 (S.D.N.Y. Jan. 22, 2013). "In determining whether a counterclaim is merely a mirror image of a claim, the court must consider whether a case or controversy would still exist in connection with the counterclaim if the court entered a judgment dismissing the opponent's claim." *Beverly Hills*, 2021 WL 2534000, at *7 (internal citations omitted); *see also Larson v. General Motors Corp.*, 134 F.2d 450, 453 (2d Cir. 1943). While the "mirror image" rule often arises in intellectual property litigation, it is not limited to that context. *See NCR Corp. v. B.A.T. Indus. P.L.C.*, No. 23-CIV-1172-JPC, 2024 WL 4188358, at *14 (S.D.N.Y. Sept. 14, 2024) (applying mirror image rule outside of intellectual property context). The rule should be applied here because Defendant's counterclaims raise no genuine case or controversy distinct from the EEOC's own enforcement action, and consequently this Court lacks jurisdiction over the counterclaims. *See* U.S. CONST. ART. III, § 2 (limiting jurisdiction of federal courts to "cases" and "controversies"); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-424 (2021) ("Federal courts do not exercise general legal oversight of the … Executive [Branch] … [and] may resolve only a real controversy with real impact on real persons.") (internal citations omitted).

This Court has previously invoked the "mirror image" rule to dismiss counterclaims. *See Beverly Hills*, 2021 WL 2534000, at *7 ("In determining whether a counterclaim is merely a mirror image of a claim, the court must consider whether a case or controversy would still exist in connection with the counterclaim if the court entered a judgment dismissing the opponent's

claim.").[1] In *Beverly Hills*, this Court considered a counterclaim which sought a declaratory judgment that the plaintiff lacked standing, which the defendant had raised separately as an affirmative defense and which would have been moot "if the case were resolved without answering the question [raised in the counterclaim]." *Beverly Hills*, 2021 WL 2534000, at *6. In determining whether the counterclaim was a "mirror image" of the plaintiff's case, the Court looked to whether "a case or controversy would still exist in connection with the counterclaim if the court entered a judgment dismissing the opponent's claim." *Id.*, at *7. This Court correctly dismissed the counterclaim in that case, because "[a]lthough resolving the question of Beverly Hills' standing at filing would bring much-needed clarity to this case, couching that question as a claim for declaratory judgment does nothing to speed its resolution." *Id.* The Court noted that the defendant would suffer no prejudice upon dismissal of the counterclaim because, among other things, "if the case were to be dismissed or settled before the Court resolves the standing issue, Best Brands' claim for declaratory relief would become moot." *Id.*[2]

This Court correctly decided *Beverly Hills* and should dismiss Defendant's counterclaims under the mirror image rule for the same reasons. Like the standing counterclaim in *Beverly Hills*, Defendant's counterclaims would become moot upon the termination of the EEOC's case because

---

[1] Other courts in the Second Circuit have ruled similarly. *See, e.g., Continuum Grp. LLC v. 666 Performance, LLC*, No. 24-CV-5834 (LGS), 2025 WL 1489255, at *2 (S.D.N.Y. May 23, 2025) (holding that a duplicative counterclaim "serves no useful purpose and should be dismissed"); *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430 (S.D.N.Y. 2021) (same); *Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351 (VEC), 2020 WL 4504737, at *3 (S.D.N.Y. Aug. 5, 2020) ("Defendants' declaratory judgment action rests on four legal arguments that are identical to their affirmative defenses . . . As a result, the declaratory action is entirely duplicative of Plaintiff's breach of contract claim—and any resolution of the merits of Plaintiff's claim will necessarily resolve Defendants' counterclaim.").

[2] In *Beverly Bills*, this Court, among other things, analyzed the five factors set forth by the Second Circuit in *Dow Jones* that are used when deciding whether to decline jurisdiction over a declaratory judgment counterclaim. *Beverly Hills*, 2021 WL 2534000, at *7; *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-360 (2d Cir. 2003). For brevity and because not all of these factors directly relate to the constitutional question of whether there is a case or controversy presented by the counterclaims, those factors are not extensively discussed herein.

they seek no further relief than the dismissal of the EEOC's case. Put another way, Defendant has not established that "a case or controversy would still exist" as to the counterclaims if the EEOC's affirmative case were to resolve. *Beverly Hills*, 2021 WL 2534000, at *7. As with the counterclaim in *Beverly Hills*, "if the case were to be dismissed or settled before the Court resolves the [constitutional and APA] issue[s], [Defendant's] claim[s] . . . would become moot." *Id.* Defendant's duplicative counterclaims merely seek dismissal of the EEOC's lawsuit, whether couched as a request for the Court to "enjoin the Commission from continuing to prosecute it" (ECF No. 28, ¶¶ 182, 189) or a request for the Court to "set aside" the lawsuit (*Id.*, ¶194). Defendant seeks an end to EEOC's case, and nothing more. Because Defendant does not seek any relief extrinsic to the EEOC's case, its counterclaims would be mooted by the resolution of the EEOC's lawsuit. A counterclaim that is merely duplicative of a plaintiff's case and does not provide the Court with a "live controversy once the plaintiffs' claims have been resolved on the merits," *Continuum Grp.*, 2025 WL 1489255, at *2, cannot present a case or controversy under Article III independent of the original plaintiff's case. If Article III jurisdiction over the counterclaim would immediately terminate upon the resolution or withdrawal of the plaintiff's case, the counterclaim is duplicative and should be dismissed as improper. *Beverly Hills*, 2021 WL 2534000, at 7; *Arista Recs. LLC v. Usenet.com., Inc.*, No. 07 CIV. 8822 (HB), 2008 WL 4974823, at *4 (S.D.N.Y. Nov. 24, 2008) ("Usenet's counterclaims must be dismissed because they do not present an independent case or controversy that would survive a dismissal of Plaintiffs' infringement claim."). That is exactly the case here.

Defendant's requests for declaratory relief provide no path around the mirror image rule. "A counterclaim seeking a declaratory judgment may also be dismissed as duplicative if it is redundant of a primary claim raised by a party to a lawsuit." *Continuum Grp.*, 2025 WL 1489255,

at *2 (internal citations omitted). The counterclaims are duplicative of the affirmative defenses,[3] and in any event, the Declaratory Judgment Act requires the presence of an already existing "case of actual controversy" in order for the Court to exercise jurisdiction. 28 U.S.C. § 2201(a). Even where an actual controversy already exists, the Court has discretion whether to exercise jurisdiction over the request for declaratory relief. *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010). Here, for the above reasons, the counterclaims do not present an independent case or controversy because they seek only dismissal of the EEOC's case. A request for a declaratory judgment which statutorily requires an existing case or controversy cannot, in circular fashion, supply the case or controversy itself. Such an argument would read the "case of actual controversy" language out of the Declaratory Judgment Act. Here, at best, the request for a declaratory judgment asks the Court to declare past conduct unconstitutional, which is not a basis for equitable relief as discussed above.

Moreover, as explained above, the declaratory judgment sought here would "serve no useful purpose in clarifying and settling the legal relations at issue" and would not finalize the case or controversy brought by the EEOC because it would leave the question of whether Defendant discriminated against Rousseau unanswered as between the EEOC and Defendant. *Beverly Hills*, 2021 WL 2534000, at 7; *see Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 676 F. Supp. 3d 233, 254 (S.D.N.Y. 2023) ("A court also must consider (1) whether the judgment will

---

[3] The counterclaims are also duplicative of the corresponding affirmative defenses. For example, the First Amendment counterclaim mirrors the thirteenth and fifteenth affirmative defenses and seeks no further relief beyond ending the EEOC's lawsuit. ECF No. 28 at 20-21, ¶¶ 177-182. "[T]he relief is identical" to the corresponding affirmative defenses and must therefore be dismissed as duplicative. *See Continuum Grp*., 2025 WL 1489255, at *2. The same is true with the Fifth Amendment counterclaim, which mirrors the sixteenth affirmative defense. ECF No. 28 at 20-21, ¶¶ 183-189. And again, with the APA counterclaim, which mirrors the seventeenth and eighteenth affirmative defenses. *Id.*, at 21, ¶¶ 190-194. To the extent these affirmative defenses survive the EEOC's motion to strike (which the Court should evaluate on its own merits), any corresponding counterclaims would then be duplicative of Defendant's pleaded defenses and should be dismissed for this additional reason.

serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.") (internal citation omitted). Here, an intervenor plaintiff will continue the litigation against Defendant on the same theories even if EEOC's case is dismissed. Giving Defendant its requested declaratory judgment against the EEOC does nothing to resolve the existing dispute between the United States and Defendant, or between Rousseau himself and Defendant. For all of these reasons, the request for a declaratory judgment cannot supply the counterclaims with a case or controversy; even if it could, the Court should decline to exercise jurisdiction over them because it would not further the resolution of the employment dispute central to this case.[4]

Defendant's counterclaims seek no independent relief that Defendant would not already receive if the EEOC's Title VII claim fails. Because Defendant chose to only seek relief as to the dismissal of EEOC's case, were EEOC's case to be dismissed on the merits, all of the counterclaims would immediately become moot. *See* Section I.c, *supra*. This reinforces the point that the counterclaims create no independent case or controversy – they cannot succeed so long as EEOC's case survives, and they become moot immediately upon any unrelated defeat of EEOC's case. They serve no "independent purpose." *Worldwide Home Prods., Inc.*, 2013 WL 247839, at *2. Because the counterclaims present no justiciable issue on their own and are instead the "mirror image" of the EEOC's case, the Court should grant the motion to dismiss the counterclaims.

---

[4] This is especially true with regard to Defendant's First Amendment counterclaim, which is not properly a defense to the EEOC's action – and thus would not resolve the EEOC's case even if Defendant prevailed on the merits – for the reasons set forth below and in the EEOC's motion to strike. ECF No. 43.

## II. Defendant has not plausibly alleged any claim.

If the Court reaches the merits of the counterclaims, which it need not do, it should dismiss them on the merits because they fail to state a claim. Fed. R. Civ. P. 12(b)(6).

### a. The First Amendment retaliation claim fails to allege any of the elements.

To make out a First Amendment retaliation claim, a plaintiff must generally allege three elements: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were [] caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (modifying test to require but-for causation). In the context of criminal or civil law enforcement, a plaintiff must also plead a lack of probable cause for the law enforcement action. *See Nieves*, 587 U.S. at 400 ("In retaliatory prosecution claims, *Hartman* adopted the requirement that plaintiffs plead and prove the absence of probable cause for the underlying criminal charge."); *see also Fabrikant v. French,* 691 F.3d 193, 215 (2d Cir. 2012) ("The existence of probable cause will defeat . . . a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive."); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1304 (11th Cir. 2019) (same). Critically, with respect to the third element, a plaintiff bringing a First Amendment retaliation claim must allege "but for" causation, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves*, 587 U.S. at 399; *Crispin v. Connecticut*, No. 3:23-CV-1636 (SVN), 2024 WL 3860068, at *7 (D. Conn. Aug. 19, 2024).[5] Defendant has failed to allege any of the required elements.

---

[5] "Prior to the Supreme Court's decision in *Nieves*, there were diverging views as to whether the causation standard

First, Defendant does not specify what speech or First Amendment interest, exactly, it believes the EEOC retaliated against. Defendant broadly declares that its "newsgathering, publishing, and speech" are protected by the First Amendment (ECF No. 28, ¶ 178) and that its "newsgathering, publishing, and speech" motivated the EEOC to take adverse action against it. ECF No. 28, ¶ 179. But it is unclear what specific examples of its "newsgathering, publishing, and speech" Defendant believes specifically caused the EEOC to act, or if Defendant is asserting that its general reporting on the federal government (much of it completely unrelated to the EEOC) caused the EEOC to act. Without that specificity, the First Amendment counterclaim is impermissibly vague, and neither the EEOC nor the Court can appropriately analyze the claim. *Jenkins v. Officer S (Downstate)*, No. 19-CV-10728 (KMK), 2021 WL 4392611, at *5 (S.D.N.Y. Sept. 24, 2021) (internal citation omitted). For example, it is entirely unclear from the pleadings whether Defendant is alleging that the protected activity EEOC supposedly retaliated in response to is a particular article or simply its generalized coverage of the government. Courts have dismissed similar First Amendment claims which fail to specify the protected activity. *Id.*; *see also Moore v. Gardner*, 199 F. Supp. 2d 17, 30 (W.D.N.Y. 2002) (dismissing a "conclusory" retaliation claim where the plaintiff failed to "explain[ ] what specific 'complaints' of his [were] claimed to be protected activity").[6] The claim should be dismissed on this basis alone.

---

for a First Amendment retaliation claim [in the Second Circuit] was 'but-for' or 'substantial motivating factor.'" *Whipper v. Green*, No. 3:23-CV-27 (SVN), 2025 WL 3527234, at *15 n.8 (D. Conn. Dec. 9, 2025) (collecting cases). The Supreme Court in *Nieves* resolved this disagreement, and the standard post-*Nieves* is but-for causation rather than "motivating factor" causation. *Id.*

[6] The EEOC takes no position, for purposes of this motion, on whether any of Defendant's specific instances of "newsgathering, publishing, or speech" are protected by the First Amendment. As explained throughout this brief, the EEOC is suing Defendant because of its employment discrimination, not its speech.

The counterclaim also fails to allege an "actual chill." *See Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011) ("[P]rivate citizens claiming retaliation for their criticism of public officials have been required to show that they suffered an 'actual chill' in their speech as a result."); *Curley*, 268 F.3d at 73 ("Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."). The Second Circuit has previously dismissed a First Amendment claim for failure to plead an "actual chill" in the context of an allegedly retaliatory lawsuit by the government against a journalist. *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992). In *Spear,* the Second Circuit reasoned that the bare filing of a lawsuit, alone, does not suffice to show an actual chilling effect; instead, the plaintiff needed to have alleged some separate concrete impact on his speech. *See Spear*, 954 F.2d at 67. The *Spear* claimant could not make that showing, because he "did not allege that he had declined to write further anti-abortion editorials, nor . . . that he had toned down his writing on the subject . . . [nor] that he had changed even one word of his writing." *Id.* Here, not only does the word "chill" never appear in Defendant's Answer and Counterclaims (ECF No. 28), but Defendant also completely fails to allege any impact whatsoever on its "newsgathering, publishing, and speech." "Indeed, it would be difficult for [Defendant] to do so. After the alleged [retaliation], [Defendant] continued to publish articles critical of [the government]." *Zherka*, 634 F.3d at 645 n.5. Since the filing of the EEOC's case, Defendant has published numerous articles critical of the government, undermining any assertion (and again, none was alleged in the first place) of an actual chill.[7]

---

[7] Defendant maintains daily coverage of the Trump Administration and even maintains a live tracker of President Trump's approval ratings. N.Y. Times, "Trump Administration Live Updates" (last visited August 28, 2026) (available at https://www.nytimes.com/live/2026/07/31/us/trump-news); N.Y. Times, "President Trump's Approval Rating: Latest Polls" (last visited August 28, 2026) (available at https://www.nytimes.com/interactive/polls/donald-trump-approval-rating-polls.html?searchResultPosition=14). In the former case, the website appears to be updating every several minutes with new coverage on the Administration. Defendant also published critical coverage of the

Because Defendant fails to allege an actual chill, it fails to allege a First Amendment injury, and the counterclaim must be dismissed. *Zherka*, 634 F.3d at 644.[8]

Defendant has also failed to adequately plead causation. Defendant alleges only that its speech "motivated the EEOC to take adverse action against it" and that its protected activity was a "substantial factor" in the EEOC's decision to file suit after finding cause on a charge independently filed by a NYT employee who averred under penalty of perjury that he believed he had been subject to discrimination. ECF No. 28, ¶ 179. Even taking Defendant's allegations as true for purposes of this motion, Defendant fails to (and cannot, in good faith) allege that the EEOC "would not have [sued] absent the retaliatory motive." *Nieves*, 587 U.S. at 399. Defendant fails to state but-for causation, an essential element of its First Amendment claim, and its counterclaim must therefore be dismissed. *Acosta v. Seaboard Foods, LLC*, No. 2:24-CV-100-Z-BR, 2024 WL 4428985, at *1 (N.D. Tex. Oct. 4, 2024) (merely alleging a motivating factor is insufficient to allege but-for causation).

Finally, when a First Amendment claim is brought in the context of criminal or civil law enforcement (here, the EEOC enforces federal employment law), a plaintiff must also plead a lack of probable cause for the law enforcement action. *Fabrikant,* 691 F.3d at 215; *DeMartini*, 942 F.3d

---

EEOC specifically after this lawsuit. N.Y. Times, "At Trump's Direction, Federal Agencies Are Abandoning Discrimination Cases" (last visited August 28, 2026) (available at https://www.nytimes.com/2026/07/05/us/politics/trump-dei-order-eeoc-discrimination.html). Defendant cannot credibly claim it has been deterred from covering the government or has changed the nature of its coverage as a result of the EEOC's lawsuit.

[8] To the extent Defendant relies on the harm standard articulated in *Gill* ("deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights"), that standard applies in the prison inmate context (and potentially other jurisdictions), not the private citizen context in the Second Circuit. *Zherka*, 634 F.3d at 644-645 (*citing Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir. 2004)). Defendant appears to erroneously rely on this standard. ECF No. 28, ¶ 180 ("The EEOC's action … would deter a similarly situated entity of ordinary firmness from exercising its constitutional rights"). Even under this more forgiving standard, however, Defendant's claim would still fail because Defendant has not alleged any impact whatsoever on its or any comparator's speech.

at 1287-1304; *see also Collins v. City of New York*, 295 F. Supp. 3d 350, 368 (S.D.N.Y. 2018) ("Under current Second Circuit precedent, the existence of probable cause is a complete defense to a claim of a retaliatory arrest."); *Branzburg v. Hayes*, 408 U.S. 665, 682 (1972) ("[T]he First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability."). "Probable cause to institute civil proceedings requires no more than a 'reasonable belief that there is a chance that a claim may be held valid upon adjudication.'" *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993) (cleaned up). This is "not a high bar to meet." *DeMartini*, 942 F.3d at 1301.

Here, EEOC satisfies this low bar through its allegations that Defendant violated Title VII. Title VII, among other things, makes it an unlawful employment practice "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex . . ." 42 U.S.C. § 2000e-2. The EEOC applies this clear statutory language to Rousseau's case and alleges that Defendant discriminated against Rousseau on the basis of his race and/or sex when it failed to promote him. *See generally* ECF No. 1. The EEOC alleges that Defendant had established and pronounced goals to preference employees or candidates on the basis of race and/or sex, which were tied to executive compensation. *Id.*, ¶¶ 29-40. Against this backdrop, the EEOC alleges, Defendant hired a less-qualified candidate of a preferred race and/or sex over Rousseau, a white male; and in doing so EEOC alleges that Defendant departed from its own stated requirements for the position. *Id.*, ¶¶ 70-102.

Defendant cannot plausibly deny facts supporting the EEOC's *prima facie* case. Rousseau was a member of protected classes of race and sex. ECF No. 1, ¶ 56; ECF No. 28, ¶ 56. The experience on his resume met the basic qualifications for the Deputy Real Editor position as stated

on publicly posted job descriptions, and Defendant did not promote him to the position.[9] *See* ECF No. 1, ¶¶ 52-54, 57-66, 71; ECF No. 25, ¶¶ 19-26; ECF No. 33 ¶¶ 19-26. Defendant had previously published statements of its goals to increase diversity in leadership positions. *See, e.g.*, ECF No. 25, ¶ 3; ECF No. 28, ¶ 159. None of the final candidates for the Deputy Real Editor position was a White male. ECF No. 1, ¶ 79, 81; ECF No. 28, ¶ 79, 81. Defendant hired Monica Burton, a multiracial female, for the position. ECF No. 1, ¶ 84; ECF No. 28, ¶ 84. Defendant asserts subjective criteria for selecting Burton. *See* ECF No. 28, ¶¶ 52, 84. Not only do these facts satisfy the EEOC's *prima facie* case under Title VII (a similarly situated candidate outside his protected class was treated more favorably), but they also more than provide the minimal "reasonable belief that there is a chance" the EEOC will prevail. *Columbia Pictures Indus., Inc.*, 508 U.S. at 62.

In addition, the EEOC's allegations further raise an inference of discrimination because they demonstrate Defendant's procedural irregularities against the backdrop of its discriminatory preferencing goals. *See, e.g., Menaker v. Hofstra Univ.*, 935 F.3d 20, 31 (2d Cir. 2019) (procedural irregularities combined with backdrop evidence of discriminatory intent can raise an inference of discrimination); *King v. Aramark Servs. Inc.*, 96 F.4th 546, 565 (2d Cir. 2024) (procedural irregularities probative of discrimination and pretext). Defendant, among other things, disregarded its stated qualifications for the position, hired someone rated as less qualified during the interview process, and relied on a decisionmaker who preemptively approved the selected candidate (and only the selected candidate) before she was screened by the talent acquisition manager. ECF No. 1, ¶¶ 90-92. For at least these reasons, the EEOC had probable cause (simply a reasonable belief

---

[9] Despite Defendant denying that the Deputy Editor role listed real estate experience as a "basic qualification," Defendant referred the Court to the job description itself (ECF No. 28, at ¶ 52), which provides that real estate experience was in fact a "basic qualification." ECF No. 53-1, Exhibit 1. The Court may consider this document because Defendant expressly relies on it in its Answer and is integral to the counterclaims.

it *might* prevail, which the Court can assess based on the allegations in the EEOC's complaint, of which the Court may take judicial notice)[10] to believe Defendant discriminated against Rousseau in violation of Title VII. The existence of probable cause is a "complete defense" to Defendant's First Amendment claim. *Collins*, 295 F. Supp. 3d at 368. Defendant has not and could not plausibly allege a lack of probable cause, and its First Amendment claim therefore must be dismissed.

In short, Defendant has failed to allege any of the elements of a First Amendment claim. Defendant did not point to specific protected activity, did not allege an actual chill, did not allege but-for causation, and did not allege a lack of probable cause. Its First Amendment claim lacks any of the required elements and must be dismissed.

**b. The Fifth Amendment claim fails because Title VII gives fair notice that race and sex discrimination are unlawful.**

Defendant's contention that this straightforward race and sex discrimination lawsuit violates its Fifth Amendment rights is meritless. Defendant contends it lacked "fair notice" that the conduct alleged in the EEOC's complaint was unlawful. ECF No. 28, ¶¶ 184-185. This argument is a nonstarter—Title VII plainly gives fair notice that qualifying employers may not discriminate on the basis of race or sex. Even more critically, Defendant fails to even allege an interest protected by the Fifth Amendment.

By its text, the Fifth Amendment's due process clause protects the citizen from the federal government's deprivation of "life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. It is thus axiomatic that to establish either a substantive or procedural due process claim under the Fifth Amendment, a civil litigant must first identify a protected liberty or property

[10] The Court may take judicial notice of the fact that certain allegations are made in a complaint. *G-I Holdings, Inc. v. Baron & Budd*, No. 01 CIV. 0216(RWS), 2003 WL 193502, at *7 (S.D.N.Y. Jan. 29, 2003). The Court can assess whether the EEOC reasonably believed it might prevail on these allegations.

interest at issue. *See, e.g., D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 591 (S.D.N.Y. 2022); *Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 92 (D.D.C. 2025) (applying the liberty or property interest requirement in the context of a Fifth Amendment fair notice claim). Here, Defendant fails to allege – or even mention anywhere in its counterclaim – either a liberty or property interest. *See* ECF No. 28, ¶¶ 183-189. Without any liberty or property interest, Defendant's Fifth Amendment claim cannot survive and must be dismissed.

Even if there were a due process interest alleged, the claim would still fail on the question of fair notice. It is, of course, true "that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). A Fifth Amendment violation may occur if a statute, regulation, or agency interpretation "fails to provide a person of ordinary intelligence *fair notice* of what is prohibited." *Id.* (emphasis added); *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 331-32 (S.D.N.Y. 2023) (same); ECF No. 28, at 47 (describing the Second Counterclaim as a "Fair Notice" challenge). This is an objective standard that requires Defendant to "show that the statute in question provided insufficient notice that his or her behavior at issue was prohibited," and it does not require inquiry into whether Defendant "actually received a warning" that it was engaged in unlawful conduct. *Ripple Labs*, 682 F. Supp. 3d at 332.

The statute at issue here, Title VII, clearly prohibits qualifying employers from discriminating against an employee on the basis of race or sex (among other protected classes) "with respect to his compensation, terms, conditions, or privileges of employment . . ." 42 U.S.C. § 2000e-2(a)(1). This language has long been understood to prohibit employment decisions that are motivated at least in part by race or sex. *See, e.g., Price Waterhouse v. Hopkins*, 490 U.S. 228, 239 (1989) ("In passing Title VII, Congress made the simple but momentous announcement that

sex, race, religion, and national origin are not relevant to the selection, evaluation, or compensation of employees."); *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020) ("[s]o long as the plaintiff's sex was one but-for cause of that decision, that is enough" to show but-for causation in a Title VII discrimination claim). Defendant, therefore, cannot credibly argue that it lacked "fair notice of conduct that is forbidden or required." *F.C.C.*, 567 U.S. at 253. It had decades of notice that it was not permitted to discriminate against Rousseau on the basis of his race or sex. *See Matusick v. Erie Cnty. Water Auth.,* 757 F.3d 31, 60 (2d Cir. 2014) ("The right to be free from race discrimination on the basis of one's racial affiliation—intimate or otherwise—is, and has long been, clearly established" in the qualified immunity context); *Smith v. Lomax,* 45 F.3d 402, 407 (11th Cir. 1995) (same and noting "we need not engage in a lengthy discussion of the patently obvious illegality of racial discrimination in public employment . . . .").

To avoid this conclusion, Defendant conflates evidence with liability. Contrary to Defendant's conclusory assertions in its counterclaims, the EEOC does not seek to impose liability on Defendant because it made "aspirational statements" or generally engaged in "speech and initiatives related to diversity, equity, and inclusion." ECF No. 28, ¶ 185. This case is about specific conduct that the EEOC alleges resulted in the failure to promote a specific aggrieved individual who filed a charge with the EEOC. Specifically, EEOC alleges that Defendant violated Title VII when it illegally considered race and/or sex in its decision not to promote Rousseau in filling an editorial leadership position. Defendant's stated intent to preference some employees on the basis of race or sex (whether attributed to "DEI" initiatives or anything else) is circumstantial evidence that Defendant did in fact preference applicants with specific demographic characteristics and that conduct did in fact result in unlawful discrimination against Rousseau specifically.

That Defendant's past statements and initiatives that may provide evidence of why its employees took allegedly unlawful acts does not transform this action into one prosecuting Defendant *for* the speech or initiatives themselves. *See Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006) (Roberts, C.J.). A unanimous Supreme Court has noted that Title VII (insofar as it prohibits race discrimination in employment) may require an employer to take down a "White Applicants Only" sign, but that "hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct." *Id.* Similarly here, simply because Defendant made *statements* which could be circumstantial evidence of illegal *conduct* does not mean that this action is intended to prosecute the "employer's speech rather than conduct." *Id.* This action is a straightforward attempt to hold Defendant accountable for conduct that has been illegal for sixty-two years, and employer statements may properly be used as evidence in that prosecution. *See, e.g., Silver v. N. Shore Univ. Hosp.*, 490 F. Supp. 2d 354, 362 (S.D.N.Y. 2007).

This is nothing new. Even the documents Defendants points to for its claim that the EEOC previously blessed DEI schemes like the one it implemented fail because none of the identified statements undermine the statutory prohibition that race and sex discrimination in employment are unlawful. *See Sprint Corp. v. Fed. Commc'ns Comm'n*, 151 F.4th 347, 367 (D.C. Cir. 2025) ("The requirement of fair notice is generally satisfied whenever the agency's interpretation . . . is the most natural reading of the statute.") (internal citation omitted). The 1996 Task Force report Defendant cites (which, it should be noted, expressly stated that the EEOC "is not endorsing any particular policy, program, or practice") clearly reiterated Title VII's textual prohibition that "[i]t is unlawful to discriminate against any employee . . . because of his/her race or color in regard to hiring, termination, promotion, compensation, job training, or any other term, condition, or

privilege of employment."[11] The 2006 guidance document cited by Defendant discusses diversity insofar as that term means "open[ing] up opportunities to everyone."[12] Diversity, as discussed in the document, does not refer to race or sex-conscious employment practices and thus has no bearing here, where EEOC alleges that Defendant intentionally discriminated on the basis of race and/or sex. While the document discusses "affirmative action," that discussion is irrelevant because Defendant does not allege that the relevant hiring decision was made pursuant to an affirmative action plan under the regulations existing at the time. *See* 29 C.F.R. § 1608.4. Moreover, the 2006 guidance expressly cautions that diversity and affirmative action programs have the "potential for running afoul of the law," which more than put Defendant on notice that EEOC might find a particular diversity and affirmative action program unlawful or determine it contributed to a particular unlawful employment action.

The other documents cited in Defendant's counterclaims stand for the proposition that, at most, DEI initiatives – which were described as efforts to "afford[] equal opportunity in the workplace" – were at one point encouraged by the Agency. ECF No. 28, ¶¶ 166-168. This fails to advance Defendant's position, however, because none of these statements did grant (or even could have granted) blanket exceptions to Title VII's prohibition on race and sex discrimination so long as an employer uses the title "diversity, equity, and inclusion" to describe its own employment practice. Defendant can point to none because there is no such statement.[13] Because "nothing in

---

[11] EEOC, "Best Practices of Private Sector Employers," https://www.eeoc.gov/best-practices-private-sector-employers.

[12] EEOC, "Section 15 Race and Color Discrimination," https://www.eeoc.gov/laws/guidance/section-15-race-and-color-discrimination.

[13] The reference to the newly promulgated National Enforcement Plan ("NEP") is a non sequitur. ECF No. 28, ¶186. This case was not initiated pursuant to the NEP because the NEP had not yet been established, and in any event, the

the Commission's prior guidance conflicts with the interpretation the Commission adopted in this case," Defendant has not alleged a viable Fifth Amendment due process counterclaim, and the counterclaim must be dismissed. *Sprint*, 151 F.4th at 367.

**c. The APA counterclaim fails because a federal agency's decision to initiate litigation is not subject to judicial review.**

When the APA applies, it permits courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA does not permit judicial review into an "agency action … committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003) ("[U]nder § 701(a)(2) agency action is not subject to judicial review 'to the extent that' such action 'is committed to agency discretion by law.'") (quoting *Lincoln v. Vigil*, 508 U.S. 182, 190–91 (1993)). Title VII confers to the Commission the discretion to determine whether to file an enforcement action when conciliation fails. *See* 42 U.S.C. § 2000e-5(f)(1). Accordingly, the decision to commence litigation is not subject to judicial review under the APA, and the APA claim must be dismissed. Defendant's recourse is to "instead simply defend itself against the suit." *See AT&T Co. v. E.E.O.C.*, 270 F.3d 973, 975 (D.C. Cir. 2001).

A contrary decision would create "a means of turning prosecutor into defendant before adjudication concludes" every time the EEOC files suit against an employer who disagrees with the EEOC's decision to initiate litigation, which presumably would be every case. *See F.T.C. v.*

---

NEP merely guides the agency's prioritization of enforcement resources pursuant to the statutes the EEOC enforces, and does not of itself establish that any particular practice is unlawful or dictate that any particular defendant should be sued. *See* EEOC "National Enforcement Plan" https://www.eeoc.gov/sites/default/files/2026-06/NEP_-_signed.pdf. Defendant's attempt to convert a subsequent unrelated Agency action into a retroactive basis for the instant case fails.

*Standard Oil Co. of California*, 449 U.S. 232, 243 (1980) (holding that an agency's decision to file administrative complaint was not subject to judicial review under the APA). The EEOC acknowledges that an enforcement action is a major disruption for an employer, but as the Supreme Court has acknowledged, that is "part of the social burden of living under government." *Petroleum Exploration, Inc. v. Public Service Comm'n*, 304 U.S. 209, 222 (1938). The Court should decline Defendant's invitation to create an APA claim for every time the EEOC enforces Title VII.

## CONCLUSION

Through various theories, Defendant asks the Court to craft a Title VII immunity defense for press employers that criticize the government or maintain employment practices they title "diversity, equity, and inclusion." The Court should reject that invitation. The EEOC's enforcement action has nothing to do with Defendant's news coverage. And Title VII prohibits discriminatory employment practices, whatever the employer decides to call them. Defendant is alleged to have discriminated against Rousseau on the basis of race and/or sex, and so the EEOC enforced the law. Defendant has not shown or alleged anything to the contrary, which is why its various legal theories fail. The Court should grant the motion and dismiss the counterclaims in their entirety.

Dated: August 28, 2026

Respectfully submitted,
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

*/s/ Benjamin North*________
BENJAMIN NORTH
Assistant General Counsel (*pro hac vice)*
131 M Street, NE
Washington, D.C., 20507
(202) 288-1622
Benjamin.north@eeoc.gov

CARL CHANG
Trial Attorney (*pro hac vice*)
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, Alabama 35205
(205) 651-7056
Carl.chang@eeoc.gov

**CERTIFICATE OF SERVICE**

Consistent with Local Civil Rule 5.2, this is to certify that on August 28, 2026, a copy of the foregoing was filed electronically and service of this filing will be accomplished by e-mail to all Parties by operation of the Court's electronic filing system (CM/ECF).

Dated: August 28, 2026

/s/Benjamin North________
BENJAMIN NORTH
Assistant General Counsel

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)**

The undersigned counsel certifies that this brief does not exceed the 8750-word limit under Local Rule 7.1(c).

Dated: August 28, 2026

/s/Benjamin North________
BENJAMIN NORTH
Assistant General Counsel