**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

– and –

BRYANT ROUSSEAU,

Intervenor-Plaintiff,

v.

THE NEW YORK TIMES COMPANY,

Defendant.

THE NEW YORK TIMES COMPANY,

Counterclaim Plaintiff,

v.

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

ANDREA R. LUCAS, in her official capacity as Chair of the U.S. Equal Employment Opportunity Commission,

KALPANA KOTAGAL, in her official capacity as Commissioner of the U.S. Equal Employment Opportunity Commission, and

BRITTANY BULL PANUCCIO, in her official capacity as Commissioner of the U.S. Equal Employment Opportunity Commission,

Counterclaim Defendants.

26 Civ. 03704

**CONSOLIDATED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES AND PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1
FACTUAL ALLEGATIONS ..................................................................................... 2
LEGAL STANDARDS ............................................................................................. 4
ARGUMENT ........................................................................................................... 5
I. The Court Has Subject Matter Jurisdiction Over the Counterclaims. .................... 5
II. The Counterclaims and Affirmative Defenses are Proper and Sufficiently Pleaded. ............ 10
a. The EEOC Brought This Case Because of The Times's Protected Speech. ........ 10
i. The Times has properly and sufficiently pleaded a First Amendment retaliation counterclaim (First Counterclaim) and affirmative defense (Fifteenth Affirmative Defense). .............................. 10
ii. The Times has properly and sufficiently pleaded a selective enforcement defense (Fourteenth Affirmative Defense). ......................... 16
b. The Times Has Plausibly Alleged That the EEOC Seeks to Impose Liability for Protected Speech. ............................................................. 17
i. The Times's First Amendment defense should not be stricken (Thirteenth Affirmative Defense). ........................................................ 18
ii. The Times's fair-notice defense should not be stricken, nor should its related counterclaim be dismissed (Sixteenth Affirmative Defense, Second Counterclaim)........................................................ 19
c. The EEOC's arbitrary and capricious actions foreclose dismissing The Times's Administrative Procedure Act counterclaim (Third Counterclaim) and striking its related affirmative defenses (Seventeenth and Eighteenth Affirmative Defenses)......................................................................... 21
d. The Times's Second, Third, and Eighth Affirmative Defenses Should Not Be Stricken.......................................................................................... 23
i. The Second and Third Affirmative Defenses are adequately alleged. .......................................................................................... 23
ii. The Times's Eighth Affirmative Defense is adequately alleged. ............. 25
CONCLUSION........................................................................................................ 26
CERTIFICATE OF COMPLIANCE.............................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acosta v. Seaboard Foods, LLC*,
2024 WL 4428985 (N.D. Tex. Oct. 4, 2024) ........ 14

*Am. Acad. of Pediatrics v. HHS*,
816 F. Supp. 3d 27 (D.D.C. 2026) ........ 13

*Am. Sch. of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902) ........ 9

*Arista Recs. LLC v. Usenet.com, Inc.*,
2008 WL 4974823 (S.D.N.Y. Nov. 24, 2008) ........ 8

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ........ 9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2, 4

*Bennett v. Spear*,
520 U.S. 154 (1997) ........ 21, 22

*Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*,
2021 WL 2534000 (S.D.N.Y. June 21, 2021) ........ 8, 9

*BNSF Ry. v. EEOC*,
385 F. Supp. 3d 512 (N.D. Tex. 2018) ........ 23

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978) ........ 20

*Canon U.S.A., Inc. v. F & E Trading LLC*,
2017 WL 4357339 (E.D.N.Y. Sept. 29, 2017) ........ 8

*Car-Freshner Corp. v. Just Funky LLC*,
2019 WL 6270991 (N.D.N.Y. Nov. 25, 2019) ........ 16

*City of Chicago v. DoorDash, Inc.*,
636 F. Supp. 3d 916 (N.D. Ill. 2022) ........ 15, 16

*Clubside, Inc. v. Valentin*,
468 F.3d 144 (2d Cir. 2006) ........ 17

*Corley v. City of New York*,
2017 WL 4357662 (S.D.N.Y. Sept. 28, 2017) ........ 12

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) ........ 26

*Curley v. Village of Suffern*,
268 F.3d 65 (2d Cir. 2001)........................................12

*Dep't of Commerce v. New York*,
588 U.S. 752 (2019)........................................2

*Dolan v Connolly*,
794 F.3d 290 (2d Cir. 2015)........................................12

*Dorsett v. County of Nassau*,
732 F.3d 157 (2d Cir. 2013)........................................7, 11, 12, 13

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003)........................................8, 9

*EEOC v. A&F Fire Prot. Co.*,
2018 WL 7252950 (E.D.N.Y. Dec. 13, 2018)........................................24, 25

*EEOC v. AZ Metro Distribs., LLC*,
2016 WL 10679469 (E.D.N.Y. Dec. 20, 2016)........................................15, 16

*EEOC v. First Nat. Bank of Jackson*,
614 F.2d 1004 (5th Cir. 1980)........................................15

*EEOC v. Frontier Hot-Dip Galvanizing, Inc.*,
2017 WL 11309771 (W.D.N.Y. Dec. 18, 2017)........................................23

*EEOC v. Kelley Drye & Warren, LLP*,
2011 WL 3163443 (S.D.N.Y. July 25, 2011)........................................16, 24

*EEOC v. United Parcel Serv.*,
2017 WL 2829513 (E.D.N.Y. June 29, 2017)........................................24

*EEOC v. United Parcel Serv. Inc.*,
2017 WL 9482105 (E.D.N.Y. Mar. 9, 2017)........................................26

*Escobar v. City of New York*,
2007 WL 1827414 (E.D.N.Y. June 25, 2007)........................................10

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)........................................21

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012)........................................19, 20

*First Choice Women's Res. Ctrs., Inc. v. Davenport*,
608 U.S. 174 (2026)........................................5, 6

*Gen. Elec. Co. v. EPA*,
53 F.3d 1324 (D.C. Cir. 1995)........................................19

*GEOMC Co. v. Calmare Therapeutics Inc.*,
918 F.3d 92 (2d Cir. 2019)........................................5, 16, 17

*Gill v. Pidlypchak*,
389 F.3d 379 (2d Cir. 2004)........................................12

*Heckler v. Chaney*,
470 U.S. 821 (1985) ....... 22, 23

*Hu v. City of New York*,
927 F.3d 81 (2d Cir. 2019) ....... 17

*Jenkins v. Officer S (Downstate)*,
2021 WL 4392611 (S.D.N.Y. Sept. 24, 2021) ....... 11

*Jenner & Block LLP v. U.S. Dep't of Just.*,
784 F. Supp. 3d 76 (D.D.C. 2025) ....... 12

*Jinks v. Richmond County*,
538 U.S. 456 (2003) ....... 10

*Latecoere Int'l, Inc. v. U.S. Dep't of Navy*,
19 F.3d 1342 (11th Cir. 1994) ....... 22

*Lozman v. City of Riviera Beach*,
585 U.S. 87 (2018) ....... 10

*Mach Mining, LLC v. EEOC*,
575 U.S. 480 (2015) ....... 23, 24

*MacIntyre v. Moore*,
335 F. Supp. 3d 402 (W.D.N.Y. 2018) ....... 10

*Mahmoud v. Taylor*,
606 U.S. 522 (2025) ....... 7

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ....... 4

*Mangino v. Inc. Vill. of Patchogue*,
808 F.3d 951 (2d Cir. 2015) ....... 12, 15

*Marcavage v. City of New York*,
689 F.3d 98 (2d Cir. 2012) ....... 6

*Media Matters for Am. v. Paxton*,
138 F.4th 563 (D.C. Cir. 2025) ....... 6, 8, 13

*Moore v. Gardner*,
199 F. Supp. 2d 17 (W.D.N.Y. 2002) ....... 11

*Morrison v. Nat'l Australia Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008) ....... 4

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ....... 22

*Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle*,
429 U.S. 274 (1977) ....... 13

*Murthy v. Missouri*,
603 U.S. 43 (2024) ....... 5

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) ....................................................................................................5

*Nat'l Rifle Ass'n of Am. v. Vullo*,
144 F.4th 376 (2d Cir. 2025) ....................................................................................13, 14

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) ....................................................................................................10

*Nieves v. Bartlett*,
587 U.S. 391 (2019) ..........................................................................................13, 14, 15

*NRDC v. FDA*,
760 F.3d 151 (2d Cir. 2014) ........................................................................................22

*Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*,
477 U.S. 619 (1986) ......................................................................................................6

*Ohio v. EPA*,
603 U.S. 279 (2024) ....................................................................................................21

*OSG Bulk Ships, Inc. v. United States*,
132 F.3d 808 (D.C. Cir. 1998) ....................................................................................21

*Öztürk v. Trump*,
779 F. Supp. 3d 462 (D. Vt. 2025) ..............................................................................15

*Perkins Coie LLP v. U.S. Dep't of Just.*,
783 F. Supp. 3d 105 (D.D.C. 2025) ......................................................................12, 18

*Phoenix Cos. v. Concentrix Ins. Admin. Sols. Corp.*,
554 F. Supp. 3d 568 (S.D.N.Y. 2021) ............................................................................4

*Salazar v. King*,
822 F.3d 61 (2d Cir. 2016) ....................................................................................22, 23

*In re Salomon Analyst Level 3 Litig.*,
350 F. Supp. 2d 477 (S.D.N.Y. 2004) ..........................................................................14

*Sam Bernstein L. Firm, PLLC v. Sam*,
2026 WL 61261 (W.D.N.Y. Jan. 8, 2026) ....................................................................25

*SEC v. Almagarby*,
92 F.4th 1306 (11th Cir. 2024) ....................................................................................19

*SEC v. Durante*,
2013 WL 6800226 (S.D.N.Y. Dec. 19, 2013) ..............................................................25

*SEC v. Leibowitz*,
2025 WL 2056026 (S.D.N.Y. July 23, 2025) ................................................................25

*SEC v. McCaskey*,
56 F. Supp. 2d 323 (S.D.N.Y. 1999) ............................................................................25

*SEC v. Rayat*,
2021 WL 4868590 (S.D.N.Y. Oct. 18, 2021) ........................................................25, 26

*Shain v. Ellison*,
356 F.3d 211 (2d Cir. 2004)....................6

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)....................6, 7

*Susman Godfrey LLP v. Exec. Off. of the President*,
789 F. Supp. 3d 15 (D.D.C. 2025)....................18

*Tabbaa v. Chertoff*,
509 F.3d 89 (2d Cir. 2007)....................12

*Thornton v. County of Albany*,
2016 WL 5793714 (N.D.N.Y. Oct. 4, 2016)....................24

*Trump v. Cook*,
146 S. Ct. 2234 (2026)....................2

*Tummino v. Torti*,
603 F. Supp. 2d 519 (E.D.N.Y. 2009)....................22

*United States v. Alleyne*,
454 F. Supp. 1164 (S.D.N.Y. 1978)....................16

*United States v. Am. Elec. Power Serv. Corp.*,
258 F. Supp. 2d 804 (S.D. Ohio 2003)....................16

*United States v. Vazquez*,
145 F.3d 74 (2d Cir. 1998)....................6, 7, 13

*Wang v. Bethlehem Cent. Sch. Dist.*,
2022 WL 3154142 (N.D.N.Y. Aug. 8, 2022)....................6

**Statutes**

5 U.S.C. § 706....................21

42 U.S.C. § 2000e-2....................20

42 U.S.C. § 2000e-5....................23

**Rules**

Fed. R. Civ. P. 12....................4

## INTRODUCTION

The Equal Employment Opportunity Commission ("EEOC" or the "Commission") filed this Title VII action against The New York Times Company ("The Times"), a longstanding and frequent target of the administration, a mere eight days after The Times's investigative reporting brought to light scathing bipartisan criticism of the Commission, its leadership, and its priorities. ECF 28 ("Counterclaims") ¶¶104, 105. In targeting The Times, first for investigation and then litigation, the Commission deviated from its ordinary practices in almost every respect. *Id*. ¶¶153-60. It spent eight months searching—unsuccessfully—for evidence to support its baseless presumption that race and/or sex *must* have played a factor in The Times's decision not to hire Intervenor-Plaintiff Bryant Rousseau ("Rousseau") for the role of Deputy Real Estate Editor, *id.* ¶154, and ignored evidence refuting any claim that Rousseau was discriminated against, *id.* ¶¶107, 159. It flouted its statutory obligation to conciliate. *Id.* ¶¶153-54. And it filed this one-of-a-kind lawsuit based on the unconstitutional theory that The Times can be held liable under Title VII for past speech about its lawful workplace initiatives and aspirational leadership goals—speech that is not only protected by the First Amendment but that the EEOC had, until recently, encouraged as a best practice. *Id.* ¶¶162-71. This lawsuit is meritless. *See id*. ¶158 (former EEOC commissioner noting the Commission "put[] out [its] best facts in [its] complaint, and the facts are pathetic"). And the EEOC's pursuit of it is so extraordinary that a sitting Commissioner—who voted against authorizing the litigation—stated publicly she "fear[ed]" it was "driven not by the merits, but by a desire to advance the administration's political agenda." *Id.* ¶157.

Ignoring these and numerous other well-pleaded facts, the EEOC asks the Court to strike or dismiss the affirmative defenses and counterclaims arising out of its unlawful, retaliatory actions. Misapprehending the relevant legal doctrines, the EEOC argues variously that The Times will be unable to prove the Commission's actions violate the First or Fifth Amendment or the

Commission's statutory obligations, including under the Administrative Procedure Act (APA), and it contends, in effect, that this Court should ignore The Times's factual allegations and take its word that it would have done the same to any other employer on the basis of a single charge from a single employee who claimed to "believ[e] he had been subject to discrimination," Mot. to Dismiss ("MTD") 16. But this Court is "not required to exhibit a naiveté from which ordinary citizens are free." *Trump v. Cook*, 609 U.S. ---, 146 S. Ct. 2234, 2249 (2026) (quoting *Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019)). And at the pleading stage, The Times need only allege affirmative defenses and counterclaims that are "plausible on [their] face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It has more than cleared that modest bar.

The Times has properly asserted affirmative defenses and counterclaims for declaratory and injunctive relief consistent with binding Supreme Court and Second Circuit precedent, and its detailed factual allegations—which must be taken as true and construed in the light most favorable to The Times for purposes of the Commission's motions—more than suffice to plausibly state each of the constitutional, statutory, and equitable affirmative defenses and counterclaims it asserts. The EEOC's motions must be denied.

## FACTUAL ALLEGATIONS

The Times refers the Court to the extensive factual allegations in its Answer and Counterclaims. *See* Counterclaims ¶¶104-75. In brief, The Times is one of the world's most trusted news organizations and is one the President and his administration have repeatedly attacked for its reporting. *See* Counterclaims ¶¶119-37; *see, e.g.*, *id.* ¶¶122-23 (President claiming The Times "make[s] most of [its reporting] up" and "consistently do[es] FAKE reports" about him); *id.* ¶¶123-24 (President calling The Times's reporting "seditious, perhaps even treasonous" and a "serious threat to the National Security of our Nation"). In addition to calling for The Times to be "deal[t] with and stop[ped]," *id.* ¶129, the President and his administration have repeatedly sued,

subpoenaed, and taken other adverse, retaliatory actions against The Times, *id.* ¶¶133-37.

As part of its coverage of the administration, between January 2025 and May 5, 2026, when this lawsuit was filed, The Times published more than a dozen articles about the Commission. *See id.* ¶¶138-48. On April 27, 2026, eight days before this lawsuit was filed, The Times published a lengthy investigative piece reporting that EEOC employees were "under intense pressure" to bring cases that "fit the Trump administration's priorities"—even when those cases were supported by "little evidence" and had "tenuous legal bases." *Id.* ¶¶145-47. On May 3, 2026, two days before this lawsuit was filed, The Times reported that the EEOC was investigating a discrimination claim by a white male Times employee. *Id.* ¶148.

The EEOC's investigation of Rousseau's charge and its filing of this lawsuit deviated from its ordinary practices in almost every respect and evidence an intent to sue The Times regardless of merit. *Id.* ¶¶153-60. After transferring the investigation to its Alabama field office, *id.* ¶153, the EEOC spent eight months collecting and reviewing more than a thousand pages of documents and interviewing no fewer than nine witnesses, *id.* ¶154. Ignoring evidence of the opportunities Rousseau had been afforded at The Times, the Commission filed a Complaint that does not (and could not) point to any evidence showing he was discriminated against, *id.* ¶¶107, 187. And it filed that Complaint after a sham conciliation process that it abruptly declared a failure even though all parties had expressly agreed to continue discussions. *Id.* ¶¶152-54. It is exceedingly rare for the EEOC to initiate its own Title VII lawsuit, *id.* ¶¶155-56 (citing statistics), and this case does not resemble other Title VII lawsuits the EEOC has pursued. *Id.* ¶155.

The EEOC's alleged basis for this lawsuit is "A Call to Action," a February 2021 report that included aspirational goals based on lawful initiatives that The Times hoped would contribute to it becoming a more "diverse, equitable, and inclusive" company. *Id.* ¶161 & n.45. That report,

as well as The Times's other past speech and initiatives relating to diversity, equity, and inclusion, were consistent with—and encouraged by—relevant guidance issued by the EEOC. *See id.* ¶¶162-71. It was not until after this lawsuit was filed that the Commission published its National Enforcement Plan for Fiscal Years 2025-2029 ("Enforcement Plan"), which featured abrupt, unexplained reversals of longstanding EEOC policy. *Id.* ¶174.

The day it filed this lawsuit, the EEOC issued an accompanying press release quoting Chair Andrea Lucas as stating of The Times: "No one is above the law—including 'elite' institutions." *Id.* ¶152. That same day Commissioner Kalpana Kotagal stated publicly that she "fear[ed]" this lawsuit "is driven not by the merits, but by a desire to advance the administration's political agenda." *Id.* ¶157 (calling it "notabl[e]" that "this litigation is filed on the heels of [The Times's] reporting on the weaponization of the agency. . .").

**LEGAL STANDARDS**

Motions to dismiss claims and counterclaims are governed by the same standards. *See Phoenix Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y. 2021). Courts "must accept all well-pleaded facts as true and construe the answer and counterclaims in the light most favorable to the nonmoving party." *Id.* at 585 (quotation marks omitted); *see also Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (same). A counterclaim is only properly dismissed under Rule 12(b)(1) for lack of standing or subject matter jurisdiction if "the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A counterclaim is only properly dismissed under Rule 12(b)(6) for failure to state a claim if it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

A motion to strike an affirmative defense under Rule 12(f) must be denied unless the moving party shows that: "(1) there is no question of fact which might allow the defense to" meet

the plausibility standard applied to pleadings, "(2) that there is no question of law which might allow the defense to succeed," and that "(3) [it] would be prejudiced by inclusion of the defense." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019).

## ARGUMENT

### I. The Court Has Subject Matter Jurisdiction Over the Counterclaims.

#### a. The EEOC's Retaliatory Enforcement Action is Inflicting Ongoing Harm.

To establish standing, a plaintiff must show it "has suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024). As the target of a retaliatory civil enforcement action by the government, The Times has standing to seek declaratory and equitable relief. The EEOC's argument (at 4-6) that The Times lacks an Article III injury ignores binding Supreme Court and Second Circuit precedent.

In *First Choice Women's Resource Centers, Inc. v. Davenport*, 608 U.S. 174 (2026), a unanimous Supreme Court held that the target of a subpoena in a government investigation had a "present" First Amendment injury sufficient to seek injunctive relief. *Id.* at 188-89 (explaining that an injury "does not arise only when a defendant causes a tangible harm to a plaintiff" but also "when a defendant burdens a plaintiff's constitutional rights"). Even the mere threat of litigation can burden the exercise of First Amendment rights. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964). Here, as The Times has alleged, the EEOC has filed a lawsuit seeking significant financial and injunctive penalties in retaliation for The Times's reporting and other protected speech. *First Choice*, 608 U.S. at 189. The process is the penalty. And such punitive government action "inevitably deters the exercise of First Amendment rights." *Id.* at 189, 193 (citation modified). As the D.C. Circuit recently explained in a case cited favorably in *First Choice*, *id.* at 195, The Times's "allegation that [it is the] target[]" of retaliatory government enforcement action "is a

claim regarding concrete harm" that is "distinct from any resulting chilling effects." *Media Matters for Am. v. Paxton*, 138 F.4th 563, 580-81 (D.C. Cir. 2025) ("retaliation in response to Appellees' exercise of their First Amendment rights reflects concrete and present harm"). And, like the investigation in *First Choice*, the EEOC's lawsuit targeting The Times for speech "the government disfavors" burdens First Amendment rights by "discourag[ing]" their exercise. 608 U.S. at 189. It is inflicting actual, "ongoing" First Amendment injury "as long as" it "remains outstanding." *Id.*[1]

The EEOC (at 4-5) tries to characterize this lawsuit as "past harm" that cannot justify injunctive relief, but it relies on cases where a plaintiff suffered a discrete past injury and sought to enjoin a speculative future recurrence. *See Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004); *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012). That reasoning "does not apply to cases" like this one "where a continuing harm is alleged." *Wang v. Bethlehem Cent. Sch. Dist.*, 2022 WL 3154142, at *7 n.6 (N.D.N.Y. Aug. 8, 2022). Indeed, the EEOC recognizes as much when it admits (at 5) that the "continued existence of this lawsuit" may constitute "the requisite continuing harm for standing purposes."

The EEOC's claim (at 5-6) that The Times lacks standing because it has continued to cover the administration is foreclosed by Second Circuit precedent. *United States v. Vazquez*, 145 F.3d 74 (2d Cir. 1998), held that a defendant had standing to bring First Amendment counterclaims seeking dismissal of a government lawsuit and an injunction against enforcement—

[1] Generally, a party need not "wait for the government to take coercive action against it before filing suit to challenge the government's conduct"; it may seek prospective relief from a "credible threat of enforcement" targeting its First Amendment rights. *First Choice*, 608 U.S. at 183 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Here, the threat has been realized. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 626 n.1 (1986) ("If a reasonable threat of prosecution creates a ripe controversy, we fail to see how the actual filing of the administrative action threatening sanctions in this case does not.").

notwithstanding her continued speech. *Id.* at 81. The defendant's "persistence" in protesting "during the pendency of the lawsuit" did not mean "she did not suffer a sufficiently concrete injury to challenge the government's action." *Id.* (explaining that "her continued pamphleteering may have simply been the result of her willingness to risk liability"). So too here, the fact that The Times has continued reporting does not disprove its First Amendment injury.

Furthermore, when it comes to government retaliation, the Second Circuit has made clear that a plaintiff has standing "if he can show *either* that his speech has been adversely affected by the government retaliation *or that he has suffered some other concrete harm*." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (emphasis added); *infra* pp.11-12. The Times's allegations amply support a finding of significant, concrete "non-speech related harms" because of the EEOC's lawsuit—including reputational and other harm—that suffice for standing. *Dorsett*, 732 F.3d at 160; *Susan B. Anthony List*, 573 U.S. at 165-66 (in pre-enforcement challenge, describing "burdens" of threatened proceeding as including "be[ing] forced to divert significant time and resources to hire legal counsel and respond to discovery requests"); Counterclaims ¶156 (alleging that the EEOC has "place[d] the weight of the federal government behind the suit").

The EEOC suggests (at 5) that litigation expenses do not constitute "irreparable injury." That argument conflates standing with the merits by equating the injury required for Article III standing with the *irreparable* injury required to obtain equitable relief. *See Vazquez*, 145 F.3d at 81. Regardless, The Times suffers ongoing irreparable First Amendment injury so long as it must defend itself against the EEOC's retaliatory lawsuit, and it is well established that the violation of First Amendment rights "for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025). Because The Times is the target of

"retaliation . . . in response to [its] exercise of First Amendment rights," it "clearly" has standing to seek injunctive relief. *Media Matters*, 138 F.4th at 579, 585.

**b. The "Mirror-Image Rule" is Inapplicable.**

The EEOC invokes (at 7) the "mirror image rule"—a "discretion[ary]" doctrine usually applied in the intellectual-property context to decline jurisdiction over certain redundant counterclaims. *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003); *see, e.g.*, *Arista Recs. LLC v. Usenet.com, Inc.*, 2008 WL 4974823, at *4 (S.D.N.Y. Nov. 24, 2008) (dismissing counterclaims for non-infringement in a copyright infringement action). The Commission cites no case applying that doctrine to dismiss constitutional counterclaims against the government and, regardless, the doctrine is inapplicable here.

A counterclaim should be dismissed only if it "serves no independent purpose." *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, 2021 WL 2534000, at *7 (S.D.N.Y. June 21, 2021). Thus, a "mirror image counterclaim is generally the exact opposite of the original claim with no added nuances." *Canon U.S.A., Inc. v. F & E Trading LLC*, 2017 WL 4357339, at *10 (E.D.N.Y. Sept. 29, 2017). This follows from the factors the Second Circuit has recognized "guide the exercise of discretion in Declaratory Judgment Act cases." *Dow Jones*, 346 F.3d at 359; *see Beverly Hills*, 2021 WL 2534000, at *7 (applying these factors). Those factors include whether the declaratory judgment would serve a "useful purpose in clarifying or settling the legal relations issues involved," whether it would "finalize the controversy and offer relief from uncertainty," and "whether there is a better or more effective remedy." *Dow Jones*, 346 F.3d at 359-60 (quotation marks omitted).

Applying these factors, it is clear the "mirror image rule" is inapplicable. Most obviously, The Times's counterclaims are not the "exact opposite" of the EEOC's claims: The Times does not seek a declaration that it did not discriminate. It seeks a declaration that the Commission

violated the First and Fifth Amendments and the APA, an injunction stopping the Commission from continuing to do so, and vacatur of the Commission's decision to initiate this action or, in the alternative, its decision to abruptly and unilaterally terminate conciliation. Moreover, a declaratory judgment on The Times's constitutional counterclaims would "clarify[] or settl[e] the legal relations issues involved" and "offer relief from uncertainty" by resolving whether the EEOC has violated The Times's constitutional rights and the APA—questions that would be left unresolved by a merits dismissal of the EEOC's Title VII claims. *Dow Jones*, 346 F.3d at 359.

The EEOC fixates (at 9-10) on whether The Times's counterclaims would continue to present a live case if the EEOC's claims were dismissed. But that is simply one factor district courts have considered in "determining whether a counterclaim is merely a mirror image of a claim"—it does not trump the Second Circuit's *Dow Jones* factors, which clearly favor jurisdiction here. *Beverly Hills*, 2021 WL 2534000, at *7. Moreover, a counterclaim should be dismissed only when it is *both* a mirror-image "*and* the counterclaim serves no independent purpose." *Id.* (quotation marks omitted and emphasis added). Thus, even if the Commission's speculative mootness concern was a factor that suggested The Times's counterclaims may be mirror-image claims (they are not), those counterclaims still would serve the independent purposes described above and should not be dismissed.

**c. The Official-Capacity Claims Are Proper.**

The EEOC contends (at 6-7) that it is "duplicative" to name as defendants both the Commission and its individual commissioners. But official-capacity suits are the "traditional[]" vehicle through which a party may "sue to enjoin unconstitutional actions by . . . federal officers." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327, 329 (2015); *see Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902). The Times therefore has an equitable cause of action to seek injunctive relief against the federal officials accountable for the Commission's

actions. The EEOC cites no case holding that such claims should be dismissed as duplicative when a federal agency is also a defendant. It cites cases endorsing dismissal of *damages* claims against individual officials when a *municipal-government* defendant is also named. *See MacIntyre v. Moore,* 335 F. Supp. 3d 402, 417 (W.D.N.Y. 2018); *Escobar v. City of New York*, 2007 WL 1827414, at *3 (E.D.N.Y. June 25, 2007). But those cases are inapposite because sovereign immunity does not protect municipal governments, *see Jinks v. Richmond County*, 538 U.S. 456, 465-66 (2003), and the equitable cause of action recognized in *Armstrong* only encompasses "injunctive relief," 575 U.S. at 326. If, by arguing that the official-capacity claims are duplicative, the EEOC is conceding that The Times's constitutional counterclaims allow it to be enjoined—independent of any cause of action under the APA and notwithstanding any sovereign-immunity concerns—then The Times will accept that binding concession and dismiss its claims against the individual commissioners.

## II. The Counterclaims and Affirmative Defenses are Proper and Sufficiently Pleaded.

### a. The EEOC Brought This Case Because of The Times's Protected Speech.

The Times has more than met its burden to plausibly allege facts that—when taken as true, as they must be—support an inference that the EEOC targeted The Times because of its First Amendment-protected journalism and other speech. The Times's allegations, which the Commission ignores, foreclose **(i)** dismissing its First Amendment retaliation counterclaim or striking its First Amendment retaliation defense and **(ii)** striking its selective enforcement defense.

#### i. The Times has properly and sufficiently pleaded a First Amendment retaliation counterclaim (First Counterclaim) and affirmative defense (Fifteenth Affirmative Defense).

The First Amendment prohibits government officials from "us[ing] the power of the State to punish or suppress disfavored expression." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188, 190 (2024); *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018). To plead First Amendment

retaliation, a party must allege "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett*, 732 F.3d at 160.

**1. The Times has plausibly alleged all three elements of a retaliation counterclaim.**

*First,* The Times has plausibly alleged that it engaged in First Amendment-protected speech, including by publishing articles about the EEOC and the administration, *see* Counterclaims ¶¶122-27, 130, 138-48, and by making aspirational statements expressing views on the value of diversity, equity, and inclusion at The Times, *id.* ¶¶161, 171. The EEOC does not dispute that The Times engaged in protected speech. Instead, it faults The Times (at 14) for supposedly not alleging "specific examples" of protected journalism and other speech that made The Times its target. But among *many* other examples, The Times pointed to a lengthy investigative piece—published eight days before the EEOC filed this lawsuit—that reported that EEOC employees were "under intense pressure" to bring flimsy (at best) cases that "fit the Trump administration's priorities." Counterclaims ¶¶138-48. The Times has more than adequately alleged that it engaged in speech "protected by the First Amendment," *Dorsett*, 732 F.3d at 160, that spurred the Commission to take retaliatory action against it. No precedent requires more specificity than that.[2]

*Second*, the EEOC's lawsuit is causing The Times at least "some injury." *Dorsett*, 732 F.3d at 160. The EEOC's argument (at 15) that The Times had to allege its speech was "actually chilled" ignores Second Circuit precedent holding the opposite. "Chilled speech is not the *sine qua non* of a First Amendment claim." *Id.* at 160. A plaintiff "can show *either* that his speech has

[2] The EEOC's authorities (at 14) involved pleadings that were "too vague to establish that Plaintiff was engaged in protected activity" *at all*. *Jenkins v. Officer S (Downstate)*, 2021 WL 4392611, at *5 (S.D.N.Y. Sept. 24, 2021); *see Moore v. Gardner*, 199 F. Supp. 2d 17, 30 (W.D.N.Y. 2002).

been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Id.* (emphasis in original); *see also Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 957 (2d Cir. 2015). While the EEOC relies (at 15) on *Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001), for the proposition that a private citizen retaliation plaintiff must allege "actual chill," the *Dorsett* court clarified *Curley*'s "imprecise statement of law," 732 F.3d at 160: To the extent the Second Circuit imposes a "subjective chill requirement," it applies *only* where no "other harm is asserted." *Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004).[3]

Here, it is enough that The Times must bear the reputational and other burdens associated with defending against a retaliatory government enforcement action that labels it a discriminatory employer and seeks injunctive and monetary penalties. Counterclaims ¶156; *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 155 (D.D.C. 2025); *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 97 (D.D.C. 2025). The "non-speech related harms" inflicted by this lawsuit, standing alone, "are sufficient." *Dorsett*, 732 F.3d at 160.

To be clear, however, the EEOC is wrong to suggest that because The Times has continued to cover the administration, its First Amendment rights are not being burdened. MTD 15 n.7. "Government action can constitute a direct and substantial interference" with First Amendment rights even if there is "no clear chilling of future expressive activity." *Tabbaa v. Chertoff*, 509

[3] The EEOC argues (at MTD 16 n.8) that *Gill* establishes a "more forgiving" standard for prisoner-retaliation cases by requiring a prisoner-plaintiff to demonstrate that an alleged retaliatory action is objectively chilling, 389 F.3d at 381. But *Dorsett* holds that *no* chilling effect is necessary in non-prisoner cases so long as the retaliation caused some "concrete harm." 732 F.3d at 160. It makes sense that prisoner-retaliation claims would face an *additional* objective-chill requirement. Courts have long approached such claims "with skepticism and particular care" because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Corley v. City of New York*, 2017 WL 4357662, at *19 (S.D.N.Y. Sept. 28, 2017) (quoting *Dolan v Connolly*, 794 F.3d 290, 295 (2d Cir. 2015)).

F.3d 89, 101-02 (2d Cir. 2007) (subjecting plaintiffs to extensive processing at border crossing burdened associational rights). Nor do any of the cases cited by the EEOC address the unique First Amendment harms—the "*special* burden[s]"—inflicted by "official harassment" of the press, *Media Matters*, 138 F.4th at 580 (emphasis in original); Counterclaims ¶¶104, 156, 160. The Times's "willingness to risk" being targeted for its speech does not show that it lacks a First Amendment "injury." *Vazquez*, 145 F.3d at 81. The EEOC's contrary rule would make the constitutionality of government action dependent on the fortitude of its victims and "strip constitutional rights away from the most principled speakers." *Am. Acad. of Pediatrics v. HHS*, 816 F. Supp. 3d 27, 53 (D.D.C. 2026).

*Third*, The Times has adequately pleaded that the EEOC's lawsuit was "motivated or substantially caused by" its protected speech. *Dorsett*, 732 F.3d at 160; *see* Counterclaims ¶179. The EEOC (at 16) faults The Times for not using the words "but-for causation" in its pleading, but that argument misunderstands the causation standard and imposes a non-existent magic-words pleading requirement. To begin, the foundational Supreme Court retaliation case makes clear that the plaintiff's pleading burden is simply to show that his speech was a "substantial factor" or "motivating factor" in the government's decision. *Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Consistent with that formulation, the Second Circuit repeatedly has framed the causation standard as requiring only an allegation that the protected speech "motivated or substantially caused" the government action. *Dorsett*, 732 F.3d at 160, *accord, e.g.*, *Nat'l Rifle Ass'n of Am. v. Vullo*, 144 F.4th 376, 387 (2d Cir. 2025) (protected conduct "was a substantial or motivating factor in the defendant's decision to undertake the challenged actions"). The EEOC cites (at 16) *Nieves v. Bartlett*, 587 U.S. 391 (2019), for the proposition that but-for causation is required. But even if it ultimately is, the Second Circuit's decision in *Vullo* makes clear that a lack

of but-for causation—that a defendant "'would have reached the same decision'" anyway—is a potential *defense*, the "viability of" which is not properly considered "[a]t this motion-to-dismiss stage." 144 F.4th at 388.[4]

In any event, The Times's well-pleaded facts, construed in the light most favorable to The Times, plausibly support an inference that the EEOC would not have brought this lawsuit but for The Times's protected speech. It is exceptionally rare for the EEOC to file a Title VII lawsuit. Counterclaims ¶155. And it filed this flimsy one against The Times—a news organization the administration has repeatedly branded an "enemy"—on the heels of a particularly incisive exposé about the EEOC and its leadership. Even setting aside that the EEOC's claims are expressly based on other protected speech concerning The Times's aspirational goals for its leadership—speech plainly disfavored by the EEOC—the timing of this lawsuit *alone* indicates it was spurred by The Times's journalism. *Id.* ¶¶149-60, 179. In short, even if The Times is ultimately required to prove but-for causation, its well-pleaded facts support that inference, and "a complaint need not use particular words" to "be deemed adequate at the pleading stage." *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 487-88 (S.D.N.Y. 2004).

Finally, the EEOC suggests (at 16-17) that The Times must plead a lack of probable cause for the EEOC's lawsuit to state a retaliation claim. Second Circuit precedent forecloses that argument. The Supreme Court has imposed a no-probable-cause requirement for retaliatory-*arrest* and retaliatory-*prosecution* claims. *See Nieves*, 587 U.S. at 400-02. But the Second Circuit has expressly held that "probable cause cannot defeat" a First Amendment retaliation claim "insofar

[4] In support of its argument, the EEOC cites (at 16) a single unpublished Northern District of Texas case holding only that alleging a motivating factor is insufficient "to properly plead *a Section 1981 claim*" under Supreme Court precedent specific to that statute. *Acosta v. Seaboard Foods, LLC*, 2024 WL 4428985, at *1 (N.D. Tex. Oct. 4, 2024) (emphasis added).

as it is premised on" a "non-criminal regulatory enforcement action." *Mangino*, 808 F.3d at 957. For non-criminal enforcement actions like this one, a First Amendment plaintiff need only show—and The Times plausibly alleges—"that the defendant, for improper motive, took regulatory action that was significantly more serious than other action he had discretion to take." *Id.*; *see* Counterclaims ¶¶155-56. Further, even if the no-probable-cause rule applied (it doesn't), The Times would satisfy *Nieves*'s exception to that rule: There is "objective evidence" that the EEOC typically exercises its "discretion" not to bring lawsuits against "similarly situated individuals not engaged in the same sort of protected speech." 587 U.S. at 407; *see* Counterclaims ¶106.

**2. There is no basis to strike The Times's affirmative retaliation defense (Fifteenth Affirmative Defense).**

The EEOC's sole argument is that retaliation cannot be a defense to an otherwise meritorious government action. But the "Second Circuit has long recognized retaliation in violation of the First Amendment as a defense from government enforcement." *Öztürk v. Trump*, 779 F. Supp. 3d 462, 491 (D. Vt. 2025), *amended sub nom. Öztürk v. Hyde*, 136 F.4th 382 (2d Cir. 2025) (retaliation a viable defense in the immigration context).

To survive a motion to strike, an "affirmative defense[] based on constitutional questions" need only "give plaintiff notice and place into issue legal questions relevant to the proceedings." *City of Chicago v. DoorDash, Inc.*, 636 F. Supp. 3d 916, 922 (N.D. Ill. 2022) (denying motion to strike affirmative defenses raising "substantial questions" of constitutional law "better decided after factual development"). The Times has met that standard. Nothing in the EEOC's non-binding cases suggests otherwise since neither concerns a defense of First Amendment retaliation. *See EEOC v. First Nat. Bank of Jackson*, 614 F.2d 1004, 1006, 1008 (5th Cir. 1980) (involving *non-constitutional* "malicious prosecution and harassment" claims "sounding in tort"); *EEOC v. AZ Metro Distribs., LLC*, 2016 WL 10679469, at *9 (E.D.N.Y. Dec. 20, 2016), *report and*

*recommendation adopted as modified*, 272 F. Supp. 3d 336 (E.D.N.Y. 2017).

Moreover, an affirmative defense can be stricken only where its inclusion would prejudice the moving party. *GEOMC Co.*, 918 F.3d at 95-96. Prejudice is an independent requirement, separate from a showing that no question of law or fact could allow the defense to succeed. *See id.* The EEOC's preference not to be subject to discovery in a lawsuit it chose to file is not cognizable prejudice.

**ii. The Times has properly and sufficiently pleaded a selective enforcement defense (Fourteenth Affirmative Defense).**

The Times also has plausibly alleged the affirmative defense of selective enforcement. The EEOC's frontline argument is that "[i]t is not clear . . . that selective civil enforcement *is* a defense in the strict sense." Mot. to Strike ("MTS") 15 (quoting *United States v. Am. Elec. Power Serv. Corp.*, 258 F. Supp. 2d 804, 807 (S.D. Ohio 2003)). Other courts, including in this District, however, have concluded it is a defense. *See, e.g.*, *United States v. Alleyne*, 454 F. Supp. 1164, 1174 (S.D.N.Y. 1978); *DoorDash*, 636 F. Supp. 3d at 922.

In any event, a "'motion to strike should not be used as an opportunity for the determination of disputed, substantial questions of law.'" *See EEOC v. Kelley Drye & Warren, LLP*, 2011 WL 3163443, at *2 (S.D.N.Y. July 25, 2011). The EEOC identifies no authority holding that a selective enforcement defense is not cognizable; it cites a single out-of-jurisdiction case suggesting in dicta that it *might* not be. MTS 15 (quoting *Am. Elec. Power Serv. Corp.*, 258 F. Supp. 2d at 807). And even if it is a "close" question of law, the defense should not be stricken. *Car-Freshner Corp. v. Just Funky LLC*, 2019 WL 6270991, at *2 (N.D.N.Y. Nov. 25, 2019). Such "questions quite properly are viewed as determinable only after discovery and a hearing on the merits[,]" not on a motion to strike. *AZ Metro Distribs.*, 2016 WL 10679469, at *4.

The EEOC's backup argument—that The Times has not alleged similarly situated

comparators who have received different treatment, MTS 16—fares no better. "The question of 'whether parties are similarly situated is [generally] a fact-intensive inquiry' that depends heavily on the particular context of the case at hand," and is ill-suited to resolution on a motion to strike. *Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). And because similarly situated comparators—that is, those who were charged or investigated for similar allegations but against whom no complaint was filed—cannot "be readily known to [The Times]," the "relaxed application of the plausibility standard" applicable to such fact-intensive affirmative defenses is warranted. *GEOMC Co.*, 918 F.3d at 98.

The Times easily satisfies that plausibility standard. The Times alleges that "[i]t is exceedingly rare for the EEOC to initiate its own Title VII lawsuit in federal court instead of, for example, issuing a right-to-sue-letter to the charging party." Counterclaims ¶155. The Times further alleges that the EEOC decides to "initiate suit in less than 8% of cases where it believed that discrimination occurred and conciliation was unsuccessful," and that this lawsuit is "one-of-a-kind": in the words of Chair Lucas, "the very first lawsuit in ten years that the agency brought on behalf of a white male." *Id.* ¶¶106, 155. There are hundreds if not thousands of potential comparator employers, and it is more than plausible that discovery will show that at least one is similarly situated in all relevant respects.

**b. The Times Has Plausibly Alleged That the EEOC Seeks to Impose Liability for Protected Speech.**

As The Times's allegations make clear, the EEOC's suit is predicated on an aspirational leadership goal discussed in "A Call to Action," a February 2021 report that discussed The Times's aim to "creat[e] an environment where we all can do our best work." *See* Counterclaims ¶161. Title VII does not proscribe the publication of aspirational leadership goals and, even if it did, the EEOC's claims resting on that theory would be barred by both the First Amendment and due-

process fair-notice principles. There is no basis to strike The Times's First Amendment affirmative defense (Thirteenth Affirmative Defense), dismiss its due process counterclaim (Second Counterclaim), or strike its related affirmative defense (Sixteenth Affirmative Defense).

#### i. The Times's First Amendment defense should not be stricken (Thirteenth Affirmative Defense).

The Times has plausibly alleged that the EEOC's theory of liability is barred by the First Amendment. The EEOC cannot constitutionally impose liability for the publication of aspirational leadership goals or similar protected speech. *See Perkins Coie*, 783 F. Supp. 3d at 153-54 (holding that aspirational diversity statements and commitments were protected speech); *Susman Godfrey LLP v. Exec. Off. of the President*, 789 F. Supp. 3d 15, 43 (D.D.C. 2025) (recognizing that statements "merely evinc[ing] a general commitment to diversity and gender parity" are "plainly protected by the First Amendment"). Yet, as the EEOC's Complaint makes clear, that is precisely what it attempts to do, devoting paragraphs to detailing its views on how "A Call to Action" violates Title VII. Compl. ¶¶16-41, 100. The EEOC alleges that The Times's publication of "A Call to Action" is an unlawful employment practice giving rise to Title VII liability, Compl. ¶¶16-41, 100, and part of its "prima facie case" against The Times, MTD 18. It cannot evade The Times's First Amendment defense by ignoring—or misrepresenting[5]—the allegations giving rise to it. *See* MTS 14 (citing only Compl. ¶¶94-99).[6] This affirmative defense is necessary to ensure

---

[5] The EEOC makes factual misstatements that—in addition to being knowing misrepresentations—are untethered to the pleadings and therefore irrelevant. For example, the EEOC falsely asserts that The Times had a "stated intent to preference some employees on the basis of race or sex." MTD 21. But not even the EEOC's Complaint alleges such a "stated intent." Nor could it. The Times's expressly stated intent with respect to "A Call to Action" was to "strengthen [its] culture and systems in ways that give *everyone* at The Times an opportunity to thrive and do their best work." Counterclaims ¶23 (italics added); *see also id.* ¶161. The EEOC's attempt to analogize such statements to a "Whites Only" sign is absurd on its face.

[6] The EEOC's claim that statements regarding aspirational leadership goals in a February 2021

The Times is not held liable for protected speech; there is no basis to strike it.

**ii. The Times's fair-notice defense should not be stricken, nor should its related counterclaim be dismissed (Sixteenth Affirmative Defense, Second Counterclaim).**

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.* (*Fox II*), 567 U.S. 239, 253 (2012). The Due Process Clause requires that regulated parties "know what is required of them so they may act accordingly" and that laws be sufficiently precise so "that those enforcing [them] do not act in an arbitrary or discriminatory way." *Id.* When "speech is involved," as here, "rigorous adherence" to these requirements "is necessary to ensure that ambiguity does not chill protected speech." *Id.* at 253-54. An agency's "lack of notice" that it will consider a practice a "violation of [a statute] as interpreted and enforced by the agency fail[s] to provide a person of ordinary intelligence fair notice of what is prohibited." *Id*. at 254 (quotation marks omitted). Thus, an "enforcement action may violate due process if the defendant 'does not have fair notice of the agency's interpretation' of a law or statute, even if that interpretation is reasonable." *SEC v. Almagarby*, 92 F.4th 1306, 1319 (11th Cir. 2024) (quoting *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1331 (D.C. Cir. 1995)). Here, the EEOC violates fair-notice principles in at least two respects.

*First*, The Times lacked fair notice that its aspirational leadership goals and similar speech would be alleged as a basis for liability by the EEOC. The Complaint seeks to impose liability for, *inter alia*, The Times's publication of annual "Diversity and Inclusion Reports" showing the demographic composition of its employees and new hires as well as The Times's aspirational goals

report may be "circumstantial evidence" of discrimination in a hiring decision made in April 2025 for a non-leadership role only underlines how utterly meritless this lawsuit is. *Compare* MTD 21, *with* Counterclaims ¶¶106-10. Regardless, that argument is not a basis to strike this affirmative defense.

for its leadership. Compl. ¶¶27-36, *id.* ¶100. But The Times lacked fair notice that such speech could, in the EEOC's view, support liability under Title VII because the EEOC *for years* had endorsed similar speech and related initiatives as not only lawful, but as best practices. Counterclaims ¶¶164-68. The EEOC's response is to ignore its own allegations. MTS 17; MTD 21-22. It simply asserts, without citation, that the "Title VII claim turns on Defendant's alleged conduct—specifically, its consideration of Charging Party and the selected candidate's race and sex during its search for a new Deputy Real Estate Editor in early 2025." MTS 17. But the EEOC's Complaint points to no facts showing such "conduct"; it makes clear it is predicated on protected speech and lawful practices that the Commission previously endorsed. *Supra* pp.3-4. To "punish" The Times for that would be "a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).

*Second*, the interpretation of Title VII upon which the EEOC's lawsuit relies reflects an "abrupt" "regulatory change." *Fox II*, 567 U.S. at 254. Prior to the EEOC's new Enforcement Plan—which identifies aspirational goals for diverse workforces as unlawful "proxies for quotas" that "encourage or incentivize race- and sex-based decision making"—the Commission had encouraged such goals as a "best practice" and even adopted them in its own hiring practices. Counterclaims ¶¶162-74. Because the EEOC published its new policy only after suing The Times, The Times lacked fair notice of what the EEOC would consider unlawful under Title VII.

The EEOC's response that "no employer can credibly claim to lack fair notice that federal law prohibits" discrimination on the basis of race or sex only begs the question. MTS 17 (citing 42 U.S.C. § 2000e-2(a)). Whether aspirational leadership goals—to be achieved through lawful initiatives designed to ensure equal opportunity for all—are "discrimination" within the meaning of Title VII is precisely the policy on which the EEOC abruptly reversed course.

**c. The EEOC's Arbitrary and Capricious Actions Foreclose Dismissing The Times's Administrative Procedure Act Counterclaim (Third Counterclaim) and Striking its Related Affirmative Defenses (Seventeenth and Eighteenth Affirmative Defenses).**

The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). To satisfy APA requirements, agency action must be both "reasonable and reasonably explained." *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (quotation marks omitted). "[T]he requirement that an agency provide reasoned explanation for its action . . . ordinarily demand[s] that it display awareness that it *is* changing position"; an agency may not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books," and it "must show that there are good reasons for the new policy." *FCC v. Fox Television Stations, Inc.* (*Fox I*), 556 U.S. 502, 515 (2009) (emphasis in original). The Times plausibly alleges that the EEOC's adoption of its new Enforcement Plan and its filing of this lawsuit were arbitrary and capricious.

*First*, the EEOC's decision to adopt its new Enforcement Plan constitutes final agency action subject to review under the APA. *See OSG Bulk Ships, Inc. v. United States*, 132 F.3d 808, 812 (D.C. Cir. 1998). It marks the "consummation of the agency's decisionmaking process" and is an action from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). Before the new Enforcement Plan, the EEOC had long endorsed what it now asserts is unlawful. That abrupt policy change is neither "reasonable [nor] reasonably explained." *Ohio*, 603 U.S. at 292. Despite decades of prior policy endorsing the same speech and practices it now condemns, and the reliance of companies on that prior policy, the EEOC has failed to show "good reasons" why, for example, an aspirational leadership goal now constitutes discrimination under Title VII. *Fox I*, 556 U.S. at 515.

*Second*, the EEOC's abrupt, premature termination of conciliation proceedings and initiation of this enforcement action independently violate the APA. Filing this lawsuit is final agency action because it marked the culmination of the EEOC's decisionmaking and gave rise to "legal consequences." *Bennett*, 520 U.S. at 178. And it was arbitrary and capricious because it was made in bad faith based "on factors which Congress has not intended it to consider." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Political pressure to punish The Times for engaging in protected newsgathering and speech is an impermissible factor. *Supra* pp.2-4. And "proof of subjective bad faith" by agency officials "generally constitutes arbitrary and capricious action." *Latecoere Int'l, Inc. v. U.S. Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994); *Tummino v. Torti*, 603 F. Supp. 2d 519, 544 (E.D.N.Y. 2009). The Times has plausibly alleged that the EEOC's decision to abruptly terminate conciliation and initiate this suit was the result of subjective bad faith and improper pressure. Counterclaims ¶¶149-60.

The EEOC's *sole* argument is that the decision to sue The Times is committed to the agency's discretion by law and is therefore outside the scope of the APA. MTD 24-25; MTS 18-19. But that argument ignores The Times's claim that the EEOC's abrupt policy change—and not just this lawsuit—was arbitrary and capricious. And make no mistake, the EEOC's decision to prematurely terminate conciliation and initiate this lawsuit is also subject to judicial review under the APA. "There is a strong presumption favoring judicial review of administrative action," including actions to enforce the law against someone. *Salazar v. King*, 822 F.3d 61, 75-76 (2d Cir. 2016). To be sure, the decision *not* to bring an enforcement action is committed to agency discretion by law and is unreviewable. *See NRDC v. FDA*, 760 F.3d 151, 171 (2d Cir. 2014); *Heckler v. Chaney*, 470 U.S. 821, 837 (1985). But that is not the case when plaintiffs ask a court

to review whether the agency has "acted arbitrarily and capriciously in *taking* [an] enforcement action[.]" *Salazar*, 822 F.3d at 76 (emphasis added); *see Heckler*, 470 U.S. at 832. That is why, for example, the EEOC's decision to issue a right-to-sue letter is reviewable under the APA. *See BNSF Ry. v. EEOC*, 385 F. Supp. 3d 512, 521-22 (N.D. Tex. 2018). So too for the EEOC's initiation of this lawsuit. This action involves the exercise of "coercive power over" The Times and is thus subject to APA review. *Salazar*, 822 F.3d at 76.

**d. The Times's Second, Third, and Eighth Affirmative Defenses Should Not Be Stricken.**

**i. The Second and Third Affirmative Defenses are adequately alleged.**

As The Times alleges, the EEOC's handling of Rousseau's charge was marked by irregularities that evidence an agency singularly focused on bringing this lawsuit against The Times regardless of its merit. That includes "prematurely and abruptly end[ing] conciliation efforts . . . when neither the [EEOC], Rousseau, nor The Times were at impasse" and unilaterally declaring the conciliation unsuccessful "despite all parties indicating an intention to continue discussions." Counterclaims ¶¶11-12. Those allegations are sufficient to support The Times's Second Affirmative Defense (that the EEOC failed to exhaust administrative remedies) and Third Affirmative Defense (that the EEOC failed to conciliate).

*First*, the EEOC failed to exhaust administrative remedies. The EEOC is required under 42 U.S.C. § 2000e-5(b) to exhaust by conciliating—and its failure to satisfy that obligation renders this lawsuit procedurally defective. *See Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486-87 (2015). The EEOC relies on *EEOC v. Frontier Hot-Dip Galvanizing, Inc.*, 2017 WL 11309771 (W.D.N.Y. Dec. 18, 2017), to suggest (at 5) that this defense is not alleged with particularity. But the answer in *Frontier* contained *no factual allegations* regarding what "administrative procedures Plaintiff failed to complete before bringing suit." *Id.* at *5. *Kelley Drye* and *United Parcel Service*

are distinguishable for the same reason: the answers in those cases lacked the detailed allegations present here. *See Kelley Drye*, 2011 WL 3163443, at *4; *EEOC v. United Parcel Serv.*, 2017 WL 2829513, at *14 (E.D.N.Y. June 29, 2017).

*Second*, The Times plausibly alleges that the EEOC failed to fulfill its statutory duty to attempt conciliation before filing suit. *See Mach Mining*, 575 U.S. at 494. Here, as The Times has alleged, the EEOC's "conciliation" was a sham. In "less than two hours" after the parties ended a conciliation meeting with the stated "intention to continue discussions," the EEOC unilaterally declared the conciliation failed. Counterclaims ¶12. The EEOC's unserious attempt at conciliation did not meet its statutory obligation. The EEOC's declaration from Linda Sales-Long, Acting District Director—who was neither involved in the EEOC's investigation nor present at the purported "conciliation"—offers no basis to strike the affirmative defense.[7] Even setting aside the declaration's defects, The Times has alleged specific, detailed factual allegations—including the premature termination of conciliation despite all parties' stated intention to continue discussions—that, if proven true, would establish that the EEOC failed to fulfill its statutory obligation. At this stage, where the Court must resolve all doubts in favor of preserving the defense, these allegations more than suffice.

The Second and Third Affirmative Defenses are not duplicative. The EEOC's failure to exhaust administrative remedies and failure to conciliate are two separate affirmative defenses and courts routinely allow both to proceed. *See, e.g.*, *Thornton v. County of Albany*, 2016 WL

[7] It is clear from the declaration that Sales-Long lacks personal knowledge. ECF 44, Ex. A at 1-2. If anything, her declaration makes clear she did not investigate Rousseau's charge, issue the Letter of Determination, meet with Rousseau and The Times on April 21, 2026, or issue the notice of conciliation efforts. Accordingly, her averment "that the EEOC [] performed its obligations with regard to conciliation" is meaningless. *EEOC v. A&F Fire Prot. Co.*, 2018 WL 7252950, at *4 (E.D.N.Y. Dec. 13, 2018).

5793714, at *5 (N.D.N.Y. Oct. 4, 2016) (failure to exhaust administrative remedies and failure to comply with conditions precedent are two separate affirmative defenses); *A&F Fire Prot. Co.*, 2018 WL 7252950, at *3-5 (declining to strike both affirmative defenses). And even if they were duplicative, the EEOC has not identified any cognizable prejudice that would result from allowing the defenses to remain in the case. *See SEC v. Leibowitz*, 2025 WL 2056026, at *3 (S.D.N.Y. July 23, 2025) ("[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation"); *Sam Bernstein L. Firm, PLLC v. Sam*, 2026 WL 61261, at *5 (W.D.N.Y. Jan. 8, 2026).

**ii. The Times's Eighth Affirmative Defense is adequately alleged.**

The Times's Eighth Affirmative Defense for estoppel, waiver, and unclean hands should not be stricken. Contrary to the EEOC's argument, "defenses of equitable estoppel and unclean hands are not categorically unavailable against the government." *SEC v. Rayat*, 2021 WL 4868590, at *3 (S.D.N.Y. Oct. 18, 2021). To succeed on a defense of equitable estoppel, The Times must allege "affirmative misconduct" by the EEOC. *Id.*; *see also SEC v. Durante*, 2013 WL 6800226, at *13 (S.D.N.Y. Dec. 19, 2013), *report and recommendation adopted*, 2014 WL 5041843 (S.D.N.Y. Sept. 25, 2014), *aff'd*, 641 F. App'x 73 (2d Cir. 2016) (defendant must allege that the government's misrepresentation is "inconsistent with the minimum standard of decency, honor, and reliability which citizens have a right to expect from their Government.") (internal quotation and citation omitted). The Times has more than met that standard here.

The Times adequately alleges the suspicious timing of the EEOC's lawsuit, its pursuit of the administration's agenda and lawsuits that fit the administration's "priorities," and the EEOC's efforts to prevent The Times and Rousseau from resolving their dispute through conciliation. Counterclaims ¶¶104, 110, 153, 155, 160. None of the cases the EEOC relies on contain a comparable level of detail. *See SEC v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999);

*Rayat*, 2021 WL 4868590, at *1-2. In any event, even if it were not adequately alleged (it is), the EEOC's motion to strike this defense would be premature. "[I]t is impossible to state definitively at this time that there are no set of facts that could be proven that would provide a viable defense under either theory of waiver or estoppel" as no discovery has occurred. *EEOC v. United Parcel Serv. Inc.*, 2017 WL 9482105, at *12 (E.D.N.Y. Mar. 9, 2017).

**CONCLUSION**

The Commission's motions to dismiss and strike should be denied. If the Court identifies any pleading deficiencies, it should grant The Times leave to amend. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").

Dated: September 18, 2026

/s/ *Theodore J. Boutrous Jr.*

GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous Jr.
Katie Townsend
333 South Grand Avenue
Los Angeles, California 90071
(T) 213.229.7000
tboutrous@gibsondunn.com
ktownsend@gibsondunn.com

PROSKAUER ROSE LLP
Evandro C. Gigante
Eleven Times Square
New York, New York 10036
(T) 212.969.3000
egigante@proskauer.com

PROSKAUER ROSE LLP
Atoyia S. Harris (pro hac vice admission forthcoming)
Poydras Center
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
(T) 504.310.2027
aharris@proskauer.com

Attorneys for Defendant and Counterclaim Plaintiff
THE NEW YORK TIMES COMPANY

**CERTIFICATE OF COMPLIANCE**

As required by S.D.N.Y. Local Civil Rule 7.1(c), I certify that the attached document contains 8,611 words, excluding parts of the document that are exempted by Rule 7.1(c).

Dated: September 18, 2026

*/s/ Theodore J. Boutrous Jr.*
Theodore J. Boutrous Jr.